# United States Court of Appeals for the Eleventh Circuit

DELTONA TRANSFORMER CORPORATION,

*Plaintiff-Appellee*,

v.

THE NOCO COMPANY,

*Defendant-Appellant.*

On Appeal from the United States District Court for the Middle District of Florida, Hon. Carlos E. Mendoza, Case No. 6:19-cv-00308-CEM-LHP

## OPENING BRIEF OF DEFENDANT-APPELLANT THE NOCO COMPANY

Meredith M. Wilkes
JONES DAY
901 Lakeside Ave.
Cleveland, OH 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
mwilkes@jonesday.com

Anna E. Raimer
JONES DAY
717 Texas Ave., Ste. 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
aeraimer@jonesday.com

Gregory A. Castanias
Amelia A. DeGory
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
gcastanias@jonesday.com

Kristina K. Cercone
JONES DAY
110 N. Wacker Dr., Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
kcercone@jonesday.com

*Counsel for Defendant-Appellant*

**REDACTED VERSION**

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

As required by Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-1(a), Defendant-Appellant The NOCO Company provides this Certificate of Interested Persons and Corporate Disclosure Statement. The following trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations have an interest in the outcome of this appeal:

1. Castanias, Gregory A. (Counsel for Defendant-Appellant).

2. Cercone, Kristina K. (Counsel for Defendant-Appellant).

3. Chediak, Camila (Counsel for Plaintiff-Appellee).

4. Clarke, Melodee (more than 10% shareholder of Plaintiff-Appellee Deltona Transformer Corporation).

5. DeGory, Amelia A. (Counsel for Defendant-Appellant).

6. Deltona Transformer Corporation (Plaintiff-Appellee).

7. Flanagan, Patricia M. (Counsel for Plaintiff-Appellee).

8. Jones Day (Counsel for Defendant-Appellant).

9. Mendoza, Carlos E. (U.S. District Judge, United States District Court for the Middle District of Florida).

10. Prelec, Michael L., Sr. (more than 10% shareholder of Plaintiff-Appellee Deltona Transformer Corporation).

11. Price, Leslie Hoffman (U.S. Magistrate Judge, United States District Court for the Middle District of Florida).

12. Raimer, Anna E. (Counsel for Defendant-Appellant).

13. Schnell, Grant Edward Lavelle (Counsel for Defendant-Appellant).

14. Shutts & Bowen (Counsel for Plaintiff-Appellee).

15. The NOCO Company (Defendant-Appellant).

16. Tillman, Jodi-Ann (Counsel for Plaintiff-Appellee).

17. Wilkes, Meredith M. (Counsel for Defendant-Appellant).

No other persons, associations of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent or subsidiary corporations, or other legal entities are financially interested in the outcome of this case or appeal.

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-2, undersigned counsel hereby certifies the following:

No publicly held corporation owns 10% or more of The NOCO Company's stock.

March 12, 2025

Respectfully submitted,

*/s/ Gregory A. Castanias*

Meredith M. Wilkes
JONES DAY
901 Lakeside Ave.
Cleveland, OH 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
mwilkes@jonesday.com

Anna E. Raimer
JONES DAY
717 Texas Ave., Ste. 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
aeraimer@jonesday.com

Gregory A. Castanias
Amelia A. DeGory
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
gcastanias@jonesday.com
adegory@jonesday.com

Kristina K. Cercone
JONES DAY
77 W. Wacker, Suite 3500
Chicago, IL 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
kcercone@jonesday.com

*Counsel for Defendant-Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

This appeal involves questions of first impression respecting the purchase of keyword search terms, such that a consumer who types that search term on an online search engine will see products from the purchaser of the search term, as well as others' products. This legitimate, pro-competitive business practice does not "confuse" consumers, yet the district court upheld a multi-million dollar verdict in Plaintiff-Appellee Deltona Transformer Corporation's favor based on its theory that keyword purchases infringed on its trademarks. Whether so-called "initial interest confusion" is actionable in a trademark case, and whether the purchase of a trademarked keyword is trademark infringement, are critically important trademark-law issues that have yet to be fully developed in this Court.

This appeal also presents other consequential questions of law, including (but not limited to): (i) whether a trademark owner can rebut a claim of genericness without presenting a consumer survey, when the alleged infringer presents decisive consumer-survey evidence; (ii) whether a trademark owner can bring an action under Florida's Deceptive and Unfair Trade Practices Act without showing injury to a single consumer; and (iii) whether a district court may award disgorgement of profits under the Lanham Act without regard to the profits actually attributable to the harm alleged and proved at trial.

The NOCO Company therefore respectfully requests oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ................................................................. C – 1

STATEMENT REGARDING ORAL ARGUMENT ............................................ i

JURISDICTIONAL STATEMENT .................................................................. xii

INTRODUCTION ............................................................................................. 1

STATEMENT OF THE ISSUES....................................................................... 4

STATEMENT OF THE CASE .......................................................................... 5

    A.    Defendant-Appellant NOCO Designs, Markets, and Sells
         Battery Chargers.................................................................... 5

    B.    Plaintiff-Appellee DTC Is an Intellectual-Property Holding
         Company ................................................................................. 7

    C.    Deltran USA and NOCO, Like Numerous Other Companies,
         Engage in Bidding on Keyword Searches on Amazon.com ............... 8

    D.    NOCO Advertises Its Products on Amazon.com .............................. 10

    E.    DTC First Complained About NOCO's Amazon.com
         Advertisements in 2015, and That Was Promptly Resolved ............. 16

    F.    NOCO Files a Petition To Cancel DTC's "Battery Tender"
         Trademark As Generic ....................................................... 18

    G.    DTC's Complaint and NOCO's Counterclaims................................ 18

    H.    Trial ............................................................................................ 19

    I.    The District Court Awards Disgorgement of Profits and
         Injunctive Relief.................................................................. 19

    J.    The Court's Post-Judgment Rulings ................................................ 20

SUMMARY OF ARGUMENT ........................................................................ 21

ARGUMENT .................................................................................................. 24

I.    THE DISTRICT COURT SHOULD HAVE GRANTED JMOL OR A
    NEW TRIAL ............................................................................................ 24

    A.    The District Court Should Have Granted Judgment That
         "Battery Tender" Is Generic................................................. 24

B.    The District Court Should Have Granted Judgment for NOCO on DTC's Trademark-Infringement Claims ........................................33

    1.    NOCO's use of "battery tender" as an Amazon.com search keyword was not trademark infringement ....................34

    2.    NOCO's other Amazon.com advertisements likewise did not infringe ................................................................................38

C.    The District Court Should Have Granted Judgment to NOCO on DTC's Claim Under FDUTPA for Failure To Show Consumer Harm ..........................................................................45

D.    The District Court Should Have Granted Judgment to NOCO of No Damages ........................................................................48

II.    THE DISTRICT COURT ERRED BY INSTRUCTING THE JURY ON A FALSE-ADVERTISING CLAIM THAT DTC NEVER ASSERTED OR PROVED ............................................................51

III.    THE DISTRICT COURT ABUSED ITS DISCRETION BY DISGORGING NOCO'S PROFITS AND IMPOSING AN INJUNCTION ..........................................................................56

A.    The District Court Should Not Have Disgorged NOCO's Profits .....56

    1.    The disgorgement award was improper as a matter of law, and therefore an abuse of discretion ................................57

    2.    Even if the district court had been right to award disgorgement, it should have been limited to ████ — the amount attributable to Amazon.com sales ..........................59

B.    The District Court Should Not Have Imposed an Injunction ............62

CONCLUSION ....................................................................65

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF CITATIONS

**Page(s)**

CASES

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
   722 F.3d 1229 (10th Cir. 2013) ........................................................35

\*1-800-Contacts, Inc. v. JAND, Inc.*,
   119 F.4th 234 (2d Cir. 2024) ..................................2, 8, 27, 34, 36, 37

*A & H Sportswear Inc. v. Victoria's Secret Stores, Inc.*,
   166 F.3d 197 (3d Cir. 1999) (en banc) ............................................56

*ABB Robotics, Inc. v. GMFanuc Robotics Corp.*,
   52 F.3d 1062 (Fed. Cir. 1995) .........................................................58

*\*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
   537 F.2d 4 (2d Cir. 1976) ..........................................................24, 33

*Adler v. McNeil Consultants, L.L.C.*,
   10 F.4th 422 (5th Cir. 2021) ...........................................................36

*Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's
   Found. of Am., Inc.*,
   307 F. Supp. 3d 260 (S.D.N.Y. 2018) .............................................34

*Am. Red Cross v. Palm Beach Blood Bank, Inc.*,
   143 F.3d 1407 (11th Cir. 1998) .......................................................64

*Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc.*,
   707 F. App'x 576 (11th Cir. 2017) ..................................................52

*Bos. Duck Tours, LP v. Super Duck Tours, LLC*,
   531 F.3d 1 (1st Cir. 2008) ...............................................................29

*Broan Mfg. Co. v. Assoc. Distribs., Inc.*,
   923 F.2d 1232 (6th Cir. 1991) .........................................................50

*Brochu v. City of Riviera Beach*,
304 F.3d 1144 (11th Cir. 2002) ........................................................21

*Burndy Corp. v. Teledyne Indus., Inc.*,
748 F.2d 767 (2d Cir. 1984) ......................................................59, 60

*Car Body Lab Inc. v. Lithia Motors, Inc.*,
No. 21-cv-21484, 2021 WL 2658693 (S.D. Fla. June 22, 2021) ......................47

*Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach
County, Inc.*,
169 So.3d 164 (Fla. App. 4th Dist. 2015)...........................................46

*Carter v. City of Miami*,
870 F.2d 578 (11th Cir. 1989) ........................................................20

*Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*,
270 F. Supp. 3d 1340 (S.D. Fla. 2017)...............................................51

*CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*,
No. 16-186, 2018 WL 905752 (M.D. Fla. Feb. 15, 2018) ...............................46

*CFTC v. Sidoti*,
178 F.3d 1132 (11th Cir. 1999) ..................................................56, 61

*Checkpoint Sys., Inc. v. Check Point Software, Tech., Inc.*,
269 F.3d 270 (3d Cir. 2001) ..........................................................41

*Cigna Corp. v. Amara*,
563 U.S. 421 (2011)...................................................................57

*CNA Fin. Corp. v. Brown*,
162 F.3d 1334 (11th Cir. 1998) .......................................................21

*Colt Defense LLC v. Bushmaster Firearms, Inc.*,
486 F.3d 701 (1st Cir. 2007)..........................................................25

*Dewberry Grp. v. Dewberry Engineers, Inc.*,
No. 23-900, slip op. (U.S. Feb. 26, 2025)........................................36, 48

v

*Diversified Mgmt. Sols., Inc. v. Control Sys. Rsch., Inc.*,
No. 15-81062, 2016 WL 4256916 (S.D. Fla. May 16, 2016) ...........................51

*Donchez v. Coors Brewing Co.*,
392 F.3d 1211 (10th Cir. 2004) ........................................................................27

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ..........................................................................................62

*EEOC v. Massey Yardley Chrysler Plymouth, Inc.*,
117 F.3d 1244 (11th Cir. 1997) ........................................................................26

*Env't Mfg. Sols., LLC v. Fluid Group, Ltd.*,
No. 18-156, 2018 WL 3635112 (M.D. Fla. May 9, 2018) ................................46

*Essence Comm., Inc. v. Singh Ind., Inc.*,
703 F. Supp. 261 (S.D.N.Y. 1988) ...................................................................28

*Filipino Yellow Pages, Inc. v. Asian J. Pubs., Inc.*,
198 F.3d 1143 (9th Cir. 1999) ..........................................................................25

*\*Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*,
830 F.3d 1242 (11th Cir. 2016) ......................................................33, 39, 41, 44

*Fla. Virtual Sch. v. K12, Inc.*,
No. 6:20-CV-2354-GAP-EJK, 2023 WL 6294569
(M.D. Fla. Sept. 5, 2023) .................................................................................42

*Frehling Enterprises v. International Select Group, Inc.*,
192 F.3d 1330 (11th Cir. 1999) ........................................................................28

*Gift of Learning Found., Inc., v. TGC, Inc.*,
329 F.3d 792 (11th Cir. 2003) ..........................................................................33

*Globalaw Ltd. v. Carmon & Carmon L. Off.*,
452 F. Supp. 2d 1 (D.D.C. 2006)......................................................................27

*\*Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*,
921 F.3d 1343 (11th Cir. 2019) ..........................................................42, 59, 61

*Hoop Culture, Inc. v. Gap Inc.*,
  648 F. App'x 981 (11th Cir. 2016) ....................................................33

*Howard Johnson Co., Inc. v. Khimani*,
  892 F.2d 1512 (11th Cir. 1990) ......................................................50

*Hughey v. JMS Dev. Corp.*,
  78 F.3d 1523 (11th Cir. 1996) .......................................................63

\*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,
  299 F.3d 1242 (11th Cir. 2002) .............................................52, 53, 55

*Kellogg Co. v. Nat'l Biscuit Co.*,
  305 U.S. 111 (1938) ...................................................................28

*Keystone Driller Co. v. Gen. Excavator Co.*,
  290 U.S. 240 (1933) ...................................................................57

*Knights Armament Co. v. Optical Sys. Tech., Inc.*,
  654 F.3d 1179 (11th Cir. 2011) ......................................................25

*Ledbetter v. Goodyear Tire and Rubber Co., Inc.*,
  421 F.3d 1169 (11th Cir. 2005) ......................................................20

\*Lerner & Rowe PC v. Brown Engstrand & Shely LLC,
  119 F.4th 711 (9th Cir. 2024) .......................................34, 35, 36, 41

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ...................................................................51

*Lipphardt v. Durango Steakhouse of Brandon, Inc.*,
  267 F.3d 1183 (11th Cir. 2001) ......................................................21

\*Mark Seitman & Assocs., Inc. v. R.J. Reynolds Tobacco Co.,
  837 F.2d 1527 (11th Cir. 1988) ..................................................45, 53

*Max Rack, Inc. v. Core Health & Fitness, LLC*,
  40 F.4th 454 (6th Cir. 2022) .........................................................49

*Mee Indus. v. Dow Chem. Co.,
608 F.3d 1202 (11th Cir. 2010) ..................................................48, 50

*Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC,
702 F.3d 1312 (11th Cir. 2012) ..................................................25, 30

Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.,
316 U.S. 203 (1942) .....................................................................61

Nartron Corp. v. STMicroelectronics, Inc.,
305 F.3d 397 (6th Cir. 2002) .....................................................32

Nat. Answers, Inc. v. SmithKline Beecham Corp.,
529 F.3d 1325 (11th Cir. 2008) ..................................................43, 53

The NOCO Co. v. Deltona Transformer Corp.,
Opp. No. 91251463, Doc.10 (T.T.A.B. Jan. 27, 2021) ....................18

Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.,
496 F.3d 1231 (11th Cir. 2007) ..................................................49

Outdoor Kids, Inc. v. Parris Mfg. Co.,
385 F. App'x 992 (Fed. Cir. 2010) ..............................................43

Petrella v. Metro-Goldwyn-Mayer, Inc.,
572 U.S. 663 (2014).....................................................................58

Playboy Enters., Inc. v. Netscape Commc'ns Corp.,
55 F. Supp. 2d 1070 (C.D. Cal. 1999) ........................................27

PlayNation Play Sys., Inc. v. Velex Corp.,
924 F.3d 1159 (11th Cir. 2019) ..................................................35

Precision Instrument Mfg.v. Auto Maint. Mach. Co.,
324 U.S. 806 (1945).....................................................................57

Quick Techs., Inc. v. Sage Grp. PLC,
313 F.3d 338 (5th Cir. 2002) .....................................................56

*Rossbach v. City of Miami*,
371 F.3d 1354 (11th Cir. 2004) ........................................................20

*Royal Crown Co., Inc. v. The Coca-Cola Co.*,
892 F.3d 1358 (Fed. Cir. 2018) ........................................................25

*Schwan's IP, LLC v. Kraft Pizza Co.*,
460 F.3d 971 (8th Cir. 2006) ...........................................................25

*SEC v. First City Fin. Corp.*,
890 F.2d 1215 (D.C. Cir. 1989) ........................................................56

*\*Slep-Tone Ent. Corp. v. Johnson*,
518 F. App'x 815 (11th Cir. 2013) ................................................59, 61

*Small Bus. Assistance Corp. v. Clear Channel Broad., Inc.*,
210 F.3d 278 (5th Cir. 2000) ...........................................................33

*South Broward Hosp. Dist. v. Elap Servs., LLP*,
No. 20-61007, 2023 WL 6547748 (S.D. Fla. Sept. 30, 2023) ...........................47

*Stewart Agency, Inc. v. Arrigo Enters., Inc.*,
266 So.3d 207 (Fla. App. 4th Dist. 2019) .............................................46

*Suntree Techs. Inc. v. Ecosense Int'l, Inc.*,
693 F.3d 1338 (11th Cir. 2012) .....................................................35, 43

*Synergy Real Est. of SW Fla., Inc. v. Premier Prop. Mgmt. of SW Fla., LLC*,
578 F. App'x 959 (11th Cir. 2014) .....................................................51

*Tana v. Dantanna's*,
611 F.3d 767 (11th Cir. 2010) ......................................................41, 44

*Therma-Scan, Inc. v. Thermoscan, Inc.*,
295 F.3d 623 (6th Cir. 2002) ...........................................................41

*TocMail, Inc. v. Microsoft Corp.*,
67 F.4th 1255 (11th Cir. 2023) .........................................................53

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992) ...................................................................24

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'Ship*,
    513 U.S. 18 (1994) .....................................................................56

*U.S.P.T.O. v. Booking.com*,
    591 U.S. 549 (2020) ...............................................................24, 32

*United States v. Bestfoods*,
    524 U.S. 51 (1998) .....................................................................49

\**Welding Servs., Inc. v. Forman*,
    509 F.3d 1351 (11th Cir. 2007) ...............................................24, 31

*Wexler v. Lepore*,
    385 F.3d 1336 (11th Cir. 2004) .................................................21

*Williams v. Motorola, Inc.*,
    303 F.3d 1284 (11th Cir. 2002) ...............................................20, 32

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*,
    419 F.3d 925 (9th Cir. 2005) .....................................................26

## STATUTES

15 U.S.C. § 1116 ...........................................................................62

\*15 U.S.C. § 1117 ...........................................................56, 60, 61, 62

\*15 U.S.C. § 1125 .................................................. 18, 22, 51, 52, 54, 55

15 U.S.C. § 1127 ...........................................................................24

## OTHER AUTHORITIES

D. Dobbs, *Handbook on the Law of Remedies* (1973) ...........................58

J. Eaton, *Handbook of Equity Jurisprudence* (1901)..............................57

Fed. R. Civ. P. 50 ................................................................ 19, 20, 30, 45, 50, 51, 54

Fed. R. Civ. P. 59 ....................................................................................20

Fed. R. Civ. P. 65 ....................................................................................64

*2 McCarthy on Trademarks & Unfair Competition (5th ed.)........25, 27, 29, 34, 36

*Jennifer E. Rothman, *Initial Interest Confusion:  Standing at the
Crossroads of Trademark Law*, 27 CARDOZO L. REV. 105 (2005)..............35, 37

# JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), entered judgment on September 30, 2023, and denied The NOCO Company's ("NOCO's") timely post-judgment motions on September 30, 2024. The court entered a corrected second amended final judgment on October 23, 2024. NOCO filed a timely notice of appeal on October 31, 2024.

# INTRODUCTION

Plaintiff-Appellee Deltona Transformer Corporation ("DTC") is an intellectual-property holding company with a single licensee: Deltran Operations USA, Inc. ("Deltran"). Deltran and its wholly owned subsidiary Deltran USA, LLC ("Deltran USA"), neither of which is a party to this case, sell a battery-charging product called a "Battery Tender," which—as the name says—tends batteries. A battery tender maintains a vehicle's battery charge during extended periods of inactivity, prolonging battery life and preventing damage. DTC registered trademarks for "Battery Tender."

Defendant-Appellant The NOCO Company ("NOCO") designs and sells a wide array of battery chargers, including the same type of products sold by DTC's licensee. NOCO markets and sells these products under the trademark NOCO Genius®, including on the Amazon.com e-commerce platform.

This case involves DTC's objections to two aspects of NOCO's marketing efforts for its NOCO Genius® chargers on Amazon.com. One was NOCO's purchase of the terms "tender" and "battery tender" for keyword searches. DTC claimed these keyword purchases constituted trademark infringement and unfair trade practices, even though Deltran USA engaged in the same marketing practices—including purchasing "noco battery tender" as a keyword—and even though "the consensus view" is that keyword purchasing "does not constitute

trademark infringement." *1-800-Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234, 239 (2d Cir. 2024). DTC's other objection involved certain references to "Battery Tender" in a limited number of NOCO's Amazon.com advertisements, stating, *e.g.*, that the NOCO Genius® chargers are "the most advanced battery tender for any vehicle." Ultimately, DTC secured a verdict of $1,300,000 in actual damages and $5,750,000 in punitive damages, along with a subsequent disgorgement award of $12,135,943.70 in profits, based primarily on NOCO's purchase of keyword search terms.

Reversal is compelled. "Battery tender" is generic as a matter of law and incapable of trademark protection—it is a battery device that "tends" a battery while in disuse. No reasonable jury could have concluded otherwise: A consumer survey introduced by NOCO showed that almost 80% of the respondents surveyed believed that a "battery tender" is a type of product, not a particular brand. DTC offered no survey of its own. Even Deltran itself, plus retailers and customers, used "battery tender" generically.

Next, even if DTC were allowed to possess trademark rights in that term, NOCO's use of it in Amazon.com searches and ads was fair, honest competition that created no likelihood of consumer confusion. Instead, NOCO's marketing presented consumers with NOCO's accurately labeled NOCO Genius® chargers, alongside Deltran's products, thereby allowing consumers to make informed

choices about which of the companies' products to buy. Yet DTC tried this case as though it possessed exclusionary rights over the mere mention of the term "battery tender"—to quote its counsel in closing arguments, "[DTC] never authorized NOCO's uses of the Battery Tender name. Each use by NOCO is an infringement on [DTC's] property. It is akin to corporate identity theft." Dkt.403(31:12-15). That was exactly wrong: Trademark law does not confer patent- or copyright-like exclusivity over the words contained in a trademark; it protects consumers from likely confusion. That is where DTC's case faltered: Neither NOCO's keyword purchases nor its Amazon.com advertisements had any potential to confuse consumers about whether they were buying NOCO chargers or Deltran chargers.

The district court made other prejudicial errors. It allowed DTC to pursue a Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim without showing consumer harm, and a Lanham Act false-advertising claim without pleading—let alone proving the elements of—such a claim. As for DTC's damages case, which was premised on DTC's asserted need to repair its goodwill—a preposterous claim, given that DTC's only customer was its captive licensee, Deltran—the court allowed this claim to survive despite DTC's failure to show harm to *its own* goodwill or reputation.

Finally, as to the equitable remedies (disgorgement and injunction) ordered by the court, those awards were fundamentally inequitable and gave DTC an

unwarranted market advantage. The disgorgement award gave DTC *all of* NOCO's profits from NOCO Genius® charger sales, not just those from Amazon.com (the sole subject of the trial evidence); the injunction bars legal conduct; and neither remedy is reconcilable with Deltran USA's keyword-bidding conduct.

This judgment should not be allowed to stand.

## STATEMENT OF THE ISSUES

**I.** Should the district court have granted judgment for NOCO, or a new trial, where—

   **a.** The evidence—including NOCO's uncontroverted survey and Deltran's own generic use of the term—overwhelmingly showed that "battery tender" is generic?

   **b.** Keyword purchases are not, as a matter of law, trademark infringement, and where, further, none of the trial evidence demonstrated that NOCO's uses of "battery tender" and "tender" were likely to cause consumer confusion?

   **c.** DTC failed to show that any consumer was harmed—a failure fatal to its FDUTPA claim, which requires consumer injury for liability?

   **d.** DTC failed to provide any evidence of its own alleged damages?

**II.**     Should the district court have granted judgment on DTC's false-advertising claim, and at least a new trial on the other claims, where the court instructed the jury on a false-advertising claim that DTC neither asserted nor proved at trial?

**III.**     Did the district court err in granting equitable relief where, *inter alia*, disgorgement reached *all* of NOCO's profits and not just those associated with its Amazon.com sales; and Deltran USA itself engaged in keyword-search bidding?

## STATEMENT OF THE CASE

### A.     Defendant-Appellant NOCO Designs, Markets, and Sells Battery Chargers

NOCO, a family company founded in 1914 and based in Glenwillow, Ohio, designs and distributes premium battery chargers, battery jump starters, battery packs, and other battery-related goods.  Dkt.401(67:17-20, 68:10-69:3-5).[1] NOCO's first product was a battery-corrosion preventative to "solve[] the problem" of an "imperfect seal" on what were then wooden batteries.  *Id.*(68:10-15, 69:23-24).  The company later expanded to other products, *e.g.*, jumper cables, battery terminals, and battery cables.  *Id.*(68:16-20).  Today, NOCO also sells battery chargers, jump starters, and lithium-ion batteries.  *Id.*(68:23-69:2).  NOCO designs all of its products and completes some of its production process in the

---

[1] All transcript references cite the ECF-generated page number.

United States, and employs well over 100 people. *Id.*(67:10-11, 69:15-21); Dkt.402(45:15-17).

NOCO marketed its NOCO Genius® battery chargers, which previously included the G750 (DX-296), G1100 (DX-297), and G4 (DX-295) models, as shown in this demonstrative (the physical products were admitted as exhibits and published to the jury). Dkt.400(77:9-79:10).



The NOCO Genius® products are "multipurpose," "everyday consumer" chargers, *id.*(76:16-20), used in (among other things) lawn mowers, tractors,

motorcycles, and classic cars; they are "designed to take care of a battery so it doesn't die." *Id.*(79:2-10, 80:23-81:2). These types of products are known as "battery tenders" because they "tend to the battery"; "many other companies … offer these types of devices." *Id.*(85:3-23); *see id.*(87:9-88:1).

### B. Plaintiff-Appellee DTC Is an Intellectual-Property Holding Company

DTC is an intellectual-property holding company with a single, affiliated licensee, Deltran, that pays it $1.64 million each year. PX-5; Dkt.399(227:2-20, 230:6-11); Dkt. 405(36:19-37:15). Deltran and its subsidiary Deltran USA—not DTC—sell the "Battery Tender" products that compete with the NOCO Genius® chargers. Dkt.343(82:6-11, 182:3-9); Dkt. 400(144:4-7).

DTC owns the alleged trademarks at issue (Dkt.399(205:20-208:20)), including "DELTRAN BATTERY TENDER" (PX-2B); and "BATTERY TENDER" (PX-2A, PX-2E). During prosecution of the application for "BATTERY TENDER," the U.S. Patent and Trademark Office determined that "the [words] BATTERY TENDER are terms of art used by others in the battery industry to reference battery chargers and related devices." DX-272 at DTC0000267. To obtain registration, DTC disclaimed "BATTERY" and claimed acquired distinctiveness of the alleged mark "BATTERY TENDER." PX-2A.

## C. Deltran USA and NOCO, Like Numerous Other Companies, Engage in Bidding on Keyword Searches on Amazon.com

Online shopping sites like Amazon.com sell or auction keywords "in a type of internet marketing called search (or keyword) advertising." *1-800-Contacts*, 119 F.4th at 240. A potential buyer types a term into a search bar on the platform, thereby yielding a list of products. Dkt.341(177:4-7); Dkt.343(49:20-50:2). Such keyword searching helps consumers find products on Amazon.com. Dkt.341(194:16-19); Dkt.343(41:4-11, 50:14-19, 63:14-64:9).

Keyword auctions often include competitor's trademarks: "[A]n advertiser can bid on a competitor's brand or trademarks so that the *advertiser's* ad appears in response to a consumer's search for the *competitor's* marks." *1-800-Contacts*, 119 F.4th at 240. For example, a shopper who inputs "Coke" into the Amazon.com search bar will see a number of Coca-Cola products—but also Pepsi products and other soft drinks offered as "sponsored" options. *See* Dkt.367-1. The consumer is thereby presented with options, and is neither misled nor confused.

NOCO's advertising strategy included bidding on ▮▮▮▮▮ keywords on Amazon.com, including terms like ▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮ Dkt.402(44:3-11). As relevant here, NOCO bid on keywords such as "tender" and "battery tender"—terms naming categories of products—so that when consumers searched for those terms on Amazon.com, the results would include sponsored advertisements for NOCO-branded products alongside Deltran products and other

sellers' products (*e.g.*, Black & Decker's).  DX-520; Dkt.341(175:14-181:8, 181:23-182:11, 196:9-20, 202:5-12).

Deltran follows a similar strategy.  Brittaney Rea, Deltran's manager of digital marketing and e-commerce, testified that bidding on other companies' trademarks is commonplace for Amazon.com marketing.[2]  Dkt.402(36:13-17); Dkt.341(171:16-18).  Ms. Rea testified that Deltran USA itself bids on competitors' trademarks (including corporate names); she "in fact kn[e]w that this happened."  Dkt.343(45:4-46:19).  For example, Deltran USA won Amazon.com search bids on "Black & Decker" (*id.* at 46:8-21), "Honda," and—significantly— "noco battery tender."  DX-546 at 55.  Thus, based on Deltran USA's keyword purchases, a consumer searching for a NOCO product on Amazon.com would be presented with a Deltran Battery Tender product as a purchase option, along with NOCO's products.  DX-546 at 50, 55; DX-547 at 34, 39; PX-60A at 2, 7.

Deltran's Ms. Rea agreed that purchasing trademarks as keywords does not result in consumer confusion.  Dkt.343(50:14-51:4, 63:21-64:12).  Rather, companies buy keywords "that help them [*i.e.*, their products] show up when someone is looking for a product."  *Id.*  And although companies such as Deltran and NOCO know which keywords they are bidding on (*id.*(41:4-11)), no consumer

---

[2] Deltran USA employed Ms. Rea, but she "manage[d] all of the Amazon advertising for the Deltran Operations USA, LLC, enterprise."  Dkt.343(40:2-10).

ever knows what company has won a particular keyword auction on Amazon.com, *cf. id.*(41:1-13) (even competitors "actually can't see who you're bidding against").

Ms. Rea further testified that when Deltran USA purchases its competitors' trademarks—oftentimes for use in conjunction with "battery tender" (*e.g.*, DX-546 at 55 (bidding on "noco battery tender"))—it isn't "targeting [a competitor]"; rather, "[w]e're targeting the customer who is looking for a product similar to ours." Dkt.343(64:7-9). She testified that when Deltran USA purchased NOCO trademarks so that Deltran products showed up in the search results for NOCO products, those Deltran ads were not confusing as to the products' source. *Id.*(62:24-63:11).

### D.     NOCO Advertises Its Products on Amazon.com

NOCO's Amazon.com advertisements at issue fell broadly into three categories:  (1) advertisements resulting from NOCO's keyword purchases of "battery tender" or "tender," but not mentioning those terms; (2) NOCO sponsored-brand ads with the terms "battery tender," "tender," or both displayed to the consumer (along with "NOCO") within the advertising text; and (3) product descriptions for certain NOCO products that contained the term "battery tender" and that were briefly listed on Amazon.com.

### 1.   *Advertisements resulting from NOCO keyword purchases but not displaying "battery tender" or "tender."*  There were 37 of these ads presented at

trial.  PX-237.  The keyword purchases involved NOCO bidding and winning

auctions on Amazon.com for the terms "tender" and "battery tender" with various

NOCO products displayed as a result of winning those auctions.  As shown below,

these ads, which were labeled as "Sponsored" and prominently used the NOCO®

trademark, never displayed the terms "battery tender" or "tender":



DX-520 at 5.



PX-239 at 1.

NOCO began purchasing the keywords "tender" and "battery tender" on Amazon.com in 2014, after which it ran sporadic 90-day ad campaigns triggered by these keywords. PX-237. It ceased all such purchases by March 2020. Dkt.402(36:23-37:4, 39:1:43-11).

*2. Sponsored-brand ads where NOCO used the terms "tender" or "battery tender" within text visible to a consumer.* "Sponsored-brand ads" display text and products in a banner format at the top of a search results page, Dkt.341(194:14-19),

as in the example below:



DX-308M.  There were 24 such advertisements.  *See* DX-308A–DX-308X; PX-51;

PX-230.  The sponsored-brand ads featured various NOCO products identified

prominently by NOCO's logo, NOCO's registered trademarks

(PX-144D–PX-144G), NOCO product names, and NOCO product photos bearing

NOCO's trademarks.  Indeed, as Deltran's own director of advertising observed of

one such ad, "You will see on the left-hand side the NOCO brand with their …

registration mark" and "[i]t states clearly on the advertisement, 'Sponsored by

NOCO,' which means this was an ad placed by NOCO themselves."

Dkt.341(59:14-24).  These ads included the term "battery tender(s)" to name the

type of generic class of product being advertised, and touting NOCO GENIUS®

products as "more than just a battery tender":

- "Save on safe and trusted battery tenders."  (DX-308M.)

- "The Winter Battery Tender with Zero Overcharge."  (DX-308O.)

- "More Than Just a Battery Tender – Zero Overcharge."  (DX-308N; DX-
  308K; DX-308I; DX-308L.)

- "The most advanced battery tender for any vehicle." (DX-308P.)

- "Do More Than Just A Battery Tender. Buy NOCO." (DX-308A.)

- "Do More Than Just A Battery Tender. Save Now." (DX-308B.)

- "Charge Smart. Do More Than Just A Battery Tender." (DX-308C.)

- "More Than Just Battery Tender – Zero Overcharge." (DX-308L.)

The earliest date that NOCO used "tender" or "battery tender" in a sponsored-brand ad was December 2014. Dkt.401(186:16-20). Thereafter, it ran sporadic 90-day sponsored-brand campaigns. PX-237, Dkt.402(43:4-11). NOCO ceased all sponsored-brand ads in December 2018. Dkt.402(36:18-22); PX-237.

**3. Product descriptions incorporating "battery tender" that were inadvertently and briefly uploaded to Amazon.com.** The final category involved the appearance of "battery tender" (in lower case) in the fine print of Amazon.com product descriptions of NOCO-branded products. The parties disputed how long the descriptions were visible on Amazon.com—somewhere between 24 hours and 9 days during July 2019. PX-55A at 5; PX-60A at 5; Dkt.402(136:23-137:10). DTC claimed the terms appeared in 14 product descriptions (PX-54), but the trial exhibits show only six. PX-55A–PX-60A. Notably, a prospective buyer would have to scroll to the bottom of the Amazon.com product page to the product-description section and read through a lengthy list beginning with "Other commonly used search terms include ...." in order to see "battery tender."



7/11/2019 Amazon.com: NOCO Genius G4 6V/12V 4.4 Amp 4-Bank Battery Charger and Maintainer: Automotive

amazon | Automotive Parts & Accessories | Prime Day is July 15 & 16

Deliver to Washington 20001 | Today's Deals | Your Amazon.com | Gift Cards | Help | Whole Foods | Registry | Sell | EN | Hello, Sign in Account & Lists | Orders | Try Prime | Cart

Automotive | Your Garage | Deals & Rebates | Best Sellers | Parts | Accessories | Tools & Equipment | Car Care | Motorcycle & Powersports | Truck | RV | Tires & Wheels | Vehicles

Select your vehicle: Year | Make | Model | Check Fit | Your Garage (0)

Chance to win daily prizes

Automotive › Tools & Equipment › Jump Starters, Battery Chargers & Portable Power › Battery Chargers

Roll over image to zoom in

U.S. District Court
Middle District of Florida
PLAINTIFF'S EXHIBIT
Exhibit Number PX-065A
Case Number:
Dolman Transformer Corporation
v.
The Noco Company
Date Identified:
Date Admitted:

## NOCO Genius G4 6V/12V 4.4 Amp 4-Bank Battery Charger and Maintainer

by NOCO

4,911 customer reviews | 1000+ answered questions

Price: $179.95 & FREE Shipping Details

Get $50 off instantly: Pay ~~$179.95~~ $129.95 upon approval for the Amazon Rewards Visa Card. No annual fee.

Size: 4-Bank 4.4 Amp

| | | | |
|---|---|---|---|
| .75 Amp $29.95 | 1.1 Amp $38.95 | 3.5 Amp $59.95 | 4-Bank 4.4 Amp $179.95 |
| 7.2 Amp $98.96 | 15 Amp $119.95 | 26 Amp $199.95 | |

- The most convenient way to charge and maintain multiple vehicles for extending battery life and year-round battery maintenance of your car, boat, truck, RV, lawnmower or any other vehicle.
- Completely recharge smaller capacity batteries on motorcycles, ATVs, snowmobiles, personal watercraft, scooters, and power wheels up to 40 amp-hours.
- Works with all types of 6-volt and 12-volt lead-acid batteries, including Wet, Gel, and AGM, or any common automotive, deep-cycle, marine, or maintenance-free battery.
- Keep your battery fully charged without worry or overcharge. Simply plug-in and let our advanced charging technology automatically monitor and maintain your battery.
- An optimized charge mode for safely charging and maintaining 12-volt lithium-ion batteries, and recommended with use on lithium batteries with an internal BMS.
- One of the most advanced and safest battery chargers, including spark-proof technology, and reverse polarity protection, plus backed by our 5-year and endless accessories.

› See more product details

Compare with similar items

Used & new (45) from $164.26 & FREE shipping. Details

PillPack Your medication, delivered Learn more

Save on AmazonBasics and SupplyMaster Safety Gear

SupplyMaster Disposable Exam Nitrile | AmazonBasics Blue Light Blocking | AmazonBasics Noise Reduction

$179.95
& FREE Shipping. Details

Want it tomorrow, July 12? Order within 7 hrs and choose One-Day Shipping at checkout. Details

In Stock.

Qty: 1

Add to Cart

Buy Now

Ships from and sold by Amazon.com.

prime
Enjoy fast, FREE delivery, exclusive deals and award-winning movies & TV shows with Prime
Click here and start saving today with Fast, FREE Delivery

Gift-wrap available.

Deliver to Washington 20001

Add to List

Share | 40+ Shares

Other Sellers on Amazon

$179.95 Add to Cart
& FREE Shipping on eligible orders. Details
Sold by: AlphaStore

$179.95 Add to Cart
+ Free Shipping
Sold by: Univetrain America

https://www.amazon.com/NOCO-G4-Advanced-Battery-Maintainer/dp/B0068EV26I?ref_=bl_dp_s_web_3022124011 DTC0002038 1/11

7/11/2019 Amazon.com: NOCO Genius G4 6V/12V 4.4 Amp 4-Bank Battery Charger and Maintainer: Automotive

| | |
|---|---|
| Item Weight | 2.7 pounds |
| Product Dimensions | 8.5 x 6.4 x 3.5 inches |
| California residents | Click here for Proposition 65 warning |
| Item model number | G4 |
| Batteries | 1 Lithium ion batteries required. |
| Manufacturer Part Number | G4 |
| OEM Part Number | G4 |
| ABPA Partslink Number | 13 |
| Fishing | No |
| Cover Included | G4 4-Bank Advanced Battery Trickle Charger Maintainer, (4) Battery Clamps, (4) Eyelet Terminals, (4) Extension Cables, User Guide, 5-Year Limited Warranty |
| Vehicle Service Type | motorcycle |
| Amperage | 4.4 A |

| | |
|---|---|
| | 4.2 out of 5 stars |
| Best Sellers Rank | #18,331 in Automotive (See Top 100 in Automotive)<br>#80 in Battery Chargers<br>#5,768 in Automotive Replacement Parts |
| Shipping Weight | 6.15 pounds (View shipping rates and policies) |
| Date First Available | January 1, 2010 |

### Warranty & Support

Warranty, Parts: Parts

Product Warranty: For warranty information about this product, please click here [PDF]

### Feedback

If you are a seller for this product, would you like to suggest updates through seller support?
Would you like to tell us about a lower price?

### Technical Specification

Specification Sheet [pdf]
User Guide [pdf]
User Manual [pdf]

### Product and related videos | Upload your video

Customer Review: Simple — A. Holland
Customer Review: Item is defective — Tracy M. Edwards
Customer Review: Great quality and perfect... 
Customer Review: Good for Lithium motorcycl...

### Important Information

**Legal Disclaimer**
CALIFORNIA WARNING: Cancer and Reproductive Harm - www.P65Warnings.ca.gov

### Product description

Size: 4-Bank 4.4 Amp

NOCO Genius smart battery chargers are some of the safest and most advanced on the market. One of our best, the G4 4-Bank Battery Charger and Maintainer is designed to charge 12-volt lead-acid and lithium-ion batteries up to 40Ah. It can also effectively maintain automotive, marine, RV, power sport, lawn & garden and deep-cycle batteries. [illegible] ... car battery maintainer, car battery tender, car battery trickle charger, Harley Davidson trickle charger, lawnmower battery charger, manual battery charger, marine battery charger, marine battery trickle charger, mini car battery charger, motorcycle battery maintainer, [illegible]

https://www.amazon.com/NOCO-G4-Advanced-Battery-Maintainer/dp/B0068EV26I?ref_=bl_dp_s_web_3022124011 DTC0002041 4/11

PX-55A at 1, 3 (highlighting added).

DTC said that these product-description advertisements were removed because it complained to Amazon.com (Dkt.402(136:12-138:1); *id*.(138:9-139:8)); NOCO maintained that its president, Jonathan Nook, gave the instruction when he discovered they had been posted "inadvertent[ly]." *Id*.(33:10-34:10, 36:2-7, 136:12-137:23); PX-139. (Mr. Nook had already instructed NOCO employees not to use "battery tender" in advertisements at least as of April 2019. PX-139 at 1.)

### E. DTC First Complained About NOCO's Amazon.com Advertisements in 2015, and That Was Promptly Resolved

Materials produced by Amazon showed that NOCO advertised its products on Amazon.com in 2014, and NOCO used "tender" in describing the advertisement in its communications with Amazon. PX-205; PX-206; PX-237. There is no evidence of the specific content of NOCO's 2014 advertisements. DTC's complaint averred that NOCO's 2014 ads were comparative advertising. Dkt.1 ¶ 28.

The earliest supposedly offending advertisement DTC introduced at trial was from 2015. Dkt.405(34:3-18). However, any concern about that ad had been promptly resolved between the parties. PX-61A; PX-61C. In July 2015, DTC's counsel wrote a letter to NOCO complaining about the use of "Battery Tender" as a keyword search term, as well as NOCO's visible use of the word "tender" (not "battery tender") in an Amazon.com advertisement that also featured NOCO

trademarks.  PX-61A.  While there was conflicting testimony about what NOCO understood the letter to mean (*i.e.*, whether NOCO was permitted to refer to "Battery Tender," but not "tender" alone (*see* Dkt.401(202:19-203:4)), the letters in evidence show that after "quick removal of the [objected-to] advertisement," DTC would "consider this matter closed."  PX-61C.  NOCO considered the matter closed, too, and the parties conducted themselves such that NOCO's use of "Battery Tender," in full form and with capitalization, was acceptable comparative advertising.  PX-61D at 2-3.

The parties communicated in 2016 (PX-62A; PX-62C; Dkt.399(223:13-226:6); Dkt.343(122:21-125:1, 128:20-129:10); Dkt.401(216:11-218:6)), but with no complaint from DTC about any advertising NOCO was doing on Amazon.com (or anywhere else).  PX-61D; PX-61F; Dkt.343(130:5-132:4); Dkt.401(218:7-219:18); Dkt.402(29:16-30:6).

In 2018, however, DTC raised fresh complaints to NOCO, solely about the use of "Battery Tender" in NOCO's advertising (not as a keyword purchase) (PX-61D).  This contradicted DTC's 2015 "consider this matter closed" letter.  *Compare* PX-61D *with* PX-61C.  DTC did not raise any objections to NOCO's keyword-bidding practices in 2018 or in any other communications after 2015.

**F.    NOCO Files a Petition To Cancel DTC's "Battery Tender" Trademark As Generic**

After receiving another threatening letter from DTC's counsel in December 2018, NOCO filed a petition on January 17, 2019 to cancel DTC's "Battery Tender" trademark registration in the U.S. Patent and Trademark Office on the ground that the term is generic for a type of battery charger.  PX-61G at 5; Dkt.405 199:3-10.  On similar grounds, NOCO filed cancellation and opposition proceedings against additional DTC trademark applications and registrations (also at issue in this case) that incorporate the term "Battery Tender," including "Deltran Battery Tender."  *See The NOCO Co. v. Deltona Transformer Corp.*, Opp. No. 91251463, Doc.10 (T.T.A.B. Jan. 27, 2021) (consolidation order), https://tinyurl.com/4n2rd7ty.  The Trademark Trial and Appeal Board consolidated these proceedings and suspended them pending the outcome of this case.  *Id.* at 7.

**G.    DTC's Complaint and NOCO's Counterclaims**

DTC sued NOCO on February 14, 2019, alleging federal trademark infringement, "unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)," common-law trademark infringement and unfair competition, and violations of FDUTPA.  Dkt.1.  Nowhere did DTC plead liability for false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).  NOCO counterclaimed for cancellation

of DTC's asserted trademarks on the ground that they are generic. Dkt.55 at 21-25.

## H. Trial

On May 25, 2021, after a seven-day trial, the jury returned a verdict of willful trademark infringement and false advertising against NOCO, awarding actual damages of $1,300,000, and $5,750,000 in punitive damages (the latter on DTC's state-law trademark-infringement claim). Dkt.315; Dkt.317.

NOCO brought timely Rule 50(a) motions, which the court denied nearly one year later, on March 30, 2022. Dkt.410.

## I. The District Court Awards Disgorgement of Profits and Injunctive Relief

The court held a further hearing on July 9, 2021, on DTC's claim for disgorgement of NOCO's profits. Dkt.423 at 2; Dkt.381.

Over two years later, on September 29, 2023, the court issued a written order granting disgorgement of NOCO's profits in the amount of $12,135,943.70. Dkt.423 at 26. The court further granted in part and denied in part DTC's motion for a permanent injunction. *Id.* The injunction prohibits NOCO from, among other things, advertising its products using the terms "Battery Tender" and "Tender," whether or not capitalized (with an exception for comparative advertising). *Id.* at 26-27.

### J. The Court's Post-Judgment Rulings

NOCO renewed its Rule 50(a) motions under Rule 50(b) after the judgment and moved, alternatively, for a new trial, on October 30, 2023. Dkt.440.

Nearly one year later, on September 30, 2024, the court denied NOCO's post-judgment motions. Dkt.458. In upholding the jury's verdict on NOCO's Rule 50(b) and 59 motions, the district court largely incorporated by reference its Rule 50(a) rulings and other rulings on objections at trial. Dkt.458.

## STANDARD OF REVIEW

This Court "review[s] *de novo* the denial of a motion for judgment as a matter of law, applying the same standard as the district court." *Ledbetter v. Goodyear Tire and Rubber Co., Inc.*, 421 F.3d 1169, 1177 (11th Cir. 2005). Where no "legally sufficient evidentiary basis" allows a "reasonable jury to find" for the nonmoving party, JMOL should be granted. *Rossbach v. City of Miami*, 371 F.3d 1354, 1356 (11th Cir. 2004); Fed. R. Civ. P. 50(a). "A mere scintilla of evidence does not create a jury question." *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1290 (11th Cir. 2002) (quoting *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989)). JMOL "need not be reserved for situations where there is a complete absence of facts to support a jury verdict. Rather, there must be a substantial conflict in [the] evidence." *Id.*

This Court reviews denial of a new-trial motion for abuse of discretion. *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002). A court should grant a new trial where "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of the verdict." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (citations omitted). "An error of law constitutes an abuse of discretion." *Wexler v. Lepore*, 385 F.3d 1336, 1338 (11th Cir. 2004).

This Court reviews a grant of equitable relief, including disgorgement of profits and injunctions, for abuse of discretion. *CNA Fin. Corp. v. Brown*, 162 F.3d 1334, 1337 (11th Cir. 1998).

## SUMMARY OF ARGUMENT

**I.** The district court should have granted judgment for NOCO, or a new trial. *First*, no reasonable jury could have failed to find "Battery Tender" generic: An uncontroverted survey showed that 78% of consumers understood that "Battery Tender" refers to a type of battery charger, not a distinct source of goods; further, retailers, consumers, and even Deltran itself used the term generically. *Second*, no reasonable jury could have found NOCO liable for trademark infringement because the purchase of trademarked terms as keywords does not constitute infringement, and because NOCO's uses of "battery tender" in its accused

Amazon.com ads were not likely to cause consumer confusion as a matter of law. *Third*, DTC failed to show harm to any "consumer" under FDUTPA—a required element of its claim under that Florida statute. *Fourth*, DTC failed to prove that it suffered any actual damages.

**II.** The court further erred by instructing the jury on a false-advertising claim that DTC neither pleaded nor proved at trial. DTC pleaded only "unfair competition and false designation of origin" under Section 43(a) of the Lanham Act. Section 43(a) separately sets out a "false advertising" basis for liability, but DTC never articulated such a claim, nor established standing to sue NOCO on such a theory, nor proved that any NOCO ad deceived any consumer or materially affected any consumer's purchasing decision. NOCO is thus entitled to judgment on DTC's false-advertising claim, and at least a new trial on the other claims, because damages may have flowed from that erroneous instruction.

**III.** The court's equitable rulings were also fundamentally inequitable. *First*, the district court abused its discretion in disgorging NOCO's profits, when Deltran USA was engaged in the same kind of conduct—bidding on competitors' trademarked terms in keyword searches—for which DTC sought disgorgement. DTC also should have been equitably estopped from seeking disgorgement based on its pre-suit communications with NOCO over several years. And, even if disgorgement had been proper, the amount should have been limited to the

██████ traceable to NOCO's sales of battery chargers on Amazon.com—the only challenged conduct.

*Second*, the court abused its discretion by imposing a sweeping injunction, where DTC did not prove irreparable harm; the injunction reaches conduct, terms, and products never alleged in the Complaint or proved at trial; DTC failed to present evidence that any conceivable harm to its reputation or goodwill could not be remedied by money damages; and the injunction harms fair-minded competition by reaching the important and lawful practice of keyword advertising.

**ARGUMENT**

**I.   THE DISTRICT COURT SHOULD HAVE GRANTED JMOL OR A NEW TRIAL**

> **A.   The District Court Should Have Granted Judgment That "Battery Tender" Is Generic**

A trademark is a term "used by a person … to identify *and distinguish* his or her goods … from those manufactured or sold by others and to indicate the source of the goods."  15 U.S.C. § 1127.  "[F]ollowing the classic formulation set out by Judge Friendly" in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976), marks are typically classified on a spectrum of distinctiveness ranging from "(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful."  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Because trademarks must by statute "distinguish," trademarks are only available for "distinctive" marks; "generic" terms—because they are "the name of the good itself"—cannot distinguish one producer's goods from another's and thus are incapable of trademark protection.  *U.S.P.T.O. v. Booking.com*, 591 U.S. 549, 554 (2020).

A term is generic if it (1) "names a 'class' of goods or services, rather than any particular feature or exemplification of the class," *id.* at 556, or (2) "is the term by which the product or service itself is commonly known."  *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1358 (11th Cir. 2007) ("welding services" generic and

"not protectable"); *see also Knights Armament Co. v. Optical Sys. Tech., Inc.*, 654 F.3d 1179, 1189 (11th Cir. 2011) (affirming "night sight" was a "generic term used in the sniper community to refer to the genus of goods that enable a sniper to observe or acquire a target at night").  Affirming summary judgment that "brick oven pizza" was generic, the Eighth Circuit explained that "[b]ecause a generic term denotes the thing itself, it cannot be appropriated by one party from the public domain; it therefore is not afforded trademark protection *even if it becomes associated with only one source*, for a competitor must be able to describe his goods as what they are." *Schwan's IP, LLC v. Kraft Pizza Co.*, 460 F.3d 971, 974 (8th Cir. 2006) (citations omitted).[3]

In determining genericness, courts consider "consumer surveys, dictionaries, newspapers, and other publications," *Royal Crown Co., Inc. v. The Coca-Cola Co.*, 892 F.3d 1358, 1370 (Fed. Cir. 2018); the plaintiff's own use, *Colt Defense LLC v. Bushmaster Firearms, Inc.*, 486 F.3d 701, 707 (1st Cir. 2007); and the use by persons in the trade, *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1318 (11th Cir. 2012).  *See generally* 2 McCarthy on Trademarks & Unfair Competition § 12:13 (5th ed.); *see also Filipino Yellow Pages, Inc. v. Asian J. Pubs., Inc.*, 198 F.3d 1143, 1145, 1150-51 (9th Cir. 1999) (holding

---

[3] All emphasis in this brief is added, and all internal quotation marks omitted, unless otherwise noted.

FILIPINO YELLOW PAGES generic in view of record showing plaintiff's "own generic use of the term" and "generic usage by the media").

All the trial evidence demonstrates that a "battery tender" is a genus or class of goods (a kind of battery-charging device—one that "tends" a battery while in disuse). *See, e.g.*, DX-71; DX-111; DX-118; DX-120; DX-255; DX-462; Dkt.400(218:13-19, 223:7-11); DX-275D; DX-275E; DX-275I; DX-275L; DX-478; DX-484; DX-499; Dkt.343(46:8-21); DX-546 at 50, 55. DTC never rebutted this evidence, and the jury was not at liberty to disbelieve it.[4]

***Unrefuted consumer survey showed genericness.*** The only consumer survey in the record—proffered by NOCO—overwhelmingly established that "battery tender" is generic. NOCO's expert, Philip Johnson, conducted a survey of 558 respondents, which showed—*as he testified without contradiction*—that "78 percent said that they believed Battery Tender is a type of product," *i.e.*, a generic

---

[4] DTC relies on the fact of its registrations to insist that NOCO bore the burden of proving its "battery tender" marks generic with respect to its Lanham Act claim—which it cannot do with respect to its common-law trademark-infringement claim. *See, e.g.*, *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 930 (9th Cir. 2005) (holding the "district court correctly allocated the burden of proof to plaintiff" on an unregistered trademark claim, though "a plaintiff alleging infringement of a federally-registered mark is entitled to a presumption that the mark is not generic"). Here, the allocation of burdens is of no moment, for the evidence regarding genericness was uncontroverted and "of overwhelming effect," thus meriting judgment for NOCO regardless of that allocation. *EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1250 (11th Cir. 1997).

term, not an indication of the product's source or origin. *See* Dkt.400(218:13-19, 223:7-11). This Court should hold, as other courts have, that survey results of 78% prove genericness, particularly when the plaintiff presents no contrary survey evidence. *See, e.g.*, *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1218 (10th Cir. 2004) (affirming summary judgment that "beerman" was generic where 75.9% of the 200 survey respondents recognized the term as a "common or generic name").

DTC shockingly did not proffer its own survey, or even a rebuttal expert. *See, e.g.*, McCarthy, *supra*, § 12:14 ("Consumer surveys have become almost de rigueur in litigation over genericness."). NOCO's evidence therefore stands alone. DTC's failure to rebut NOCO's genericness survey compels the conclusion that "battery tender" is generic, such that no reasonable jury could have found otherwise. *See, e.g.*, *Globalaw Ltd. v. Carmon & Carmon L. Off.*, 452 F. Supp. 2d 1, 33 (D.D.C. 2006) (finding "unrebutted opinions and conclusions" of defendants' expert who conducted a survey "support[ed] categorizing 'GLOBALAW' as a generic term"). Indeed, most courts would find that DTC's failure to proffer a survey warrants a presumption that it would have been unfavorable. *E.g.*, *1-800 Contacts, Inc.*, 119 F.4th at 253; *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 55 F. Supp. 2d 1070, 1084 (C.D. Cal. 1999), *aff'd*, 202 F.3d 278 (9th Cir.

1999); *Essence Comm., Inc. v. Singh Ind., Inc.*, 703 F. Supp. 261, 269 (S.D.N.Y. 1988). This Court should join them.

DTC has contended it was not required to produce survey evidence, citing this Court's decision in *Frehling Enterprises v. International Select Group, Inc.*, 192 F.3d 1330 (11th Cir. 1999), which in a footnote suggested that a lack of survey evidence from a plaintiff is "not dispositive" on the likelihood-of-confusion issue when there is evidence of actual confusion. *Id.* at 1341 n.5. But *Frehling* does not speak to this very different issue, where NOCO *did* produce compelling survey evidence *of genericness*, and DTC chose not to meet it with a competing survey.

**DTC's licensee Deltran itself used "battery tender" generically.** Deltran advertised its products on Amazon.com as "The only battery tender," with the words "battery tender" appearing in lowercase—conveying to consumers that "battery tender" indicated "the product," not "the producer." *See Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118 (1938).



DX-71. Deltran USA's actions confirmed this understanding: It purchased the keyword "battery tender" *alongside other brand names*—"Black & Decker" (Dkt.343 at 46:8-21), "Honda," "Harley," and even "NOCO"—to promote Deltran's products on Amazon.com. DX-546 at 50, 55; DX-547 at 34, 39; PX-60A at 2, 7. DTC's licensee's (and its subsidiary's) "own generic use" thus "provides strong evidence against its claim." *Bos. Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 20 (1st Cir. 2008) (citing McCarthy, *supra*, § 12:13).

***Retailers used "battery tender" generically.*** At trial, NOCO showed that a retailer emailed Deltran stating "I was very impressed by the battery tenders and

jump starters that you offer." DX-111 at 2. Appearing side-by-side with the similarly uncapitalized generic product category "jump starters," "battery tenders" here likewise represents a generic category of devices "that you offer." *See also, e.g.*, DX-120 at 3 ("Since the expo, I've had some great conversations with sales and Parts personnel educating and showcasing your battery tenders and Mobile battery wireless monitor[.]"); DX-462 at 1 ("Lots of our customers ask about adding a battery tender to the[ir] exotic cars, we are a full services dealership."). These generic usages by "unaffiliated" persons in the trade strongly indicate genericness. *Miller's Ale House*, 702 F.3d at 1318.

Against this evidence—most of it out of DTC's own files; all of it uncontroverted—the district court denied JMOL, largely incorporating by reference its order denying NOCO's Rule 50(a) motion. *See generally* Dkt.410. Its reasons for doing so were flawed.

*First*, the district court narrowly focused on whether "battery tender" was capitalized or lowercase, suggesting that the use of "battery tender" in lowercase did not indicate genericness, and implicitly (and incorrectly) suggesting that NOCO was required to show that lack of capitalization *alone* indicated genericness. Dkt.410 at 3-4.

*Second*, and relatedly, the court's reasoning that NOCO's evidence is "just as likely to show that the uncapitalized term 'battery tender' is used to refer

specifically to Plaintiff's products, rather than a generic matter," was wrong in light of the plain context of the retailers' communications (*e.g.*, "the battery tenders and jump starters that you offer"), along with *Deltran itself* promoting its product as "[t]he only battery tender," DX-71, and Deltran USA purchasing the keywords "battery tender" with *other brand names* on Amazon.com. When overlaid with the uncontroverted consumer survey, no reasonable jury would have been at liberty to reach any other conclusion: "battery tender" is a class of goods. The court never addressed this showing.

*Third*, the court asserted that "Plaintiff offered an abundance of evidence at trial establishing that the term 'battery tender' had not become generic." Dkt.410 at 4. The court cited none of this supposed "abundance." If it was referring to the scant citations contained in DTC's JMOL brief (Dkt.436 at 11), these isolated uses of "Battery Tender" to indicate Deltran's product do not render the term distinctive; "even if the name becomes in some degree associated with the source," Battery Tender remains generic. *Welding Servs.*, 509 F.3d at 1358. Even the district judge himself used "Battery Tender" during a pre-trial conference to refer to a type of good, not one from a particular source. Dkt.284(4:3-10). Plus, DTC failed to present *any* survey evidence, warranting a presumption that it would have been unfavorable to DTC. *See supra* 26-27.

*Fourth*, the court suggested that a jury could have rejected NOCO's survey evidence simply because DTC's counsel cross-examined its proponent. Dkt.410 at 4-5. But, again, NOCO's survey evidence was the *only* survey evidence the jury had—DTC presented no survey (or even rebuttal expert) of its own. So the question is not whether *NOCO's* survey was sufficient, but whether the jury was at liberty to reach a contrary conclusion based on the undisputed evidence, including—or even excluding—the survey, all of which shows that "battery tender" is a class of goods, not one company's good. *See Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 405 (6th Cir. 2002). As shown above, there is no "substantial conflict in evidence to support a jury question" on the issue of genericness. *Williams*, 303 F.3d at 1290.

<p style="text-align:center">*     *     *     *</p>

Whether a term is generic "depends on whether consumers in fact perceive that term as the name of a class or, instead, as a term capable of distinguishing among members of the class." *Booking.com*, 591 U.S. at 560-61. The *only evidence in this case* about how "consumers in fact perceive th[e] term" "battery tender" demonstrates that "battery tender" is the generic name of a class of goods. Judgment should be ordered for NOCO.

**B.    The District Court Should Have Granted Judgment for NOCO on DTC's Trademark-Infringement Claims**

To prevail on a trademark-infringement claim, DTC had to prove: "(1) it possesses a valid mark; (2) [NOCO] used the mark in commerce in connection with the sale or advertising of goods ... in a manner likely to confuse consumers." *Hoop Culture, Inc. v. Gap Inc.*, 648 F. App'x 981, 983 (11th Cir. 2016); *see also* Dkt.314 at 13, 17 (Jury Instructions). In considering likelihood of confusion, the strength of plaintiff's mark and the evidence of actual confusion "are the most important" factors. *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1255, 1265 (11th Cir. 2016). DTC failed to establish the elements of its claim.

*First*, as shown in Section I(A), DTC has no valid mark and cannot succeed on any of its claims, whether under Florida common law or as a matter of federal trademark law. If an alleged mark is not "protectible in the first instance," the "confusion that plaintiff claims exists is irrelevant." *Gift of Learning Found., Inc., v. TGC, Inc.*, 329 F.3d 792, 801 (11th Cir. 2003); *see also Small Bus. Assistance Corp. v. Clear Channel Broad., Inc.*, 210 F.3d 278, 279 (5th Cir. 2000).

*Second*, even if the alleged mark survived a genericness challenge, it still would not be a strong one (as reflected on the *Abercrombie & Fitch* spectrum), and none of the evidence DTC introduced at trial proves that NOCO used the weak

terms "battery tender" and "tender" in a manner likely to cause consumer
confusion, as the law requires.[5]

### 1. NOCO's use of "battery tender" as an Amazon.com search keyword was not trademark infringement

The "consensus view" that has emerged over the last decade is that
"purchasing a competitor's trademarks in the context of keyword search
advertising does not constitute trademark infringement." *1-800-Contacts*, 119
F.4th at 239. "Virtually no court has held that, on its own, a defendant's purchase
of a plaintiff's mark as a keyword term is sufficient for liability. *Alzheimer's
Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc.*, 307 F.
Supp. 3d 260, 284 (S.D.N.Y. 2018); McCarthy, *supra*, § 25A:7 ("Courts almost
always find no likelihood of confusion if all that defendant has done is use
another's mark as a keyword to trigger an ad for defendant in which the other's
trademark does not appear." (collecting cases)). That is because "distracting a
potential customer with another *choice*, when it is clear that it is a choice" does not
generate confusion. *Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119

---

[5] DTC presented no evidence that NOCO used the DELTRAN BATTERY
TENDER trademark. Similarly, there was no evidence that DTC owns any rights
to the term "tender," standing alone. And there was no evidence that NOCO used
"Battery Tender"—or any of DTC's other alleged trademarks—on any product,
any packaging, or on any other website. *See* Dkt.341(73:16-74:4);
Dkt.343(43:25−44:14, 61:4-18); Dkt.405(23:18-25:9).

F.4th 711, 719 (9th Cir. 2024).  And "in the keyword advertising context … the owner of the mark must demonstrate likely confusion, not mere diversion."  *Id.*; *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013) (affirming district-court ruling that "use of the Challenged Keywords, divorced from the text of the resulting ads, could not result in a likelihood of confusion").  Even the district court agreed with this principle.  Dkt.423 at 22-23 (collecting cases).

The dubious theory that has been offered to support the notion that keyword purchasing nonetheless constitutes trademark infringement is the so-called doctrine of "initial-interest confusion"—a controversial, "court-created doctrine" used "to hold that defendants have committed trademark infringement even when no one is ever likely to be confused by the use of the trademark."  Jennifer E. Rothman, *Initial Interest Confusion:  Standing at the Crossroads of Trademark Law*, 27 CARDOZO L. REV. 105, 108 (2005).  Initial-interest confusion allows a trademark plaintiff to claim infringement when consumer confusion allegedly occurs before the point of sale, but is "dispelled before an actual sale occurs."  *Lerner & Rowe*, 119 F.4th at 718.  Initial-interest confusion has not been embraced by this Court, *see Suntree Techs. Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1347 (11th Cir. 2012); *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1167 n.4 (11th Cir. 2019), nor should it be.

Even if initial-interest confusion were cognizable, keyword purchasing would not create confusion. As the Supreme Court recently explained, "trademarks exist" "to prevent consumers from being confused about *which company is providing a product or service*." *Dewberry Grp. v. Dewberry Engineers, Inc.*, No. 23-900, slip op. at 2 (U.S. Feb. 26, 2025). Accordingly, even courts that do recognize initial-interest confusion "require a showing of intentional deception to sufficiently plead internet-related initial-interest confusion because consumers diverted on the Internet can more readily get back on track than those in actual space." *1-800 Contacts*, 119 F.4th at 247; *see Lerner & Rowe*, 119 F.4th at 718. Providing consumers with additional choices is neither deceptive nor unfair. As a leading treatise explains:

> [An] analogy would be a customer walking into a brick and mortar retail computer store and asking the salesperson to show him a DELL laptop. Assume hypothetically, that competitor LENOVO offers the retailer a higher margin of profit than DELL. So the salesperson guides the customer over to a counter with LENOVO computers, saying: "DELL laptops are great, but have you looked at the new LENOVO?"
>
> …. In this hypothetical LENOVO has "bought" the DELL mark and other competing brands in the sense that the salesperson is motivated to mention LENOVO as an alternative. The customer is diverted or distracted, but certainly not "confused" or "deceived."

McCarthy, *supra*, § 25A:8; *see also Adler v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 428 (5th Cir. 2021) ("[I]n the context of internet searches and search-engine advertising in particular, the critical issue is whether there is consumer confusion.

Distraction is insufficient."). "One of the greatest dangers of initial interest confusion is that it is often used to deny consumers access to information about the goods and services offered by competing sellers." Rothman, 27 CARDOZO L. REV. at 129. In McCarthy's LENOVO–DELL analogy, adopting initial-interest confusion as a variety of trademark infringement would deny the customer access to information about LENOVO simply because he had initially requested a DELL laptop, thereby barring the consumer from making an informed purchasing choice.

For these reasons, NOCO cannot be held liable for "keyword bidding" alone, which as a matter of law, does not constitute trademark infringement. Dkt.399(159:4, 18-24); Dkt.341(189:12-21); Dkt.403(30:22-31:4). One category of NOCO's Amazon.com advertisements accused of infringement were ads that did not contain the term "battery tender," but were displayed to purchasers as the result of NOCO's keyword purchases for that term. PX-237; PX-239; DX-520. These ads could not have caused confusion regarding the source of the advertised products. As with the Warby Parker advertisements that the Second Circuit held did not create confusion, NOCO's ads were labeled as such, "prominently display[ed]" NOCO's "own mark," and were "devoid of" DTC's marks. *1-800 Contacts*, 119 F.4th at 252-53; *see supra* 11-12.

## 2. NOCO's other Amazon.com advertisements likewise did not infringe

The same goes for the other category of Amazon.com advertisements at issue—those that incorporated the term "battery tender" within the text of the ad. This latter category of advertisements consisted of 24 Sponsored-Brand ads, and (at most) 14 product descriptions that included the term "battery tender" (in lower case) in fine print within a lengthy paragraph on the fourth page of a NOCO-branded battery charger product page on Amazon.com (DX-308A−DX-308X; PX-51; PX-230; PX-54; PX-55A−PX-60A).

DTC's case here suffered from a basic failure of proof:  Nowhere did DTC show that consumers were likely to be confused by these advertisements into thinking that they were purchasing a Deltran product instead of a NOCO product because of these advertisements.

*First*, NOCO's Amazon.com "Sponsored" ads—which were labeled as such—included the term "battery tender" used within a sentence in a general manner, alongside images of various NOCO products identified prominently with NOCO's logo, NOCO's registered trademarks (PX-144D−PX-144G), and NOCO product names.  There was no question that NOCO—not Deltran, not anyone else—was the source of the products.



DX-308A at 2. As for the fine-print product descriptions that were briefly and inadvertently put on Amazon.com, DTC offered no evidence that any consumer would—or did—scroll down the page to see "battery tender" in the product description and become confused about the source of the product they were being offered:



*Second*, DTC lacked *actual* confusion evidence, which this Court calls one of the "most important" factors in assessing likelihood of confusion. *Fla. Int'l*

*Univ. Bd. of Trustees*, 830 F.3d at 1255, 1265.  At trial, DTC proffered but two (or, generously counting, three) consumer messages that it contended could suggest a lack of consumer clarity as to the source of NOCO's devices.  None of that evidence was linked to *any* of the allegedly infringing Amazon.com ads.  *See* PX-147 (email from dealer to Deltran asking about dealer pricing on "G3500 3.5 amp battery tender"; "G3500" is a NOCO product); PX-138 (NOCO customer-service chat transcript with Deltran's director of advertising, *see* Dkt.341(42:6-7, 63:3-25), showing that the Deltran employee making the inquiry understood that "Battery Tender" is a "different brand" from NOCO); PX-162A (forwarding to a NOCO employee an email chain with two separate links to a Deltran Battery Tender product and asking for additional information).[6]  What is more, any purported "confusion" in those documents stems from DTC's efforts to claim weak trademark rights over a class of products, as the NOCO chat representative attempted to explain to the Deltran employee who was trying to gather evidence for this litigation.  PX-138 at NOCO00004827 ("Battery Tender is a specific brand, but 'a battery tender' is a maintainer for your batteries ....").

---

[6] In its JMOL opposition, DTC pointed to another exhibit introduced, but never discussed, at trial—a customer asking NOCO "Which battery tender to buy?" because "I had a Deltran battery tender plus and [i]t failed."  PX-189.  This email did not show confusion; instead, it showed (a) the consumer's generic use of the term "battery tender" and (b) her unconfused knowledge that she owned a failed Deltran version of that generic type of product.

These few messages were insufficient as a matter of law to demonstrate a likelihood of confusion. For example, in *Florida International University Board of Trustees*, "two instances of alleged actual consumer confusion" were "insufficient evidence of actual confusion to weigh in favor of finding a likelihood of confusion." 830 F.3d at 1264. In *Tana v. Dantanna's*, a single affidavit averring confusion, even if believed, was "so minimal as to be practically insignificant" and "no reasonable jury would conclude" that the only other evidence, consisting of "an inquiry by only two customers of a possible connection between the [parties]," demonstrated "actual confusion." 611 F.3d 767, 779 (11th Cir. 2010). Other courts have likewise held that *de minimis* instances of actual confusion cannot support a finding of likelihood of confusion. *See Lerner & Rowe*, 119 F.4th at 720 ("No reasonable jury would conclude that" "236 calls representing actual confusion" out of "the 109,322 consumers who saw the advertisement" "is anything but de minimis[.]"); *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 635-36 (6th Cir. 2002) (holding six misdirected email messages "legally insignificant" and noting that "[t]he owner of a trademark is not entitled to a guarantee against confusion in the minds of careless and indifferent buyers"); *Checkpoint Sys., Inc. v. Check Point Software, Tech., Inc.*, 269 F.3d 270, 298-99 (3d Cir. 2001) (explaining that evidence of actual confusion, including plaintiff's receipt of e-mails and customer inquiries pertaining to the defendant's products,

was "limited," "isolated," and "de minimis" because of the companies' size and number of e-mails and inquiries they receive).

In the absence of actual confusion evidence, the typical proxy for demonstrating a likelihood of confusion is a survey, which DTC never provided. *See supra* 26-27; *see also, e.g.*, *Fla. Virtual Sch. v. K12, Inc.*, No. 6:20-CV-2354-GAP-EJK, 2023 WL 6294569, at *7 (M.D. Fla. Sept. 5, 2023) ("[W]ith its limited proof of actual confusion, the Court finds it odd that Plaintiff conducted no statistical survey to measure the likelihood of confusion, which is typical in cases like this.").

DTC's failure to come forward with confusion evidence at trial is especially significant because NOCO's alleged infringements took place over a five-plus-year-long period, starting as early as December 2014 and ending as late as March 2020. *See* PX-61A; PX-61D; PX-61F; Dkt.343(68:3-6, 130:5-132:4); Dkt.354(218:7-219:18); Dkt.356(29:16-30:6, 36:18-37:4); Dkt.341(204:18-21); Dkt.423, at 15. Thus, there was "enough opportunity for confusion to make the absence of any evidence significant." *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1362 (11th Cir. 2019) (lack of evidence of actual confusion was "significant" given consumers' extensive exposure to the marks and ample opportunities for confusion).

*Third*, the other "most important" likelihood-of-confusion factor—"strength of the allegedly infringed mark"—similarly demonstrates no likelihood of consumer confusion. Because "battery tender" is weak if not generic, no reasonable jury could find that the strength-of-the-mark factor favored DTC. *See supra* 23-31. DTC has even conceded the conceptual weakness of its alleged mark—its registration for "BATTERY TENDER" (PX-2A) includes a claim of acquired distinctiveness pursuant to Section 2(f) of the Lanham Act, and a disclaimer of the word "BATTERY." *See, e.g.*, *Outdoor Kids, Inc. v. Parris Mfg. Co.*, 385 F. App'x 992, 994 (Fed. Cir. 2010) (amendment of application to Section 2(f) and disclaimer of "KIDS" in OUTDOOR KIDS was an "admi[ssion] that the OUTDOOR KIDS mark is not an inherently distinctive mark and that the words are merely descriptive of its goods, with the word 'KIDS' being generic").

Accordingly, because "battery tender" is weak at best, and NOCO did not use it in a manner likely to cause confusion, no reasonable jury could find NOCO liable for trademark infringement. As "the legal analysis is the same" for DTC's Lanham Act, common-law trademark infringement and FDUTPA claims, they rise and fall together. *Suntree Techs.*, 693 F.3d at 1345; *see Nat. Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1333 (11th Cir. 2008). Furthermore, because DTC's trademark infringement claims fail, there can be no willful infringement, and NOCO was entitled to judgment on that ground as well.

In rejecting NOCO's post-judgment motions, the district court pointed to just two emails from customers, only one of which, as shown above, can even plausibly be read to suggest a lack of consumer clarity as to the source of NOCO's battery-tender devices. Dkt.458 at 6; *see* PX-147; PX-162A. The court then conclusorily alluded to additional "evidence presented at trial," without actually citing that evidence. Dkt.458 at 6. But, of course, all DTC offered were isolated, *de minimis* examples—none linked to NOCO's Amazon.com advertising—and no survey demonstrating confusion. That is insufficient to support the verdict. *Fla. Int'l Univ. Bd. of Trustees*, 830 F.3d at 1264; *Tana*, 611 F.3d at 779.

<p style="text-align:center">*     *     *     *</p>

All told, DTC's liability theory was that NOCO's mere mention or use of the term "battery tender" inherently caused likely confusion. Dkt.403(30:22-31:4) (DTC's closing argument; urging that "each time [NOCO] uses the name [Battery Tender] in an ad messaging, each time that NOCO makes an excessive keyword bid for the name … [e]ach such use is likely to cause confusion as to the source or affiliation of [DTC]'s brand"). And from that expansive premise, DTC then relied on speculation about what a customer "may" or "might" see or think, *id.*(31:5-12), without proof of actual or even likely confusion, leading to this preposterous conclusion: "Each use by NOCO is an infringement on Deltona's property. It is akin to corporate identity theft." *Id.*(31:13-15). That theory would imbue

trademarks with patent- or copyright-like powers, giving them a far greater reach than either the Lanham Act or the common law of trademarks has ever allowed.

Judgment for NOCO is warranted on its trademark-infringement claims. At minimum, a new trial is required because monetary damages flowed from erroneous jury instructions to which NOCO objected—allowing the jury to consider whether NOCO's use of the terms "Tender(s)" and "tender(s)"—generic terms for which DTC proffered no evidence of trademark rights or registrations, and which NOCO never used in a standalone context—was likely to cause confusion with DTC's trademarks. Dkt.314 at 13-15; Dkt.315 at 3-4; Dkt.356(212:-25-216:21, 219:23-220:7, 231:2-24). No reasonable jury could find NOCO's generic use of these terms was likely to cause confusion, yet damages may have been awarded on this basis, warranting a new trial. *Mark Seitman & Assocs., Inc. v. R.J. Reynolds Tobacco Co.*, 837 F.2d 1527, 1532 (11th Cir. 1988).

### C. The District Court Should Have Granted Judgment to NOCO on DTC's Claim Under FDUTPA for Failure To Show Consumer Harm

The Court denied NOCO's Rule 50(b) motion on DTC's claim under FDUTPA because, incorporating its Rule 50(a) ruling by reference, it determined that DTC was a "consumer" under FDUTPA, and thus its own alleged damages could support a claim under that act. Dkt.410 at 5; Dkt.458 at 4.

This ruling misread the statute. "While an entity does not have to be a consumer to bring a FDUTPA claim, it still must prove the elements of the claim, *including an injury to a consumer*." *Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So.3d 207, 212 (Fla. App. 4th Dist. 2019); *see also Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach County, Inc.*, 169 So.3d 164, 169 (Fla. App. 4th Dist. 2015) (emphasizing requirement of consumer injury); *Env't Mfg. Sols., LLC v. Fluid Group, Ltd.*, No. 18-156, 2018 WL 3635112, at *16 (M.D. Fla. May 9, 2018), *affirmed & adopted*, 2018 WL 6264836 (M.D. Fla. Nov. 30, 2018) ("Although competitors may bring FDUTPA claims for damages, the 2001 amendment did not wholly eliminate the need for *consumer injury*."); *CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, No. 16-186, 2018 WL 905752, at *15 (M.D. Fla. Feb. 15, 2018) ("That an entity other than a consumer can bring a FDUTPA claim does not mean, however, that '[h]arm to consumers is not required' as suggested by [the defendant] ....").

DTC was not a "consumer" under the Act and could not have been injured by any of NOCO's allegedly wrongful acts. Although DTC could have had standing as a non-consumer to "bring" the claim, it was required to "prove" as an essential element of the claim "an injury to a consumer." *Stewart Agency*, 266 So.3d at 212. Yet by declaring DTC a "consumer" when it was anything but, the court erred: DTC never claimed, nor proved, that DTC itself—the alleged

-46-

"consumer"—was confused and thus harmed by NOCO's actions. This failure is "fatal" to DTC's FDUTPA claim. *South Broward Hosp. Dist. v. Elap Servs., LLP*, No. 20-61007, 2023 WL 6547748, at *9 (S.D. Fla. Sept. 30, 2023).

At trial, DTC presented evidence of only a single interaction with only one customer: Deltran's director of advertising testified about a second-hand experience with a customer who allegedly called Deltran to relay its shopping experience with NOCO. Dkt.341(60:12-62:21). Notably absent from this testimony, however, was any indication that the customer was injured. Indeed, the customer recognized that the product NOCO was selling was not a Deltran product. *Id.* ("They called in to us ... [a]nd they said, well, that's not the battery tender charger I was looking for.").

DTC's remaining evidence was its speculative testimony about the *possibility* of consumer confusion. *Id.*(80:25-81:3, 90:4-15); *see also* Dkt.343(138:8-9; 140:22-141:7). This speculation was unaccompanied by any evidence demonstrating that consumers were *actually* (or even *likely*) confused by NOCO's advertisements, and thus cannot support the verdict. *Cf. Car Body Lab Inc. v. Lithia Motors, Inc.*, No. 21-cv-21484, 2021 WL 2658693, at *3 (S.D. Fla. June 22, 2021) (stating that the challenged conduct has "caused consumer confusion," alone, was conclusory and did not plausibly state a claim under FDUTPA). NOCO is entitled to judgment on DTC's FDUTPA claim.

**D. The District Court Should Have Granted Judgment to NOCO of No Damages**

As stipulated to by DTC and determined by the district court, DTC's monetary damages were limited to its claimed efforts to rebuild its reputational goodwill. *See* Dkt.158-7 at 5(96:20-24) ("[DTC is] not pursuing a lost profits damages–actual damages theory here."); Dkt.352-1 at 38 ("[T]o the extent Defendant argues that Plaintiff cannot recoup the money [Deltran] spent on advertising, it is correct."). "A loss of goodwill claim compensates for harm to the value of the business as an ongoing concern and involves complex financial calculations, both before and after the infringement suit." *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1222 (11th Cir. 2010).

Judgment of no damages was warranted for a simple reason: DTC did not show lost goodwill. It presented no evidence that *DTC*—and not nonparties Deltran or Deltran USA—incurred (or would incur) any monetary loss in rebuilding its reputation in the face of the challenged conduct. *See, e.g.*, Dkt.343(170:21-171:5, 173:4-174:10, 178:19-21). Indeed, it boggles the mind to think that DTC—an intellectual-property holding company having one captive customer, Deltran—had any reputation to rebuild.

Basic principles of corporate separateness—applicable to the Lanham Act and to common-law trademark-infringement claims alike—compel this outcome. *See, e.g.*, *Dewberry Grp.*, No. 23-900, slip op. at 5 (observing, in the Lanham Act

context, that "Congress would not have wanted to displace 'bedrock' features of the common law" such as "corporate separateness") (quoting *United States v. Bestfoods*, 524 U.S. 51, 62-63 (1998)).  Neither Deltran entity was a plaintiff in this case, and by avoiding party status, they shielded NOCO and the jury from delving into their structures and finances.

Other than "royalties and building rent," no money flowed between DTC and Deltran (or its subsidiary Deltran USA), and DTC did not reimburse Deltran for increased advertising costs purportedly traceable to the challenged conduct. Dkt.399(228:12-13, 229:7-11).  Nor did Deltran decrease the royalties it paid to DTC as a result of any purported loss of reputation.  *Id.*(230:9-11).  So all available evidence showed that DTC's sole customer, Deltran, perceived no "harm" to DTC's brand or reputation, and did not decrease the value it placed on DTC's trademarks, as would have been required to sustain DTC's damages theory.  *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 477 (6th Cir. 2022) (affirming district court's overturning of damages award where "Max Rack makes no claim that it spent even a dollar seeking to mitigate the damages caused by Core Health's conduct").

Moreover, to recover these alleged damages, DTC needed to *prove* that it suffered actual damages.  *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1252 (11th Cir. 2007) (affirming grant of JMOL to

defendant).  It didn't.  Nowhere did DTC provide the required computation of alleged goodwill damages.  *See Mee Indus.*, 608 F.3d at 1222 ("[plaintiff's] failure to ever present the *required* computation of alleged good will damages and the complexity of the financial calculations that would have *required* expert testimony" justified exclusion of goodwill-damages theory).  And even if DTC could have relied on *Deltran's* alleged monetary losses, DTC still failed to provide any computation or approximation of expenses directly attributable to NOCO's alleged infringement.  *See* Dkt.400(47:21-48:24, 49:2-50:9).

In denying NOCO's Rule 50(a) motion (which reasoning it again embraced in denying NOCO's Rule 50(b) motion), the court concluded that DTC was not required to show the extent of its alleged damages with any sort of specificity.  Dkt.410 at 7.  But DTC had to show the *fact* of damage in addition to the quantum of those damages, *see, e.g.*, *Broan Mfg. Co. v. Assoc. Distribs., Inc.*, 923 F.2d 1232, 1235 (6th Cir. 1991) ("in trademark cases courts draw a sharp distinction between proof of the *fact* of damage and proof of the *amount* of damage" (emphases in original)); "approximat[ion]" is allowable only as to the latter, if a "plaintiff's injury is of such a nature as to preclude the ascertainment of the amount of damages with certainty."  *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1520 (11th Cir. 1990) (citation omitted).  Here, nothing in the record suggests that DTC was damaged at all.

Similarly, DTC had to prove actual damages to recover under FDUTPA. *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1352 (S.D. Fla. 2017). However, unlike Lanham Act damages, "FDUTPA 'actual damages' do not include consequential damages." *Diversified Mgmt. Sols., Inc. v. Control Sys. Rsch., Inc.*, No. 15-81062, 2016 WL 4256916, at *5 (S.D. Fla. May 16, 2016). Thus, DTC could not recover under FDUTPA for goodwill, reputation, or other "stigma damages." *See, e.g.*, *Casa Dimitri*, 270 F. Supp. 3d at 1352. The court never addressed this argument in its Rule 50(a) or 50(b) rulings. *See* Dkt.410 at 6-7; Dkt.458 at 6-7.

## II.  THE DISTRICT COURT ERRED BY INSTRUCTING THE JURY ON A FALSE-ADVERTISING CLAIM THAT DTC NEVER ASSERTED OR PROVED

DTC never asserted a false-advertising claim, yet the jury was instructed on—and found NOCO liable for—false advertising, and included its liability finding as part of the damages award. Dkt.314, Instruction Nos. 14-15, at 24-25; Dkt.315 at 4. NOCO is thus entitled to JMOL on DTC's false-advertising claim, and at least a new trial on the other claims.

Unfair competition and false advertising are "distinct bases" for liability under Section 43(a) of the Lanham Act. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014); *see also Synergy Real Est. of SW Fla., Inc. v. Premier Prop. Mgmt. of SW Fla., LLC*, 578 F. App'x 959, 961 (11th

Cir. 2014) (15 U.S.C. § 1125(a) "sets forth two distinct claims of unfair trade practices: unfair competition under subsection 1125(a)(1)(A) and false advertising under subsection 1125(a)(1)(B)."). They are so distinct that this Court requires them to be pleaded separately, and if a complaint "does not specify which type of Lanham Act claim Plaintiff purports to bring," the "Lanham Act claims" may be "doom[ed]" for this reason alone. *Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc.*, 707 F. App'x 576, 579 (11th Cir. 2017) (affirming dismissal).

The district court improperly instructed the jury on the false-advertising claim. To start, NOCO never had notice of any false-advertising claim. The only Section 43(a) liability theory DTC ever articulated was "unfair competition and false designation of origin." Dkt.1 at 14-15; Dkt.242 at 2; Dkt.356(222:1-7). That is "distinct" from a false-advertising claim, for which DTC would have needed to plead (and eventually prove) that (1) NOCO's "ads ... were false or misleading"; (2) "the ads deceived, or had the capacity to deceive, consumers"; (3) "the deception had a material effect on purchasing decisions"; (4) "the misrepresented product or service affects interstate commerce"; and (5) DTC "has been—or is likely to be—injured as a result of the false advertising." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002); *see also* Dkt.314 at 24. It did nothing of the sort.

Moreover, DTC did not even establish that it had standing to pursue a false-advertising claim.  It never pleaded or proved any *injury* resulting from false advertising, let alone a causal link to a NOCO advertisement.  Dkt.1 at 14-15; Dkt.242, at 2.  *See, e.g.*, *TocMail, Inc. v. Microsoft Corp.*, 67 F.4th 1255, 1264, 1266 (11th Cir. 2023) (no reasonable jury could find plaintiff suffered an injury where it presented only "speculation about what consumers may or may not have done absent [defendant's] advertising that those consumers may or may not have seen"); *Nat. Answers*, 529 F.3d at 1331-33 (false-advertising claim failed where plaintiff "lack[ed] a direct injury").

Finally, DTC neither pleaded nor proved that the ads deceived consumers or that such "deception had a material effect on purchasing decisions."  *Johnson & Johnson*, 299 F.3d at 1247, 1252.

Because no reasonable jury could find NOCO liable for false advertising (nor award damages on that basis), the Court should order JMOL on this claim.  Moreover, "[w]here, as here, a trial court has submitted to the jury an issue not proper for its consideration, we ordinarily order a new trial."  *Seitman & Assocs.*, 837 F.2d at 1532.  Unlike in *Seitman*, the Court cannot "readily isolate the portion of the jury's verdict that is due to the district court's error," *id.* at 1532, because the verdict form did not ask the jury to allocate damages separately for the erroneous false-advertising claim.  *See* Dkt.315 at 4-5.

In its Rule 50(b) order, the court incorporated by reference its Rule 50(a) order from one year prior, which in turn incorporated by reference its oral ruling on NOCO's objection to the false-advertising jury instruction from one year before that.  Dkt.458 at 7.  The court's reasoning was wrong.

*First*, as to notice, the court recognized that the Lanham Act "provides for two distinct claims of unfair trade practices" and observed that the false-advertising "elements are obviously different from the trademark infringement/unfair competition claims."  Dkt.402(8:4-25).  The court further observed that DTC had "labeled its [Section 43(a)] claim 'false designation of origin and unfair competition,'" *not* false advertising.  *Id.*(9:1-2).  Nevertheless, the court concluded that NOCO somehow had notice of this "obviously different" and concededly "distinct claim[]" because:  (1) DTC "cited the relevant section that encompasses false advertising," *i.e.*, Section 43(a); and (2) DTC alleged that NOCO had used "a false designation of origin and misleading description and misrepresentation of fact" and made "numerous allegations involving advertisements."  *Id.*(9:3-11) (citing Dkt.1 at 14-15).  But citing a statutory provision that "encompasses" several types of claims and expressly referring to only one of those types throughout a complaint indicates that the plaintiff is pursuing *only* the stated type of claim.

*Second*, as to whether DTC proved the elements of a false-advertising claim at trial, the court summarily rejected NOCO's arguments, reasoning that NOCO had not "address[ed] the actual evidence"—but without pointing to "the actual evidence."  Dkt.458 at 9.

There was none.  DTC failed to plead—let alone present substantial evidence—that the use of DTC's alleged marks in NOCO's advertising was a "false or misleading" description or representation of fact that *misrepresents the nature, qualities, or geographic origin* of NOCO's goods or those of another person, as required by Section 43(a)(1)(B).  *See* 15 U.S.C. § 1125(a)(1)(B); *Johnson & Johnson*, 299 F.3d at 1247.

In opposing NOCO's motion, DTC cited various NOCO advertisements, but it never showed those advertisements to be "false or misleading" as to the "nature, qualities, or geographic origin" of NOCO's goods.  Dkt.436 at 19-21.  Nor did it prove that the ads deceived consumers, or that such "deception had a material effect on purchasing decisions."  *Johnson & Johnson*, 299 F.3d at 1247.

Rather, DTC's argument appears to be that any mention of its marks in NOCO's advertisement is *per se* false advertising.  *See* Dkt.436 at 19.  If the mere mention of DTC's marks presented a cognizable claim, it could only be under the subsection that DTC actually pleaded, 15 U.S.C. § 1125(a)(1)(A).  But merely

mentioning "battery tender" is not substantial evidence from which a jury could conclude that NOCO engaged in false advertising.

## III. THE DISTRICT COURT ABUSED ITS DISCRETION BY DISGORGING NOCO'S PROFITS AND IMPOSING AN INJUNCTION

### A. The District Court Should Not Have Disgorged NOCO's Profits

Under 15 U.S.C. § 1117(a), disgorgement of profits is not automatic upon a "mere showing of an infringement." *A & H Sportswear Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 209 (3d Cir. 1999) (en banc); *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 349 (5th Cir. 2002). Rather, disgorgement is an equitable remedy, and a court's equitable discretion is circumscribed by "the circumstances" of the case. 15 U.S.C. § 1117(a). As with all equitable remedies, a party seeking disgorgement bears the "burden" to "demonstrate … equitable entitlement" to that remedy. *U.S. Bancorp Mortg. Co. v. Bonner Mall P'Ship*, 513 U.S. 18, 26 (1994). This Court reviews a court's disgorgement award for abuse of discretion, *CFTC v. Sidoti*, 178 F.3d 1132, 1138 (11th Cir. 1999), ensuring that the plaintiff satisfies its "burden of proving the disgorgement figure reasonably approximates the amount of unjust enrichment," *id.*, and "'exercise[s] its equitable power only over property causally related to the wrongdoing.'" *Id.* (quoting *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989)).

1. **The disgorgement award was improper as a matter of law, and therefore an abuse of discretion**

The disgorgement award was inconsistent with established principles of equity.

*First*, the court abused its discretion by not holding that DTC was barred by unclean hands from seeking disgorgement. NOCO was engaged in the same kind of conduct Deltran USA was engaging in—bidding on competitors' trademarks for keyword searches. *See, e.g.*, *Precision Instrument Mfg.v. Auto Maint. Mach. Co.*, 324 U.S. 806, 814-15 (1945) (equity "presupposes a refusal on [the court's] part to be the abettor of iniquity" and "[i]t is a self-imposed ordinance that closes the door[] ... to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief."); *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 241 (1933) ("He who comes into equity must come with clean hands.").

*Second*, the court abused its discretion by not finding DTC equitably estopped. DTC's 2015 representations about what constituted appropriate conduct by NOCO should have barred equitable relief. "Equitable estoppel 'operates to place the person entitled to its benefit in the same position he would have been in had the representations been true.'" *Cigna Corp. v. Amara*, 563 U.S. 421, 441 (2011) (quoting J. Eaton, *Handbook of Equity Jurisprudence* § 62, at 176 (1901)). The three basic elements of equitable estoppel are (i) a misleading communication by one actor; (ii) reliance by the other actor; and (iii) harm resulting to the other

actor from that reliance. D. Dobbs, *Handbook on the Law of Remedies* § 2.3, at 42 (1973). It is a complete defense to infringement. *See, e.g.*, *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 684 (2014) (copyright case); *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1063 (Fed. Cir. 1995) (patent case).

All three equitable-estoppel elements are satisfied here. *See supra* 15-17. DTC's 2015 letters to NOCO misleadingly assured NOCO that using "Battery Tender" in its ads was permissible comparative advertising, and that DTC considered the "matter" "closed" in August 2015 without any needed change to NOCO's keyword-advertising practices. PX-61A; PX-61C. NOCO reasonably relied upon these communications by using "Battery Tender" in certain of its ads and by continuing its keyword-search bidding practices. Dkt.401(213:6-9); Dkt.402(28:18-24). And NOCO was obviously harmed by its reliance.

The court's disgorgement order incorrectly reasoned that this case is not "about" NOCO's "bidding on 'battery tender' as a keyword on Amazon.com" but about "systematic infringement of [DTC]'s marks." Dkt.423 at 9 n.6. But the alleged "systematic infringement" to which DTC pointed at trial *was* "bidding on 'battery tender' as a keyword on Amazon.com." *See* Dkt.399(159:2-5) (DTC's opening statement; describing "NOCO's systemic infringement" as "not just through advertisements, but also through excessive keyword bidding and other

unfair tactics"). In the same footnote, the court rejected as "absurd" NOCO's

showing that the 2015 letters led NOCO to believe that the "matter"—NOCO's use

of "tender" and "battery tender" as keyword searches—was "closed." *Id.* The

court never explained why NOCO's understanding was unreasonable. It *was*

reasonable—DTC knew that NOCO was continuing to advertise using the term

"battery tender" (Dkt.343(128:16-129:10)) yet DTC's subsequent communications

in 2015 and 2018 never objected to NOCO using "battery tender" or "tender" as

search terms. PX-61D at 1-2; PX-61F at 2.

> **2. Even if the district court had been right to award disgorgement, it should have been limited to ███████—the amount attributable to Amazon.com sales**

Disgorgement of an infringer's profits must be limited to the profits actually

attributable to the wrong that is proved. *See, e.g.*, *Hard Candy*, 921 F.3d at 1357.

As this Court instructed in *Slep-Tone Entertainment Corporation v. Johnson*, 518

F. App'x 815 (11th Cir. 2013), when a trademark plaintiff seeks disgorgement, the

plaintiff must first "trace[] those sales in a reliable way to" the infringement. *Id.* at

819. It "defies common sense to assume that all the profits" that a defendant

makes during a particular time period are necessarily "attributable" to its infringing

conduct. *Id.*; *see also, e.g.*, *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767,

772 (2d Cir. 1984).

NOCO presented the only appropriate incremental-profits disgorgement number. Specifically, NOCO's expert economist Ms. Carrie Distler showed the revenue derived from the sales associated with the challenged ads, using an approach that DTC's expert conceded was correct because sales attributable to a specific campaign on Amazon.com can be directly traced (Dkt.405(152:7-153:19, 38:21-24)):

- NOCO sales on Amazon.com where "Battery Tender" was displayed to the shopper in a NOCO advertisement: ▮▮▮▮. Dkt.405(41:2-13).

- NOCO sales on Amazon.com where there was no display of "Battery Tender" but were the result of NOCO keyword purchases of "tender" or "battery tender": ▮▮▮▮. *Id.*

- Total sales on Amazon.com related to NOCO's use of "tender" or "Battery Tender": ▮▮▮▮. *Id.*

Ms. Distler then deducted the "elements of cost or deduction claimed" by NOCO to arrive at incremental profits. 15 U.S.C. § 1117(a). *See* Dkt.405(142:23-144:5). She deducted Amazon's profits on NOCO's products (*id.*(145:13-146:13)) to arrive at net sales; the "standard costs" to NOCO to produce the chargers sold (*id.*(147:21-148:2)); "additional variable costs" of goods sold, comprising "indirect labor, shipping supplies, and insurance" (*id.*(148:7-16)); and other operating costs, including "advertising costs and royalties" (*id.*(149:7-150:17)). Ms. Distler then calculated the incremental profits attributable to sales on Amazon.com where

"Battery Tender" appeared in a NOCO advertisement to arrive at ███████.
*Id.*(158:15-17).

NOCO therefore discharged its statutory burden of "prov[ing] defendant's sales only." 15 U.S.C. § 1117(a). "Defendant's sales" should have been limited to Amazon.com sales, the only sales directly traceable to the complained-of conduct. *Hard Candy*, 921 F.3d at 1357; *Commodity Futures Trading Comm'n v. Sidoti*, 178 F.3d at 1138. By contrast, DTC presented no evidence of allegedly unlawful sales anywhere except for Amazon.com, and DTC is "not entitled to [NOCO]'s profits demonstrably not attributable to the unlawful use of [DTC's] marks." *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942).

But the court erroneously started its analysis with NOCO's gross sales of battery chargers from *all* sources. Dkt.423 at 10. The court suggested (without citing any evidence) that NOCO's "infringement far exceeded this narrow scope," *id.*, but DTC had not proved that at trial. The court's order thus "defies common sense" by "assum[ing] that all the profits" that a defendant makes during a particular time period are necessarily "attributable" to its infringing conduct. *Slep-Tone*, 518 F. App'x at 819.

The court's error further infected its calculation of deductions. *See* Dkt.423 at 14-15. Although NOCO presented evidence of deductions taken for sales on

Amazon.com, the court rejected it because, in its view, "the relevant universe of sales information here is all of Defendant's battery chargers—not only those sold on Amazon.com." *Id.* at 14. This move allowed the court to once again improperly disregard NOCO's proof of "elements of cost or deduction claimed," 15 U.S.C. § 1117(a). The court's disgorgement award should be vacated, or at minimum reduced to the maximum amount supported by the evidence, ███████ .

## B. The District Court Should Not Have Imposed an Injunction

As with disgorgement, injunction is an equitable remedy, and so a plaintiff must "demonstrate … equitable entitlement" to it, including by showing "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). DTC failed to demonstrate its equitable entitlement to this extraordinary remedy. The court abused its discretion in concluding otherwise.

*First*, DTC's unclean hands barred it from seeking an injunction, just as it barred recourse to disgorgement. *See supra* 56-57.

*Second*, DTC failed to establish irreparable harm. DTC relied solely on the rebuttable presumption of irreparable harm, *see* Dkt.338 at 5-7; 15 U.S.C. § 1116(a), but the presumption was rebutted in spades here: DTC had no lost sales; it is suffering no ongoing harm (by its own admission, DTC took "back its brand space" as of February 2020 (Dkt.341(204:18-21)); and there was, as the

district court found, "not evidence of ongoing infringement after March 2020." Dkt.423 at 19.

*Third*, the balance of hardships did not favor the injunction ordered by the district court. Indeed, the injunction is vastly overbroad, reaching conduct that is unquestionably permissible, or was never alleged to be impermissible or found to be infringing by the jury. *See* Dkt.423 at 26-27. "[A]n injunction must be tailored to remedy the specific harms shown rather than to enjoin all possible breaches of the law." *Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1531 (11th Cir. 1996). One problem, as noted above, is keyword use (Dkt.423 at 26-27)—such use does not cause confusion; it is not trademark infringement; and should not have been enjoined. *See supra* 33-36. A second is that the injunction includes products never at issue in this case, including "jump starters." Dkt.423 at 26. A third is that the injunction bars NOCO from using terms that were never adjudicated in this case— "Deltran" and "Tender." Dkt.423 at 26-27. There is no evidence that NOCO ever used the term "Deltran" as a keyword or in an advertisement. Dkt.343(59:12-22). Nor does DTC have exclusive rights in the term "tender" standing alone. Dkt.1; Dkt.343(58:13-16) ("No one owns the word 'tender.'").

Indeed, while NOCO challenges as a matter of law the jury's verdict "that NOCO's use of the terms 'Battery Tender(s),' 'Tender(s),' 'battery tender(s),' *or* 'tender(s),' caused a likelihood of confusion with [DTC]'s BATTERY TENDER

and [DTC]'s DELTRAN BATTERY TENDER" trademarks (Dkt.315 at 3-4), the jury's finding was phrased in the disjunctive ("or"), so the verdict says nothing about which term or terms the jury might have found caused likely confusion. Importantly, DTC holds no trademark rights for the words "Tender(s)" or "tender" (which the court included in the final instructions and verdict form over NOCO's repeated objections), so the injunction should not have reached those impermissible terms, regardless of the verdict. *See* Dkt.400 at 272-73; Dkt.401(266:9-18); Dkt.402(212:25-214:2, 231:4:11); *supra* 43-44.

*Fourth*, the injunction against "battery-related products" (Dkt.423 at 26) is impossibly vague. An injunction must "state its terms specifically," Fed. R. Civ. P. 65(d)(1)(B), and must precisely identify the prohibited conduct, *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1411-12 (11th Cir. 1998). This one did not.

# CONCLUSION

The Court should reverse the judgment of infringement and false advertising, reverse the damages award, or order a new trial. In addition, the Court should vacate the disgorgement award and injunction.

Date: March 12, 2025

Respectfully submitted,

*/s/ Gregory A. Castanias*

Meredith M. Wilkes
JONES DAY
901 Lakeside Ave.
Cleveland, OH 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
mwilkes@jonesday.com

Anna E. Raimer
JONES DAY
717 Texas Ave., Ste. 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
aeraimer@jonesday.com

Gregory A. Castanias
Amelia A. DeGory
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
gcastanias@jonesday.com
adegory@jonesday.com

Kristina K. Cercone
JONES DAY
110 N. Wacker Dr., Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
kcercone@jonesday.com

*Counsel for Defendant-Appellant*

**CERTIFICATE OF COMPLIANCE**

1.      This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 27(a)(2)(B), this document contains 12,992 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated:  March 12, 2025                             Respectfully submitted,

                                                  */s/ Gregory A. Castanias*
                                                  _____

                                                  *Counsel for Defendant-Appellant*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2025, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the Court's Appellate PACER system, which will automatically send a notice of electronic filing to all counsel of record.

I further certify that on March 12, 2025, I caused a copy of the unredacted version of the foregoing brief to be electronically served on all counsel of record.

I further certify that on March 12, 2025, four copies of the redacted and unredacted versions of the foregoing were dispatched via third-party commercial carrier to the following:

David J. Smith, Clerk of Court
U.S. Court of Appeals for the Eleventh Circuit
56 Forsyth Street, NW
Atlanta, GA 30303

Respectfully submitted,

*/s/ Gregory A. Castanias*

*Counsel for Defendant-Appellant*

**ADDENDUM**

# TABLE OF CONTENTS

**Page**

15 U.S.C. § 1125(a) ...................................................................................... A1

15 U.S.C. § 1127 ........................................................................................... A2

15 U.S.C. § 1117(a) ...................................................................................... A3

15 U.S.C. § 1116(a) ...................................................................................... A4

**15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act)**

**§ 1125 - False designations of origin, false descriptions, and dilution forbidden**

**(a) CIVIL ACTION**

**(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

\* \* \* \*

**15 U.S.C. § 1127**

**§ 1127 – Construction and definitions; intent of chapter**

* * * *

The term "trademark" includes any word, name, symbol, or device, or any combination thereof—

(1) used by a person, or

(2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter,

to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.

* * * *

**15 U.S.C. § 1117(a)**

## § 1117 – Recovery for violation of rights

**(a) PROFITS; DAMAGES AND COSTS; ATTORNEY FEES**

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction . In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

# 15 U.S.C. § 1116(a)

## § 1116 – Injunctive relief

### (a) JURISDICTION; SERVICE

The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order. Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction. Any such injunction granted upon hearing, after notice to the defendant, by any district court of the United States, may be served on the parties against whom such injunction is granted anywhere in the United States where they may be found, and shall be operative and may be enforced by proceedings to punish for contempt, or otherwise, by the court by which such injunction was granted, or by any other United States district court in whose jurisdiction the defendant may be found.