No. 24-13590

# United States Court of Appeals
## *for the*
## Eleventh Circuit

DELTONA TRANSFORMER CORPORATION, a Florida Corporation,

*Plaintiff-Appellee,*

— v. —

THE NOCO COMPANY, an Ohio Corporation,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

## BRIEF OF PLAINTIFF-APPELLEE

JODI-ANN TILLMAN
SHUTTS & BOWEN LLP
201 East Las Olas Boulevard,
  Suite 2200
Fort Lauderdale, Florida 33301
(954) 524-5505

PATRICIA M. FLANAGAN
SHUTTS & BOWEN LLP
525 Okeechobee Boulevard,
  Suite 1100
West Palm Beach, Florida 33401
(561) 835-8500

– and –

CAMILA CHEDIAK
SHUTTS & BOWEN LLP
200 South Biscayne Boulevard,
  Suite 4100
Miami, Florida 33131
(305) 358-6300

*Attorneys for Plaintiff-Appellee*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Eleventh Circuit Rule 26.1-1, Plaintiff-Appellee certifies that the following is a complete list of trial judges, attorneys, persons, associations of persons, firms, partnerships or corporations that have an interest in the outcome of this appeal:

1. Castanias, Gregory A. (Counsel for Defendant-Appellant);

2. Cercone, Kristina K. (Counsel for Defendant-Appellant);

3. Chediak, Camila (Counsel for Plaintiff-Appellee);

4. Clarke, Melodee (more than 10% shareholder of Plaintiff-Appellee);

5. DeGory, Amelia A. (Counsel for Defendant-Appellant);

6. Deltona Transformer Corporation (Plaintiff-Appellee);

7. Flanagan, Patricia M. (Counsel for Plaintiff-Appellee);

8. Jones Day (Counsel for Defendant-Appellant);

9. Malone, Phillip (Counsel for *Amici*)

10. Mendoza, Carlos E. (U.S. District Judge, United States District Court for the Middle District of Florida);

11. Prelec, Michael L., Sr. (more than 10% shareholder of Plaintiff-Appellee Deltona Transformer Corporation);

12. Price, Leslie Hoffman (U.S. Magistrate Judge, United State District Court for the Middle District of Florida);

13.    Raimer, Anna E. (Counsel for Defendant-Appellant);

14.    Schnell, Grant Edward Lavelle (Counsel for Defendant-Appellant);

15.    Shutts & Bowen LLP (Counsel for Plaintiff-Appellee);

16.    Srejovic, Nina (Counsel for *Amici)*

17.    The NOCO Company (Defendant-Appellant);

18.    Tillman, Jodi-Ann (Counsel for Plaintiff-Appellee);

19.    Wilkes, Meredith M. (Counsel for Defendant-Appellant); and

20.    All persons listed on the Certificate of Interested Persons and Corporate Disclosure Statement filed by *Amici* Intellectual Property and Media Law Professors (Doc. 34-1 at 2-5).

No other persons, associations of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent or subsidiary corporations, or other legal entities are financially interested in the outcome of this case or appeal.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit

Rule 26.1-3, undersigned counsel hereby certifies the following:

No publicly held corporation owns 10% or more of Deltona Transformer

Corporation's stock.

 Dated: May 14, 2025                    Respectfully submitted,

                                        **SHUTTS & BOWEN LLP**

                                        */s/ Patricia M. Flanagan*
                                        Patricia M. Flanagan
                                        Florida Bar No. 58592
                                        525 Okeechobee Blvd.
                                        Suite 1100
                                        West Palm Beach, FL 33401
                                        Tel.: (561) 835-8500
                                        Email: pflanagan@shutts.com

                                        Jodi-Ann Tillman
                                        Florida Bar No. 1022214
                                        201 East Las Olas Blvd.
                                        Suite 2200
                                        Fort Lauderdale, FL 33301
                                        Tel.: (561) 835-8500
                                        Email: jtillman@shutts.com

                                        Camila Chediak
                                        Florida Bar No. 1039625
                                        200 South Biscayne Blvd., Suite 4100
                                        Miami, Florida 33131
                                        Tel.: (305) 379-9177
                                        Email: cchediak@shutts.com

                                        *Attorneys for Appellee Deltona*
                                        *Transformer Corporation*

i

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not necessary. The record and the briefs adequately present the facts and law, so this Court's decisional process will not be significantly aided by oral argument. *See* Fed. R. App. P. 34(a)(2)(C). Also, the dispositive issues have been authoritatively decided and there are no issues of first impression to be decided. *See* Fed. R. App. P. 34(a)(2)(B). However, if the Court determines that oral argument would be helpful, counsel will gladly present arguments for the Court's benefit.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ....................................................C-1

CORPORATE DISCLOSURE STATEMENT .......................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................ ii

TABLE OF AUTHORITIES ..................................................................................v

STATEMENT OF THE ISSUES............................................................................1

STATEMENT OF THE CASE................................................................................3

STATEMENT OF FACTS .....................................................................................5

       A.     Deltona's Battery Tender® Brand and Market Prominence.................5

       B.     NOCO'S Infringement and Misuse of The Battery Tender® Trademarks ......................................................................................8

       C.     The Proceedings Below.................................................................13

SUMMARY OF ARGUMENT ...........................................................................15

ARGUMENT .......................................................................................................17

I.      STANDARD OF REVIEW ......................................................................17

II.     THE DISTRICT COURT'S DENIAL OF NOCO'S REQUEST FOR JMOL OR A NEW TRIAL ON DELTONA'S TRADEMARK AND UNFAIR COMPETITION CLAIMS SHOULD BE AFFIRMED ..............19

       A.     Deltona's Battery Tender® Trademarks Are Not Generic and NOCO Failed to Meet Its Burden to Show Otherwise.....................19

       B.     The Issues Raised of Mere Keyword Advertising Is Not Implicated in This Case.................................................................25

       C.     The Jury's Damages Findings Are Supported by The Record .........28

III.    THE DISTRICT COURT'S DENIAL OF NOCO'S REQUEST FOR JMOL OR NEW TRIAL ON DELTONA'S FDUTPA CLAIM SHOULD BE AFFIRMED................................................................................32

IV.    THE DISTRICT COURT PROPERLY INSTRUCTED THE JURY ON DELTONA'S FALSE ADVERTISING CLAIM AND THE VERDICT SHOULD BE UPHELD............................................................36

iii

A.   The Jury Instruction on False Advertising Was Proper Even If the Claim Was Not Pled by Name ..................................... 37

B.   Deltona Proved the Elements of the False Advertising Claim .......... 38

C.   Deltona Had Standing to Pursue the False Advertising Claim .......... 40

D.   Deltona Had Standing to Pursue the False Advertising claim        44

V.   DISTRICT COURT HAD DISCRETION TO AWARD EQUITABLE RELIEF ................................................................. 48

A.   Awarding Disgorgement Was Within the District Court's Discretion ................................................................. 48

B.   NOCO's Unclean Hands and Equitable Estoppel Defenses Were Not Properly Preserved and Must Be Rejected ..................... 50

C.   The Disgorgement Award Was Within the District Court's Discretion ................................................................. 51

D.   Imposition and Scope of Injunction Was Within District Court's Discretion. .......................................... 52

VI.   EXHIBITS NOT ADMITTED SHOULD BE STRICKEN ........................ 53

CONCLUSION ................................................................. 54

CERTIFICATE OF COMPLIANCE .................................... 56

CERTIFICATE OF SERVICE ............................................. 57

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
722 F.3d 1229 (10th Cir. 2013) ................................................................50, 51

*Access Now, Inc. v. Sw. Airlines Co.*,
385 F.3d 1324 (11th Cir. 2004) ...............................................................44, 50

*Aceto Corp. v. TherapeuticsMD, Inc.*,
953 F. Supp. 2d 1269 (S.D. Fla. 2013) ...........................................................33

*ADT LLC v. Vivint, Inc.*,
2017 WL 8404330 (S.D. Fla. Nov. 20, 2017) .................................................29

*Amstar Corp. v. Domino's Pizza, Inc.*,
615 F.2d 252 (5th Cir. 1980) ..........................................................................20

*Anderson v. City of Bessemer City, N.C.*,
470 U.S. 564 (1985)........................................................................................18

*Angel Flight of Georgia, Inc. v. Angel Flight America, Inc.*,
522 F.3d 1200 (11th Cir. 2008) ......................................................................53

*Aronowitz v. Health-Chem Corp.*,
513 F.3d 1229 (11th Cir. 2008) ...........................................................28, 29, 30

*Axiom Worldwide, Inc. v. Excited Medical Corp.*,
591 F. App'x 767 (11th Cir. 2014) ............................................................48, 49

*Beacon Prop. Mgt., Inc. v. PNR, Inc.*,
890 So.2d 274 (Fla 4th DCA 2004)................................................................34

*Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*,
765 F.3d 1277 (11th Cir. 2014) ......................................................................41

*Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc.*,
707 F. App'x 576 (11th Cir. 2017)..................................................................40

\* Chief Authorities are marked with an asterisk.

*Burger King Corp. v. Pilgrim's Pride Corp.*,
   934 F. Supp. 425 (S.D. Fla. 1996) ....................................................49

*Caribbean Cruise Line, Inc. v.*
   *Better Business Bureau of Palm Beach County, Inc.*,
   169 So.3d 164 (Fla. 4th DCA 2015)..............................................35

*CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*,
   2018 WL 905752 (M.D. Fla. Feb. 15, 2018)................................35

*Coughlin v. Capitol Cement Co.*,
   571 F.2d 290 (5th Cir. 1978) .............................................................18

*Cruz v. Coach Stores, Inc.*,
   202 F.3d 560 (2d Cir. 2000) ..............................................................38

*Davidoff & CIE, S.A. v. PLD Int'l Corp.*,
   263 F.3d 1297 (11th Cir. 2001) .......................................................35

*David-Trujillo v. U.S. Atty. Gen.*,
   502 F. App'x 876 (11th Cir. 2012)............................................27, 50

*Doss v. South Central Bell Telephone Co.*,
   834 F.2d 421 (5th Cir. 1987) .............................................................44

*Env't Mfg. Sols., LLC v. Fluid Grp., Ltd.*,
   2018 WL 3635112 (M.D. Fla. May 9, 2018) .................................35

*Frehling Enter., Inc. v. Int'l Select Grp., Inc.*,
   192 F.3d 1330 (11th Cir. 1999) .................................................22, 26

*FSC Franchise Co., LLC v. Express Corp. Apparel*,
   2011 WL 1226002 (M.D. Fla. Feb. 28, 2011)................................49

*Furmanite Am., Inc. v. T.D. Williamson, Inc.*,
   506 F. Supp. 2d 1134 (M.D. Fla. 2007)...........................................34

*Gilbane Bldg. Co. v.*
   *Fed. Reserve Bank of Richmond, Charlotte Branch*,
   80 F.3d 895 (4th Cir. 1996) ...............................................................42

*Hidalgo Corp. v. J. Kugel Designs, Inc.*,
   509 F. Supp. 2d 1247 (S.D. Fla. 2007)............................................35

*Hill Dermaceuticals, Inc. v. Anthem, Inc.*,
  228 F. Supp. 3d 1292 (M.D. Fla. 2017)............................................................33

*Howard Johnson Co. v. Khimani*,
  892 F.2d 1512 (11th Cir. 1990) .........................................................................31

*Hurley v. Moore*,
  233 F.3d 1295 (11th Cir. 2000) .........................................................................44

*Hutchinson v. Pfeil*,
  211 F.3d 515 (10th Cir. 2000) ...........................................................................47

*Jacobson v. Florida Sec'y of State*,
  974 F.3d 1236 (11th Cir. 2020) .........................................................................45

*Johnson v. Bryant*,
  671 F.2d 1276 (11th Cir. 1982) .........................................................................42

*Kellogg Co. v. Nat'l Biscuit Co.*,
  305 U.S. 111 (1938).............................................................................................23

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992).............................................................................................45

*Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*,
  932 F.3d 1303 (11th Cir. 2019) .................................... 17, 18, 37, 41, 42, 43, 44

*Macro Island Cable v. Comcast Cablevision of the South, Inc.*,
  312 F. App'x 211 (11th Cir. 2009) ....................................................................36

*Maiz v. Virani*,
  253 F.3d 641 (11th Cir. 2001) ...........................................................................20

*Mee Indus. v. Dow Chemical Co.*,
  608 F.3d 1202 (11th Cir. 2010) .........................................................................30

*Merck Eprova AG v. Gnosis S.p.A.*,
  760 F.3d 247 (2d Cir. 2014) ..............................................................................47

*Miller v. Universal City Studios, Inc.*,
  650 F.2d 1365 (5th Cir. 1981) .....................................................................18, 41

*Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*,
  702 F.3d 1312 (11th Cir. 2012) ............................................23, 24, 25

*Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*,
  316 U.S. 203 (1942).......................................................................49

*NACM Tampa, Inc. v. Sunray Notices, Inc.*,
  2017 WL 2209970 (M.D. Fla. Feb. 8, 2017).....................................34

*Nat. Answers, Inc. v. SmithKline Beecham Corp.*,
  529 F.3d 1325 (11th Cir. 2008) ........................................................47

*Nelson v. Mead Johnson Nutrition Co.*,
  270 F.R.D. 689 (S.D. Fla. 2010)......................................................34

*Nora Beverages, Inc. v. Perrier Grp. Of Am., Inc.*,
  164 F.3d 736 (2d Cir. 1998) .............................................................21

*Nutradose Labs, LLC v. Bio Dose Pharma, LLC*,
  710 F. Supp. 3d 1200 (S.D. Fla. Jan. 9, 2024),
  *aff'd sub nom. Nutradose Labs, LLC v. Santamarta*,
  2025 WL 337971 (11th Cir. Jan. 30, 2025).......................................33

*Nutrivida, Inc. v. Immuno Vital, Inc.*,
  46 F. Supp. 2d 1310 (S.D. Fla. 1998) ......................................... 48-49

*Optimum Tech., Inc. v. Henkel Consumer Adhesives, Inc.*,
  496 F.3d 1231 (11th Cir. 2007) ........................................................31

*Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*,
  2011 WL 2295269 (S.D. Fla. June 8, 2011).....................................49

*Pensacola Motor Sales Inc. v. Eastern Shore Toyota, LLC*,
  684 F.3d 1211 (11th Cir. 2012) ........................................................18

*Platinum Prop. Inv. Network, Inc. v. Sells*,
  2023 WL 7144676 (S.D. Fla. Sept. 18, 2023)...................................29

*PlayNation Play Sys., Inc. v. Velex Corp.*,
  924 F.3d 1159 (11th Cir. 2019) ........................................................22

*\*PODS Enter., LLC v. U-Haul Int'l, Inc.*,
  126 F. Supp. 3d 1263 (M.D. Fla. 2015).............................4, 22, 29, 36

*Pom Wonderful LLC v. Hubbard,*
   2016 WL 3621281 (C.D. Cal. June 29, 2016) .................................................. 21

*Ramada Inns, Inc. v. Gadsden Motel Co.,*
   804 F.2d 1562 (11th Cir. 1986) .......................................................................... 29

*Roe v. Aware Woman Ctr. for Choice, Inc.,*
   253 F.3d 678 (11th Cir. 2001) ............................................................................ 38

*Shelak v. White Motor Co.,*
   581 F.2d 1155 (5th Cir. 1978) ............................................................................ 18

*Skydive Arizona, Inc. v. Quattrocchi,*
   2009 WL 6597892 (D. Ariz. Feb. 2, 2009),
   *aff'd*, 673 F.3d 1105 (9th Cir. 2012) ................................................................. 21

*State, Office of Atty. Gen., Dep't of Legal Affairs v.*
   *Wyndham Int'l. Inc.,*
   869 So.2d 592 (Fla. 1st DCA 2004) .................................................................. 34

*Stewart Agency, Inc. v. Arrigo Enters., Inc.,*
   266 So.3d 207 (Fla. 4th DCA 2019) .................................................................. 35

*Suntree Tech., Inc. v. Ecosense Int'l, Inc.,*
   693 F.3d 1338 (11th Cir. 2012) .......................................................................... 33

*Synergy Real Estate of SW Florida, Inc. v.*
   *Premier Prop. Mgmt. of SW Florida, LLC,*
   578 F. App'x 959 (11th Cir. 2014) .................................................................... 39

*TocMail, Inc. v. Microsoft Corp.,*
   67 F.4th 1255 (11th Cir. 2023) ...................................................... 18, 45, 46, 47

*U.S. S.E.C. v. Big Apple Consulting USA, Inc.,*
   783 F.3d 786 (11th Cir. 2015) ............................................................................ 17

*United States v. Dwoskin,*
   644 F.2d 418 (5th Cir. 1981) .............................................................................. 54

*United States v. Isnadin,*
   742 F.3d 1278 (11th Cir. 2014) .......................................................................... 18

ix

*Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*,
　833 F.2d 1484 (11th Cir. 1987) .................................................................48, 49

*Wreal, LLC v. Amazon.com, Inc.*,
　38 F.4th 114 (11th Cir. 2022) ...........................................................................22

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*,
　419 F.3d 925 (9th Cir. 2005) ............................................................................21

*Zlotnick v. Premier Sales Grp., Inc.*,
　480 F.3d 1281 (11th Cir. 2007) ........................................................................33

## Statutes

15 U.S.C. § 1064(3) ..............................................................................................4

15 U.S.C. § 1114...........................................................................................17, 28

15 U.S.C. § 1117................................................................................................16

15 U.S.C. § 1117(a) .......................................................................................5, 49

15 U.S.C. § 1125................................................................................................17

15 U.S.C. § 1125(a) .....................................................................................28, 41

28 U.S.C. § 2111.........................................................................................37, 38

Fla. Stat. § 501.202(2)......................................................................................33

Fla. Stat. § 501.204(1)......................................................................................33

Fla. Stat. § 501.211 ...........................................................................................34

## Other Authorities

2 McCarthy on Trademarks and Unfair Competition § 12:13.................................21

Eleventh Circuit Pattern Jury Instructions (2013) § 3.6.1 ......................................26

Eleventh Circuit Pattern Jury Instructions (2013) § 10.1 .......................................26

Eleventh Circuit Rule 30-1(a)...............................................................................54

Fed. R. Civ. P. 8(c)..............................................................................................50

Fed. R. Civ. P. 15(b) ....................................................................37, 40, 41

Fed. R. Civ. P. 15(b)(1)...........................................................................37

Fed. R. Civ. P. 52(A)(6)....................................................................18, 19

Fed. R. Civ. P. 54(c)................................................................................42

Fed. R. Civ. P. 61 .............................................................................37, 38

TMEP § 807.03(a).....................................................................................23

## STATEMENT OF THE ISSUES

This is an appeal from a final judgment against Defendant-Appellant The NOCO Company ("NOCO") in favor of Plaintiff-Appellee Deltona Transformer Corporation ("Deltona") in a trademark infringement action, entered after a 7-day jury trial and a 1-day bench trial. It presents two sets of issues.

The first set of issues relates to the district court's findings on the merits following jury trial:

1.      Did the district court correctly deny NOCO's claims for judgment as a matter of law and new trial request concerning Deltona's infringement, unfair competition, and false advertising claims, where there was substantial evidence presented of the trademarks' distinctiveness, likelihood of confusion, and consumer confusion and deception, and legally insufficient evidence on NOCO's defenses and counterclaims?

   a. Does the record support the jury's finding that NOCO did not meet the heavy burden of proving the asserted trademarks were generic before NOCO's 2014 infringement began?

   b. Does the record support the jury's finding that NOCO's actions were likely to cause confusion, given the evidence of NOCO's systematic infringement and multi-faceted manipulation of the marketplace, which

1

exploited Deltona's goodwill and reputation, resulting in harm to Deltona's brand and substantial growth in NOCO's revenue?

c.  Does the record support the jury's finding of damages, given the sufficient evidence of harm to Deltona's goodwill and reputation, and the substantiated claims of willful infringement and consumer confusion, even when damages were not precisely calculable?

d.  Does the record support the jury's finding of a violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), given the evidence of consumer confusion and NOCO's deceptive practices, and where the damages awarded consistent with the statute's purpose and supported by the record?

2.     Did the district court correctly instruct the jury on the false advertising claim, given that Deltona proved the necessary elements and NOCO had sufficient notice, and evidence showed NOCO's advertisements were false or misleading, had deceived customers, and had materially affected purchasing decisions, in line with the controlling legal standards?

The second set of issues relate to the district court's order entered after the bench trial:

3.     Did the district court act within its discretion to order equitable relief, including disgorgement of profits, given the evidence of NOCO's willful

2

infringement, the need to address NOCO's unjust enrichment, and to deter future violations?

4.    Did the district court properly exercise discretion imposing an injunction to prevent further harm to Deltona and protect its trademark rights, given the likelihood of continued infringement by NOCO, where the tailored nature of the injunction addresses specific harms, is not overly broad, and is consistent with trademark protection principles?

## STATEMENT OF THE CASE

This case involves trademark infringement, unfair competition, and false advertising claims, caused by NOCO's exploitation of Deltona's well-established Battery Tender® brand and goodwill built over three decades.

NOCO, originally selling chemical and plastic products, entered the battery charger market in 2009, two decades after the Battery Tender® brand was established. Struggling to compete with Deltona's well-known brand, NOCO began using unfair tactics to leverage Deltona's goodwill and reputation. As early as 2014, NOCO's leadership decided to use "Battery Tender" in their marketing, as evidenced by an email from Chief Visionary Officer Jonathan Nook. This marked the start of NOCO's intentional infringement and exploitation of Deltona's goodwill and reputation.

The evidence presented at trial demonstrated that NOCO engaged in systematic infringing activities, including a multi-faceted approach to manipulate the marketplace to benefit from Deltona's goodwill and reputation, and also to harm Deltona as the brand owner. NOCO's actions included using the "Battery Tender" trademarks in marketing, advertisements, and direct communications with customers. NOCO's salespeople told its customers that NOCO's chargers were "Battery Tender" chargers. NOCO used the goodwill of the Battery Tender® brand to substantially grow its annual revenue for its charger products and received a windfall from Deltona's goodwill and reputation.

In an attempt to avoid responsibility for its infringement and false advertising, NOCO claimed the brand had become a generic term for a type of battery chargers. The trial revealed NOCO lacked any legitimate or legally sufficient evidence to support this genericness[1] excuse.

The jury rejected NOCO's genericness excuse and correctly applied Eleventh Circuit law to find in favor of Deltona on all of its infringement, unfair competition,

---

[1] "The test for genericness is the 'primary significance of the mark to the relevant public,' with the relevant public being actual or potential purchasers of the goods in question." *PODS Enter., LLC v. U-Haul Int'l, Inc.,* 126 F. Supp. 3d 1263, 1278 (M.D. Fla. 2015). Thus, mark become "generic" when the primary significance to the relevant public is as the name for a particular type of good, irrespective of its source. 15 U.S.C. § 1064(3). Meaning, majority perception controls, even if some minority segment of the relevant public considers the term a trademark.

and false advertising claims.  The jury further found that NOCO's primary owners were personally guilty of intentional misconduct or gross negligence, which was a substantial cause of loss, injury, or damage to Deltona.  Bound by these findings, the district court granted disgorgement pursuant to 15 U.S.C. § 1117(a) and permanent injunction.

Lacking any legitimate basis for this appeal, NOCO's Brief focuses on nuanced issues not implicated by this case and raises no basis in this appeal to disturb the jury's verdict, the district court's orders, or the judgment entered.[2]

## STATEMENT OF FACTS

### A.    Deltona's Battery Tender® Brand and Market Prominence

Deltona is a Florida corporation with its principal place of business in Deland, Florida (ECF 242 at 20; ECF 399 at 181:23-24), and is the owner of the federally registered trademarks Battery Tender® and Deltran Battery Tender®, and the common law rights and substantial goodwill associated therewith, as used, *inter alia*, in association with charger products, primarily in the powersports, marine, and automotive industries (ECF 242 at 20-21; ECF 399 at 6:23-25; PX-1A; PX-1B), including the following federal registrations:

---

[2] Beyond spending most of its brief arguing unimplicated issues, NOCO sent numerous letters to intellectual property trade organizations and managed to wrangle a single brief. The *amicus* brief (Doc. 44) does not transform the relevance of the issues.

a. U.S. Reg. Nos. 4281421 and 3474591 for incontestable Battery Tender® and Deltran Battery Tender® marks (PX-1A; PX-1B; PX-3A; PX-3B).

b. U.S. Reg. Nos. 4750963, 6107945, 6107947, 6107946, and 6107944 for the Battery Tender®, Battery Tender Junior 800®, Battery Tender Power Plus® Battery Tender Plus® and Battery Tender Junior® trademarks (PX-1E, PX-1F, PX-1G, PX-1H, PX-1I).

In the early 1990s, Deltona started making chargers that incorporated technology that would charge a vehicle's battery until it was fully charged, and then maintain the full charge until the vehicle's next use. *See* ECF 399 at 184:20-185-3. The brand name was derived from the co-founder's World War II experience, in which "tender" boats would provide aide to the U.S. Marines Corps and U.S. Army as lifeboats and supply boats. *Id.* at 200:24-201:18. The phrase did not exist prior to Deltona's use and was made up based on the co-founder's experience in which he believed his charger product would take care of a battery. *Id.* at 201:13-18.

Deltona's Battery Tender® charger products are used for automobiles, motorcycles, powersport vehicles, watercraft, and small aircraft, and on various products, including jump starters, and accessories. *Id.* at 185:7-186:25; ECF 341 at 103:7-12.

Early on, Deltona invested in its brand to build its goodwill by attending multiple consumer and industry trade shows each year, advertising on TV and in

6

magazines, and sponsoring various events. *See id.* at 187:9-13, 195:25-196:4. Deltona also affiliated itself with the well-known brands, by making a charger product that would be given to customers marked with both companies' brands. *Id.* at 188:11-189:8; ECF 341 at 137:8-11; PX-23; PX-24; PX-25; PX-26; PX-245; PX-246; PX-250. By 2014, Deltona's Battery Tender® brand had been doing very well, selling a million chargers a year. ECF 399 at 196:5-9. At this time, the brand had already received significant renown as an established brand within the industry and community, particularly in the powersports market segment. *Id.* at 196:13-23; ECF 343 at 97:20-98:6; ECF 341 at 107: 23-109:9; ECF 341 at 107:12-17.

In and around 2014, Deltran Operations USA, Inc. (Deltran) became the exclusive licensee of the asserted marks. ECF 341 at 44:5-10; PX-5; ECF 343 at 82:24-84:10. Since that time, Deltran has sourced all branded products, including co-branded or private label products. ECF 341 at 138:8-15. Deltran does not sub-license the asserted marks, and only manufactures products under co-branding agreements. ECF 400 at 50:25-52:25.

Deltona has never authorized or in any way given permission to anyone use the asserted marks for any products not made by Deltona prior to 2014 and, after 2014, only gave permission to use the trademarks to its exclusive licensee, Deltran. Deltona never authorized or gave permission to NOCO to use the asserted marks. ECF 399 at 222:16-18; ECF 343 at 127:18-20, 155:6-159:18 (and admitted exhibits).

7

**B.     NOCO's Infringement and Misuse of The Battery Tender®
Trademarks**

NOCO is an Ohio corporation that historically sold chemical and plastic
products, with its first products ever offered being battery corrosion preventatives.
ECF 401 at 68:10-11.   It was not until 2009 that NOCO decided to expand into
making and selling battery chargers.  *Id.* at 70:13-14.  In connection with NOCO's
attempts to sell its charger product line, the evidence showed that retailers repeatedly
mentioned Deltona's Battery Tender® products in their correspondence with NOCO.
*See, e.g.*, PX-64; PX-66; PX-69; PX-70, PX-78; PX-80; PX-81; PX-82; PX-88; PX-
91; PX-92; PX-93; PX-96; PX-103; PX-162A.   Many refused to carry NOCO's
products because they were already carrying Battery Tender® products.  *See id.*

As early as January 28, 2014, NOCO intended to advertise and indeed began
advertising NOCO's products using the phrase "Battery Tender." DX-19; ECF 402
at 101:14-102:20. Each time Deltona observed an infringing advertisement launched
by NOCO, Deltona's counsel sent a cease-and-desist letter to NOCO. *See, e.g.*, PX-
61A; PX-61C; PX-61D; PX-61E; PX-61F; PX-61G; PX-312; DX-520.   Despite
receiving Deltona's letters and having actual and constructive knowledge of
Deltona's valid and incontestable Battery Tender® trademarks, NOCO refused to
stop.   The parties' counsels exchanged emails concerning further demands in
October 2015 (DX-520) followed by additional demands and settlement
communications, which is the period NOCO claims Deltona had ceased all

8

communication after August 13, 2025. (PX-61D; PX-61E; PX-61F; PX-61G; PX-312).

Admittedly seeking to avoid "the long, hard way" to earn a position in the charger market (ECF 327-3 at 15-16), NOCO attempted to purchase Deltona's brand in 2016, 2017 and 2018.  PX-62-A; PX-62-C; PX-62-L; PX-62-M, ECF 343 at 127:21-130:13.  NOCO stated in a proposal to Deltona "I hope all is well with Battery Tender" and stated, "**the value NOCO could bring is carrying on the legacy and passion of the Battery Tender brand**."  PX-62-A; ECF 343 at 124:8-23 ("We are not for sale . . . .").  When Deltona declined, such that NOCO could not purchase the brand, NOCO just continued to use "Battery Tender" as its own.

NOCO's own documents showed that NOCO was aware that its continued use of Deltona's Battery Tender® trademarks and variations thereof would constitute trademark infringement.  PX-192 (July 18, 2018 message stating "battery tender is super high volume . . . [w]e cannot use Battery Tender in our messaging as it will cause a legal issue, trademark infringement.").

Notwithstanding, NOCO continued to purposefully use "Battery Tender," and variations thereof, across various platforms and marketing campaigns.  *Id.*  NOCO's actions included using Deltona's marks in promotion of its products, including ads, product descriptions, and direct marketing, misleading customers into believing an affiliation with Deltona, and attempting to render Deltona's marks generic. PX-54

(dated July 2019); PX-55A (same); PX-56A (same); PX-57A (same); PX-58A (same); PX-59A (same); PX-60A (same); PX-193 (September 2018 internal messaging discussing reactivating "Battery Tender" advertisements); PX-222A-B (September 2018 ad); PX-223A-B (same); PX-224A-B (November 2018 ad); PX-224A-B (same); PX-226A-B (October 2018 ad); PX-227A-B (November 2018 ad); PX-237 (2014-2020 NOCO advertisements named "Battery Tender" or "Tender"); ECF 400 at 85:18-23, 125:1-14 (testimony by NOCO's vice president of sales listing NOCO products it considers "battery tender" chargers); ECF 341 at 61:4-22 (customer confirmed that NOCO was calling its products were "battery tender" chargers); ECF 343 at 137:6-138:1 (customer seeking NOCO product directly from Deltona's licensee); *id.* at 139:12-141:7 (email from retailer to NOCO asking about Battery Tender® product); *see also* PX-50; PX-52; PX-127; PX-128; PX-132; PX-138; PX-162A; PX-204, PX-205; PX-206; PX-207; PX-208; PX-209; PX-210; PX-211-PX-227; PX-231A-EE; DX-81; DX-82; DX-82; ECF 400 at 125:1-16; ECF 402 at 97:9-102:9.

The record shows NOCO's multi-channel infringement and false advertising was pervasive. *See id.* One of those channels was Amazon.com. NOCO advertised on Amazon, including excessive ad placement and keyword bidding, to amplify confusion and harm Deltona's brand and goodwill and, thus, Deltona. That excessive bidding meant that sometimes NOCO would pay more for the placement

10

of its ad than it earned from the resulting sales. *See e.g.,* ECF 341 at 202:20-203:25.

Despite that NOCO's efforts were part of a broader, systematic infringement and dissemination of false information that was occurring across multiple channels, the excessive keyword bidding also had broad effects itself. The record showed that Amazon listings themselves influenced purchasing decisions for large retailers, small stores, and consumers. ECF 341 at 142:24-145:2. Additionally, NOCO's own damages expert confirmed that Amazon.com ads can affect consumer choices in retail stores. ECF 405 at 177:11-20.

In sum, NOCO's deliberate and systematic campaign to infringe upon Deltona's trademarks extended from 2014 through trial and encompassed systematic conduct occurring through numerous multiple channels. NOCO's conduct demonstrated a willful and calculated effort to appropriate Deltona's goodwill and market presence, to cause confusion and to harm Deltona's brand integrity and customer relationships nationwide, and to unjustly enrich itself as a result.

Evidence of actual confusion regarding an association between the parties was submitted to the jury, which included customers asking NOCO about "Battery Tender" products and NOCO customers contacting Deltona. *See* PX-44; ECF 343 at 149:11-15; 161:2-20; 162:20-163:18, PX-47; PX-49; PX-50; PX-52; PX-132; PX-138; PX-147; PX-162A-B; ECF 341 at 55:17-57:16, 57:17-59:4, 59:10-62:21, 60:16-61:22, 63:3-64:20, 89:21-91:1; ECF 343 at 140:8-141:7, 161:21-163:18; ECF

400 at 134:5-135:20; ECF 402 at 72:1-23.

Evidence showed that for years NOCO engaged in a campaign to influence the marketplace to devalue the Battery Tender® brand by telling large retailers and customers that end users referred to a "Battery Tender" as a function rather than a brand. DX-81; DX-82; ECF 402 at 97:9-102:9; PX-122. NOCO's VP of Sales testified that despite knowing that the phrase "Battery Tender" was a protected trademark, he and his sales staff used Deltona's trademark when referring to NOCO products, in an effort to sell NOCO products. ECF 400 at 125:1-16; *see also* PX-132; PX-138; DX-81; DX-82. According to the testimony, NOCO's salespeople have always engaged in such conduct and there is no testimony that this ever stopped prior to the trial. *See id.* NOCO's CFO testified that, as of July 9, 2021, to his knowledge, NOCO had not issued any guidance to its staff or any other agent to cease use of the asserted marks in promoting or selling NOCO products. ECF 405 at 82:25-84:12.

NOCO claimed its ads never targeted Deltona or the Battery Tender® brand, but internal records show otherwise. All advertising using "Battery Tender" or "Tender" aimed to associate NOCO with Deltona's brand. *See, e.g.* ECF 402 at 123:9-14, 133:5-10; PX-123 at 4 (NOCO working on an advertisement that would make "battery tender pee itself."); PX-133 at 2 ("another theory to add to that note is that because Battery Tender is an actual brand, users might be click on [Battery

Tender's] organic listings as opposed to our ads because they are more familiar with their brand."); PX-134 at 6 ("I picture J [Jonathan Nook] wanting us to refer to Battery Tender in the messaging just like we have for the current ad messaging" and stating that it was a passive aggressive message and "I envision them sending us a nasty note"); PX-139 at 1 ("Just make sure no Battery Tender ads using the Battery Tender name."); ECF 401 at 213:4-9; ECF 402 at 119:18-24 (NOCO's witnesses stated its ads were not comparative advertising).

Through NOCO's intentional misconduct, NOCO was able to substantially grow its annual revenue for its charger products.  PX-232. In fact, NOCO's charger sales grew over 500% after it began improperly using Deltona's trademarks. *See id.*

### C.    The Proceedings Below

On May 25, 2019, the jury issued its verdict in favor of Deltona deciding, *inter alia*, that: the Battery Tender® trademarks in U.S. Registration Nos. 3474591 and 4750963 are not a generic designation for the goods covered by the registrations; NOCO's use of the terms "Battery Tender(s)", "battery tender(s)", "Tender(s)", and "tender(s)" caused a likelihood of confusion with Deltona's Battery Tender® and Deltran Battery Tender® trademarks; NOCO engaged in false-advertising; Deltona suffered actual damages in the amount of $1,300,000; and NOCO is liable for intentional misconduct or gross negligence, which was the substantial cause of

13

damage to Deltona, and awarded punitive damages.[3] ECF 314 at 29, 315, 317.

The district court denied NOCO's post-trial motions, including challenges to trademark infringement and FDUTPA claims, likelihood of confusion, and evidence of damages. ECF 410.  In denying the motions, the district court found that NOCO did not adequately demonstrate that the use of the term "battery tender" in lowercase letters indicated generic usage, and Deltona provided sufficient evidence to establish that the asserted marks had not become generic; that, with respect to the FDUTPA claim, Deltona, as a business entity, falls within the definition of a "consumer" under FDUTPA and had demonstrated actual damages; that Deltona had presented evidence of actual confusion and actions by NOCO intended to confuse customers, supporting the jury's conclusion of a likelihood of confusion; and that precise calculations were not necessary and that Deltona had sufficiently demonstrated efforts to build goodwill, which supported the jury's verdict.  *Id.*

At the July 9, 2021, bench trial, Deltona sought disgorgement of NOCO's profits it obtained through the infringing and false-advertising activities.   On September 29, 2023, the district court ordered disgorgement of NOCO's profits of $12,135,943.70. The award was based on the findings of willful infringement, and the fact that Deltona demonstrated irreparable harm, an inadequate remedy at law,

---

[3] NOCO does not challenge the punitive damages award of $5,750,000, or the underlying willfulness findings, in this appeal.

14

and that the balance of hardships and public interest favored a permanent injunction. The district court used NOCO's gross sales for battery chargers as the basis for calculating profits, applying a 35% profit margin based upon testimony by NOCO's witnesses.    ECF 423. The district court also entered a permanent injunction, enjoining NOCO from using Deltona's trademarks, except for legal and truthful comparative advertising.  A final judgment was entered in favor of Deltona for a total of $19,553,879.70 with post-judgment interest at the statutory rate.  ECF 464.

## SUMMARY OF ARGUMENT

The district court correctly ruled against NOCO on its motions for judgment as a matter of law (JMOL) or a new trial on Deltona's trademark infringement, unfair competition, and false advertising claims, and related jury instructions. The jury found that Deltona's Battery Tender® trademarks are not generic, and NOCO failed to meet its burden to prove otherwise. Deltona presented substantial evidence of the distinctiveness of its trademarks, which the jury accepted. *See e.g.,* PX-62C, PX-62M, PX-65, PX-67, PX-68, PX-74, and PX-85.

The likelihood of confusion was a central issue at trial, with the jury determining that NOCO's actions constituted willful infringement and caused actual consumer confusion. The evidence demonstrated the systematic infringement by NOCO, which engaged in a multi-faceted approach to manipulate the marketplace, benefiting from Deltona's goodwill and reputation. NOCO used the "Battery

Tender" trademarks in marketing, advertisements, and direct communications with customers, despite knowing it constituted trademark infringement. This conduct resulted in actual consumer confusion and harm to Deltona's brand and goodwill, as well as substantial growth in NOCO's revenue.

The evidence presented to the jury was sufficient to demonstrate harm to Deltona's goodwill and reputation. The district court's discretion in awarding damages under the Lanham Act, 15 U.S.C. § 1117, is justified. And, the jury's verdict on actual damages is supported by Deltona's evidence of willful infringement and consumer confusion.

FDUTPA protects legitimate business enterprises like Deltona from unfair competition. The same evidence of NOCO's infringement, consumer confusion, and NOCO's deceptive practices supports the jury's finding of a FDUTPA violation, and the damages awarded are consistent with the statute's purpose. The jury's verdict on actual damages under FDUTPA was also well-supported by the record.

On the false-advertising claim, the district court properly instructed the jury, as Deltona proved the necessary elements and NOCO had sufficient notice of the claim. Deltona demonstrated that NOCO's advertisements were false or misleading, deceived customers, and materially affected purchasing decisions, thereby supporting the jury's verdict. The district court's instructions were consistent with

applicable law, including under the Lanham Act, 15 U.S.C. §§ 1114, 1125, and NOCO's arguments to the contrary lack merit.

The district court's order on disgorgement is supported by the evidence of NOCO's willful infringement, and the injunction is tailored to address NOCO's infringing activities and the specific harms caused by NOCO's activities and to prevent future violations.

Finally, Deltona requests the exclusion of exhibits not admitted at trial, including DX-272, from the appellate record. The inclusion of such exhibits violate Eleventh Circuit rules, and the Court should disregard them.

Deltona respectfully requests that this Court find the jury's verdict well-supported by the record and affirm the jury verdict, district court's orders, and final judgment. *See supra* at 13-15.

## ARGUMENT

## I. STANDARD OF REVIEW

This Court reviews the legal sufficiency of Deltona's claims under *de novo* standard, viewing the evidence, and the inferences, in the light most favorable to the non-moving party. *U.S. S.E.C. v. Big Apple Consulting USA, Inc.,* 783, F.3d 786, 813 (11th Cir. 2015); *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1310-11 (11th Cir. 2019).

The Court reviews whether Deltona had standing to bring a false advertising claim *de novo. See TocMail, Inc. v. Microsoft Corp.*, 67 F.4th 1255, 1262 (11th Cir. 2023) (finding standing is a jurisdictional question).

The Court reviews jury instructions *de novo*, reversing only where there is a "substantial and ineradicable doubt" whether the jury was properly guided. *Luxottica*, 932 F.3d at 1311; *see also Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1372 (5th Cir. 1981) (citing *Shelak v. White Motor Co.*, 581 F.2d 1155, 1161 (5th Cir. 1978); *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 300 (5th Cir. 1978)). *accord United States v. Isnadin*, 742 F.3d 1278, 1296 (11th Cir. 2014). District courts have broad discretion in formulating jury instructions. *Isnadin*, 742 F.3d at 1296.

Decisions regarding a motion for new trial is reviewed under the abuse of discretion standard. *Pensacola Motor Sales Inc. v. Eastern Shore Toyota, LLC*, 684 F.3d 1211, 1220 (11th Cir. 2012) (finding no abuse of discretion and finding jury's verdict was not against the greater weight of the evidence).

This Court reviews NOCO's challenge as to the factual basis for the disgorgement judgment and injunction order under a clearly erroneous standard, according deference to the district court's factual findings. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985); Fed. R. Civ. P. 52(a)(6). In applying

this standard to the bench trial findings, appellate courts must remember that their

function is not to decide factual issues de novo. *Id.*

## II. THE DISTRICT COURT'S DENIAL OF NOCO'S REQUEST FOR JMOL OR A NEW TRIAL ON DELTONA'S TRADEMARK AND UNFAIR COMPETITION CLAIMS SHOULD BE AFFIRMED

### A. Deltona's Battery Tender® Trademarks Are Not Generic and NOCO Failed to Meet Its Burden to Show Otherwise.

On appeal, NOCO argues that the district court should have granted judgment

in its favor or a new trial because no reasonable jury could have found Deltona's

Battery Tender® to be non-generic. NOCO presents three main arguments. First,

NOCO claims its survey showed that consumers perceive "Battery Tender" as a type

of battery charger, not a brand. Second, NOCO points to several instances where

Deltona's licensee, used the trademark in lowercase letters.[4] Similarly, NOCO notes

a few cases where retailers also used lowercase letters for the trademark. NOCO's

assertions are without merit.

---

[4] One example that NOCO relies on in its Opening Brief is an image of a purported Battery Tender® ad. DX-71. This snippet of an image does not indicate if this ad was actually displayed or whether any consumers actually saw it. Without such relevant information, such evidence was found insufficient to support NOCO's defense of genericness. Further, the attorney that represented NOCO in brand enforcement matters, reviewed websites to find generic uses to support their defense, and testified that he did not know whether the snippets he compiled were still active, whether anyone outside of NOCO and its counsel had actually seen them, or what else was on the pages around the snippets. ECF 401 at 37:13-19, 40:25-42:25.

NOCO misrepresents throughout its brief that its consumer survey was uncontroverted and unrefuted, and falsely claims that Deltona "shockingly" did not proffer "even a rebuttal expert." Opening Brief, at 27. Contrary to these false statements, Deltona did offer a rebuttal expert at trial who provided testimony that wholesale challenged the credibility and reliability of NOCO's survey. ECF 400 at 225-35; ECF 402 at 175:6-21, 180:22-195:13. Specifically, Plaintiff's expert witness explained that the survey is significantly flawed, due in part to using an over-inclusive population that went beyond the relevant consumer group, and that the survey failed to test whether the respondents had any awareness of the term prior to the survey or were merely guessing. *Id.* at 175:6-21, 181:19-182:3, 182:6-19; *see Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 264 (5th Cir. 1980) (explaining "one of the most important factors" in assessing survey is the adequacy of its universe). Further, beyond the rebuttal expert, Deltona's counsel pointed out significant flaws in the survey's methodology and reliability on cross-examination of NOCO's survey expert. The jury was free to reject, and did reject, NOCO's flawed survey. *Maiz v. Virani*, 253 F.3d 641, 667 (11th Cir. 2001); Eleventh Circuit Pattern Jury Instruction 3.6.1. In sum, the survey is controverted by the entire record.

20

To prevail on genericness, NOCO was required to show that "Battery Tender" was generic prior to its use of the name in 2014.[5]  The law requires this so that an infringer cannot benefit from the confusion that the infringer itself created in the marketplace.  Any evidence dated after NOCO's first use is just evidence of actual consumer confusion.

NOCO's survey—one designed to obtain a particular result—came 6 years after NOCO's infringement began.  It said nothing about consumer perception back in 2014.  ECF 402 at 193:20-194:24. It also said nothing about the relevant public— purchasers and prospective purchasers of the Battery Tender® products.  *Id.* at 175:6-21, 181:19-182:3, 182:6-19.   NOCO's survey expert testified that he included respondents who would have been "exposed" to the product when walking through the auto store or automotive department in Walmart.  The jury had no idea whether

---

[5] *See* ECF 314 at 27 ("To avoid lability for infringement, NOCO must establish that Deltona's trademarks became generic before it used Deltona's trademark(s) in connection with the sale of goods); *see* "The crucial date for the determination of genericness is the date on which the alleged infringer entered the market with the disputed mark or term." *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.,* 419 F.3d 925, 928 (9th Cir. 2005); *Skydive Arizona, Inc. v. Quattrocchi*, 2009 WL 6597892, at *17 (D. Ariz. Feb. 2, 2009), aff'd, 673 F.3d 1105 (9th Cir. 2012) (looking at the dates the defendant first starting using the phrase, that plaintiff had trademarked, in an advertisement); *Pom Wonderful LLC v. Hubbard*, 2016 WL 3621281, at *8 (C.D. Cal. June 29, 2016) (same). The relevant date in the context of an infringement action ***is not*** the date plaintiff introduced the trademark, ***but the date*** that the defendant began its infringing use. *Nora Beverages, Inc. v. Perrier Grp. Of Am., Inc.,* 164 F.3d 736, 744 (2d Cir. 1998); 2 McCarthy on Trademarks and Unfair Competition § 12:13.

any of the 500 or so people surveyed had ever heard the term "Battery Tender", or had ever purchased a charger.  *See id.* at 175:17-21.

NOCO did not provide any binding case law suggesting that the only way to refute survey evidence is by providing a counter-survey.  This is because that it is not the law of this Circuit.  Unlike these other circuits, this Court and Florida district courts have "moved away from relying on survey evidence" in trademark actions, and even view such evidence with a "skeptical eye."  *Wreal, LLC v. Amazon.com, Inc.*, 38 F.4th 114, 140 (11th Cir. 2022) (citing to *Frehling Enter., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1341 n.5 (11th Cir. 1999)); *see also PODS*, 126 F. Supp. 3d at 1279 n.7 (finding even without survey evidence from plaintiff, there was sufficient evidence supporting jury's finding that defendant did not prove mark was generic);  *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1170 (11th Cir. 2019) ("lack of survey evidence does not weigh against the plaintiff when determining likelihood of confusion").

The fact that Deltona's licensee used lowercase letters for the Battery Tender® trademark in a single advertisement of unknown date and placement, and that a few wholesale buyers did the same in emails from 2017 and 2018, does not undermine the jury's verdict.  Notably, Deltona's Battery Tender® trademark registration consists of standard characters without claim to any particular font, style or color,

22

indicates that the usage is generic.[6]  PX-1A, PX-1B, PX-1E.  Additionally, when the retailer's emails are read in context, it is clear they were discussing Deltona's products when using the brand in lowercase. This indicates the references were to Deltona's products, not generically to other products.  Additionally, such evidence, dated after NOCO's first use in 2014, if anything, is just evidence of actual consumer confusion.

NOCO's reliance on the Supreme Court's *Kellogg* opinion and this Court's opinion in *Miller's Ale House* is unwarranted.  In *Kellogg*, the Supreme Court determined that the name "Shredded Wheat" did not have trademark protection and was generic because the term had consistently been "dedicated to the public" by virtue of its descriptive use on the patents for the product and for the process of making the product.  *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 117-18 (1938) (explaining "Shredded Wheat" description on patent passed to the public right to apply the name by which it had become known upon expiration of patent).  Unlike in *Kellogg*, Deltona did not make its asserted marks public through descriptive use in a patent. NOCO also does not claim the asserted marks were generic from the

---

[6] According to the Trademark Manual of Examining Procedure, if a trademark applicant files an application that includes a "standard character claim," as is the case here, the applicant may depict the trademark in any font style; and "may use bold or italicized letters; and may use both uppercase and lowercase letters, all uppercase letters, *or all lowercase letters*, since no claim is made to any particular font style, size, or color." TMEP § 807.03(a).

beginning; it acknowledges they were original and unique phrases created by Deltona for its trademarks.

This Court's *Miller's Ale House* decision is also distinguishable from this case. In that case, the issue before the Court was whether the lower court properly granted summary judgment on Miller's trademark infringement claim where such a claim was barred due to issue preclusion. *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312 (11th Cir. 2012). In the prior litigation between those parties, the Fourth Circuit found that Miller's failed to present evidence that the term "ale house" does not refer to the facilities that serve food and beer. *Id.* at 1318. The Court explained that the Fourth Circuit took into consideration that numerous restaurants unaffiliated with Miller's used the term "ale house." *Id.* However, unlike this case before the Court, the unaffiliated restaurants in *Miller's Ale House* incorporated the term at issue *in their names*. *Id.*

Here, substantial evidence was presented at trial showing the distinctiveness and secondary meaning of the Battery Tender® mark. *See supra* at 15. Deltona provided examples of NOCO using "Battery Tender" in a way that indicated Deltona as the source, knowing the brand's power. NOCO also attempted to buy Deltona's company three times, acknowledging the brand's value. *See supra* at 9. Deltona also showed customer references to "Battery Tender" as a source indicator and provided testimony on the brand's origins, proving it was not generic. *Id.* at 8. The jury heard

24

about Deltona's investment in building goodwill, demonstrating the trademark's secondary meaning. *E.g., id.* at 9. The jury heard testimony that competitors in the charger space and wholesalers and distributors do not sell other charger products using the asserted marks.[7] ECF 341 at 113:3-114:17, 120:5-11; *see also* ECF 343 at 108:12-13, 109:1-8, 113:6-25.

NOCO's claim that the trademark is generic lacks merit, as the evidence showed NOCO's awareness of the marks, recognition of Deltona's brand strength, and intentional infringement. The record supports the jury's rejection of NOCO's genericness excuse for its infringement. *See* ECF 423 at 6 (stating that "despite Defendant's concerted campaign to make [Deltona's trademarks] generic" the jury "soundly rejected" genericness defense).

### B.    The Issues Raised of Mere Keyword Advertising Is Not Implicated in This Case.

The focus of the trial was NOCO's multi-channel and systematic infringement against Deltona's Battery Tender® brand and the willfulness of that infringement. ECF 423 at 6. The District Court cited multiple examples from the record showing NOCO's intent and animus toward Deltona, including a message from NOCO's

---

[7] The smart charger industry is considered a relatively small space where competitors are generally friendly and are familiar with other competitors' core products. ECF 343 at 106:4-23. The Battery Tender® charger products differentiate themselves through longevity in the market, quality, performance, warranties, and the Battery Tender® brand itself. *Id.* at 105 at 14-25

Chief Visionary Officer stating he was "[w]orking on rendering that will [make] the battery tender pee itself" and another in which Defendant questioned whether it should include "Fuck Battery Tender" in its advertising, and another message responding to a proposed marketing slogan that used Deltona's Battery Tender® Marks with "I like that one because it's kind of passive aggressive" and a "joy" emoji and stating "I envision them sending us a nasty note like 'ummm excuse me?!?!'" and a response of a rolling on the floor laughing emoji." ECF 423 at 6-7.

Here, the district court properly instructed the jury on the likelihood of confusion elements (ECF 314 at 17-24) as set forth by the Eleventh Circuit (*Frehling*, 192 F.3d at 1341, n.5; Eleventh Circuit Civil Pattern Jury Instructions (2013) §§ 3.6.1, 10.1) and NOCO did not object.  Applying the standard, the jury weighed the facts and corroborating evidence and found that NOCO's conduct met the standard.  ECF 315; *see supra* at 13-14.

After NOCO's initial excuse was rejected, NOCO shifted to a new argument, claiming the case was solely about Amazon sales and mere keyword bidding. NOCO argued that purchasing keywords is not infringement and using "battery tender" in Amazon ads does not cause confusion. This is merely a distraction presented in NOCO's Brief.  This case is not just about buying a competitor's trademark as a keyword.  The record clearly shows that while Amazon advertising, including ad placement and keyword bidding, was one tool used by NOCO, its conduct was not

limited to sales through Amazon. NOCO's infringement was part of a broader, systematic attack on the Battery Tender brand across multiple channels. *See supra* at 8-13.

The district court already rejected NOCO's assertion that the case is about *mere* keyword bidding:

> Defendant has desperately tried to paint this litigation as Plaintiff being upset that Defendant was bidding on 'battery tender' as a keyword on Amazon.com. . .[b]ut . . . that is **not** what this litigation is about."

ECF 423 at 9, n. 6 (emphasis added).

This is also not a case in which initial interest confusion was raised. As an initial matter, there is not a single reference to "initial interest confusion" in the trial transcripts (ECF 341, 343, 399-403, 405), nor was the issue raised before the district court in the initial JMOL motions (ECF 300-303; *see* ECF 410) so as to preserve the matter for appeal. NOCO mentioned initial interest confusion for the first time in its renewed motion for a judgment as a matter of law. ECF 440.

Significantly, NOCO did not request an instruction relating specifically to mere keyword bidding or advertising, or to initial interest confusion. *See* ECF 242-7 at 17-30. Where it did not timely raise any initial interest confusion argument below, NOCO cannot make those arguments now. *See David-Trujillo v. U.S. Atty. Gen.,* 502 F. App'x 876, 877 n. 1 (11th Cir. 2012).

The district court's order on the permanent injunction clarifies that NOCO's

argument regarding initial interest confusion is unfounded.  The injunction does not cover "every use of keywords" or restrain "initial interest confusion."  Instead, it specifically prevents NOCO from using or purchasing keywords in a way that creates a likelihood of consumer confusion.  ECF 423 at 23.  The standard for trademark infringement—whether the trademark use created a likelihood of confusion under this Circuit's factors—was applied by both the jury and the district court consistent with the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and precedent.

Because the jury properly weighed the facts and evidence, applying the Eleventh Circuit's elements for determining likelihood of confusion, this Court must affirm the jury verdict and the district court's judgment.  ECF 314 at 17-24; 315.

### C.    The Jury's Damages Findings Are Supported by The Record.

NOCO disputes the district court's denial of its motion for JMOL, arguing insufficient evidence for the jury's verdict on actual damages. However, the jury's decision was supported by substantial and competent evidence.

Under the Lanham Act, district courts have wide discretion in determining a just amount of recovery for infringement, and the Lanham Act allows for damages to be awarded even the damages are not susceptible to precise calculations. *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1241 (11th Cir. 2008).  Thus, "where the wrong is of such a nature as to preclude exact ascertainment of the amount of damages," the damaged party may recover upon a showing of the extent

28

of damages, even if such is the result of "only an approximation." *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1565 (11th Cir. 1986) ("The wrongdoer may not complain of inexactness where his actions preclude precise computation of the extent of the injury.").

Courts have previously found that evidence that infringement has a "negative impact on the distinctiveness" of the brand, adverse impact on the brand's growth, and consumer confusion is sufficient to show harm in order to recover actual damages. *PODS*, 126 F. Supp. 3d at 1282. Court have also held that evidence of advertising expenditures was sufficient to support the jury's verdict. *See ADT LLC v. Vivint, Inc.*, 2017 WL 8404330, at *7 (S.D. Fla. Nov. 20, 2017) (finding evidence of money spent each year to build and protect trademarks and brand is evidence as to amount of damages based on loss to reputation and goodwill); *Platinum Prop. Inv. Network, Inc. v. Sells*, 2023 WL 7144676, at *20 (S.D. Fla. Sept. 18, 2023) (explaining advertising and marketing spend are known to be relevant to a damages determination of loss of goodwill and reputation). Even estimates of future expenditures have been found sufficient to support a jury's verdict of damages for corrective advertising. *PODS*, 126 F. Supp. 3d at 1282 (rejecting defendant's argument that plaintiff failed to prove a showing of past corrective advertising or plaintiff's inability to pay for corrective advertising in the future).

The *Aronowitz* decision is also instructive. The appellant-defendant similarly

challenged a damages award on the ground that the appellee-plaintiff had not demonstrated the value of the mark, had not made use of the mark, or had spent money on corrective advertising. 513 F.3d at 1241. In that case, the trademark owner did not itself manufacture the products sold in connection with the trademarks, its subsidiary did. *Id.* at 1240, n. 6. There, the Court concluded there was "more than sufficient evidence" for a jury to find that corrective advertising was necessary based on a range of future estimated costs for corrective advertising provided by the trademark owner's financial officer and his personal experience. *Id.* at 1241 (affirming award of damages for corrective advertising despite objection that appellee-plaintiff had not "spent any money on corrective advertising"). This Court also pointed to testimony on damages to the trademark owner's reputation and goodwill. *Id.* at 2008.

NOCO claims Deltona showed no evidence of lost goodwill or monetary loss due to NOCO's actions, arguing that Deltona licenses its brand to Deltran Operations. However, NOCO's argument relies on non-binding or irrelevant case law. All the Eleventh Circuit cases relied upon by NOCO are distinguishable from the present case. In *Mee Indus. v. Dow Chemical Co.*, the issue before the Court was whether the district court erred by excluding evidence relating to the plaintiff's proposed theory of damages based on loss of goodwill due to the plaintiff's lack of notice in its Rule 26 disclosures. 608 F.3d 1202, 1221 (11th Cir. 2010) (finding no

abuse of discretions as to district court's denial of attempt to introduce a new category of damages).  In *Optimum Tech., Inc. v. Henkel Consumer Adhesives, Inc.*, the Court found that the district court acted properly in awarding the defendant judgment as a matter of law on plaintiff's Lanham Act claims where the plaintiff presented a damages expert witness that failed to mention in a report any mention of the defendant's website at issue or injury suffered by plaintiff, and where plaintiff (unlike in this case) "introduced *no* evidence of actual monetary damages."  496 F.3d 1231, 1252 (11th Cir. 2007).  Also, in *Howard Johnson Co., v. Khimani*, the court calculated the amount of royalty payments the plaintiff would have received during the period that the defendants were infringing the plaintiff's trademarks as if the defendants had been plaintiff's franchisee.  892 F.2d 1512, 1519 (11th Cir. 1990).

Further, there is substantial evidence to show that Deltona, as the owner of valuable trademark rights, suffered harm to its goodwill and reputation from NOCO's blatant trademark infringement.  Evidence of willful infringement and actual consumer confusion, which most certainly directly harmed Deltona's brand and goodwill, is substantial.   ECF 423 at 4 ("Here, the evidence of willful infringement is abundant."); *see supra* at 8-13.[8]  The district court acknowledged

---

[8] *See e.g.,* ECF 399 at 184, 187:10-13 (Plaintiff's founder and CEO testified about the extent of advertising conducted over for the brand spanning over thirty years, including 20-25 shows, consumer shows, and trade shows a year and magazines, TV shows, and sponsorships); ECF 341 at 44:22-45:4, 46:18-48:11 (director of marketing for Plaintiff's brand testified about digital marketing channels and race

that Deltona had shown, through simple calculations, and as a measure of a portion of damage that had been caused, that certain advertising costs for each year, starting from 2016, had increased in defense of the Battery Tender® brand against NOCO's conduct and prevent even further magnification of the resulting confusion and harm to its goodwill and reputation. ECF 269 at 15-16. The record showed that Deltona and its licensee had spent over $30 million advertising the Battery Tender brand in the U.S. through various channels, all of which benefitted Deltona, enhancing its brand value. ECF 343 at 141:6-25, 143:3-19. The record is more than sufficient to support the verdict of actual damages, and the district court's denial of NOCO's post-trial motions was proper.

## III. THE DISTRICT COURT'S DENIAL OF NOCO'S REQUEST FOR JMOL OR NEW TRIAL ON DELTONA'S FDUTPA CLAIM SHOULD BE AFFIRMED.

NOCO asserts that Deltona failed to establish any harm to consumers under Deltona's FDUTPA claim, asserting that the injury from its deceptive acts and unfair practices must have been suffered specifically by its or Deltona's consumers. *See* There is no such requirement in the statutory text.

---

sponsorships and partnerships, stating that "[t]ime and time again at trade shows or race events, we will [] have customers come up, and they've said, [] if the Battery Tender logo is not on it, I won't buy it. I don't care if it's a jump starter, I don't care if it's a battery charger, your brand is what I want"); *see also* PX-78 (Defendant's director of sales stated in written communications that "I understand that a lot of consumers see 'Battery Tender' and think to buy that unit because it is a house hold name.").

FDUTPA makes "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . unlawful." Fla. Stat. § 501.204(1). "A deceptive act is one which is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Hill Dermaceuticals, Inc. v. Anthem, Inc.,* 228 F. Supp. 3d 1292, 1302 (M.D. Fla. 2017) (cleaned up). This standard requires a showing of probable deception that is likely to cause injury to a consumer. *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007). "A finding of liability for trademark infringement will *per se* constitute a violation of FDUTPA." *Nutradose Labs, LLC v. Bio Dose Pharma, LLC*, 710 F. Supp. 3d 1200, 1231 (S.D. Fla. Jan. 9, 2024), *aff'd sub nom. Nutradose Labs, LLC v. Santamarta*, 2025 WL 337971 (11th Cir. Jan. 30, 2025).[9]

The FDUTPA statute seeks to protect both the consuming public and *legitimate business enterprises* from those who engage in unfair methods of competition or unfair acts in commerce. *Aceto Corp. v. TherapeuticsMD, Inc.,* 953 F. Supp. 2d 1269, 1287 (S.D. Fla. 2013) (quoting Fla. Stat. § 501.202(2) (though not a "consumer," plaintiff is a "legitimate business enterprise," which is one of two

---

[9] *See also Suntree Tech., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012) (applying same legal standards under section 43(a) of the Lanham Act to FDUTPA claim).

independent groups contemplated under amended §501.211); *Nelson v. Mead Johnson Nutrition Co.,* 270 F.R.D. 689, 692 (S.D. Fla. 2010) (quoting *State, Office of Atty. Gen., Dep't of Legal Affairs v. Wyndham Int'l. Inc.,* 869 So.2d 592, 598 (Fla. 1st DCA 2004)) (finding party asserting FDUTPA claim need not show actual reliance on conduct at issue).[10]   Indeed, "in a FDUTPA action the question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances." *Id.* (cleaned up).

The plain language of FDUTPA includes businesses like Deltona within the definition of "consumer" and, as a legitimate business enterprise, Deltona is expressly protected under the statute.   FDUTPA does not require that the injury be suffered specifically by the end consumer of the products, and NOCO does not provide any support for such an assertion.[11]   Nonetheless, Deltona has also shown

---

[10] *Furmanite Am., Inc. v. T.D. Williamson, Inc.,* 506 F. Supp. 2d 1134, 1146 (M.D. Fla. 2007) ("FDUTPA was amended in 2001, and the amendment replaced the word 'consumer' with the word 'person' . . . [and] '[w]ith the deletion of *consumer transaction* from FDUTPA, it would seem that such business entity *consumers* could sue for damages from outlawed acts and practices in ordinary business transactions without regard to whether the claimant was acting in the capacity of consuming goods or services . . . .'") (quoting *Beacon Prop. Mgt., Inc. v. PNR, Inc.,* 890 So.2d 274, 278 (Fla 4th DCA 2004)); *see also NACM Tampa, Inc. v. Sunray Notices, Inc.,* 2017 WL 2209970, at *7 (M.D. Fla. Feb. 8, 2017) (acknowledging statute *expressly* protects legitimate business enterprises from unfair methods of competition or deceptive or unfair conduct in commerce).

[11] The cases NOCO cites either do not involve trademark infringement or deceptive advertisements under the Lanham Act or are distinguishable from the present case.

34

significant evidence that millions of customers saw NOCO's ads. *See, e.g.,* PX-237. And, NOCO surely would not have spent, and then continued to spend, significant money to run such ads if the deception did not influence purchasing decisions. *See e.g., id.;* ECF 343 at 31:12-32:1. Further, NOCO's contention that Deltona failed to demonstrate consumer harm ignores that there is significant evidence that consumers were actually confused. *See supra* at 11-12; *see Hidalgo Corp. v. J. Kugel Designs, Inc.*, 509 F. Supp. 2d 1247, 1258-59 (S.D. Fla. 2007) ("The Lanham Act protects consumers by excluding others from using a mark and making consumers confident that they can purchase brands without confusion.") (citing *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001)). The district court's interpretation of FDUTPA aligns with the statute's dual purpose.

---

*Stewart Agency, Inc. v. Arrigo Enters., Inc.,* 266 So.3d 207, 211-12 (Fla. 4th DCA 2019) (company not harmed by FDUTPA violation because company decided on its own not to sell products at retail); *see also Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach County, Inc.,* 169 So.3d 164, 166, 169 (Fla. 4th DCA 2015) (no injury where defendant represented that it had an unbiased rating system as and conducted adequate investigations into businesses); *Env't Mfg. Sols., LLC v. Fluid Grp., Ltd.,* 2018 WL 3635112, at *2, 16 (M.D. Fla. May 9, 2018) (plaintiff adequately alleged that defendants' deceptive act did cause harm where defendants' non-trademark-related misrepresentation was alleged to deceive customers*); CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, 2018 WL 905752, at *15 (M.D. Fla. Feb. 15, 2018) (complaint alleging fraudulent activities by one party aimed at the opposing party had insufficient allegations to support a plausible inference that consumers have or were likely to have suffered damages).

NOCO also challenges the award of actual damages under FDUTPA, arguing that Deltona cannot recover under FDUTPA because it failed to prove actual damages.  However, there is substantial evidence to show that Deltona, as the owner of valuable intellectual property, suffered harm to its goodwill and reputation from NOCO's willful infringement and actual consumer confusion.  This is more than sufficient to establish actual damages under FDUTPA.[12]  *PODS*, 126 F. Supp. 3d at 1286.  The jury's verdict on actual damages, and the district court's denial of NOCO's motions, are well supported by the record.

## IV.  THE DISTRICT COURT PROPERLY INSTRUCTED THE JURY ON DELTONA'S FALSE ADVERTISING CLAIM AND THE VERDICT SHOULD BE UPHELD.

NOCO claims the district court erred in instructing the jury on the false advertising claim, arguing a lack of notice, that Deltona failed to prove the claim's elements, and that Deltona lacked standing. However, the district court correctly instructed the jury because NOCO had sufficient notice, and Deltona proved the necessary elements and established standing. The instruction was justified under

---

[12] The *PODS* decision is persuasive.  There the court found that actual damages can be awarded where the conduct in violation of FDUTPA is the unauthorized use of a mark which diminishes the value or distinctiveness of the brand.  *PODS*, 126 F. Supp. 3d at 1286-86. The *PODS* court relied on an Eleventh Circuit case where damages were awarded, in part, on expert's opinion of the diminished value of the plaintiff's business that resulted from the defendant's conduct.  *Id.* (citing *Macro Island Cable v. Comcast Cablevision of the South, Inc.*, 312 Fed. Appx. 211, 214 (11th Cir. 2009)).

Federal Rule of Civil Procedure 15(b) and Eleventh Circuit case law, which allows for amending pleadings when a claim's elements are met at trial, even if the cause of action was not initially plead by name. Therefore, NOCO is not entitled to judgment as a matter of law, and the jury verdict should stand.

### A. NOCO Had Sufficient Notice of The False Advertising Claim and Suffered No Prejudice

NOCO claims it was unaware of any false advertising claim, asserting Deltona only pled unfair competition and false designation of origin. However, the district court found that Deltona's allegations provided sufficient notice of a false advertising claim, as outlined in allegations in the complaint. *See* ECF 403 at 4:16-5:7. Deltona's allegations regarding NOCO's false advertisements provided sufficient notice of a false advertising claim. ECF 402 at 8:4-9: 11; ECF 403 at 4:16-5:7. NOCO acknowledges as much in its Brief yet fails to allege any purported prejudice from the instruction. Opening Brief, at 54.

This Court should not disturb the jury's verdict unless it is prejudicial to the opposing party. *See, e.g.*, *Luxottica*, 932 F.3d at 1319 (defendants did not argue that district court's reorganization of evidence outside of the jury's presence was prejudicial "so any error was harmless") (citing 28 U.S.C. § 2111; Fed. R. Civ. P. 61). The key considerations are whether NOCO had notice and the opportunity to defend against the false advertising claim, and whether the amendment aids in presenting the merits without causing prejudice. Fed. R. Civ. P. 15(b)(1).

37

NOCO's argument does not demonstrate any prejudice, effectively conceding it was not harmed by the instruction. Moreover, NOCO consented to evidence supporting the false advertising claim and is now estopped from claiming prejudice. According to 28 U.S.C. § 2111 and Fed. R. Civ. P. 61, a party cannot claim prejudice simply due to a change in legal theory unless it disadvantaged them in presenting their case. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 569 (2d Cir. 2000).

The district court's instructions were consistent with the evidence and legal standards under the Lanham Act and therefore not prejudicial. *Cf.* 28 U.S.C. § 2111; Fed. R. Civ. P. 61. The evidence showed that NOCO's advertising misrepresented the nature and quality of its products, misleading consumers and harming Deltona's brand, and that the misrepresentations were intentional. The district court's instructions guided the jury's consideration of these issues based on the facts and applicable law.

### B.    Deltona Proved the Elements of the False Advertising Claim

NOCO contends that Deltona failed to prove the elements of a false advertising claim at trial. However, Deltona pled in the complaint and presented evidence that NOCO's advertisements were false or misleading, deceived consumers, and had a material effect on purchasing decisions. *See Roe v. Aware Woman Ctr. for Choice, Inc.,* 253 F.3d 678, 683 (11th Cir. 2001). Consequently, the district court's decision to instruct the jury on false advertising was based on the

evidence presented at trial, which met the necessary elements for such a claim. ECF 403 at 21:13-22:4; *see* ECF 314 at 24.

NOCO's arguments ignore the application of the elements to the facts and evidence at trial. NOCO's advertisements were false or misleading (*see supra* at 8-13); NOCO's advertisements deceived or had the capacity to deceive consumers; the deception had a material effect on purchasing decisions (PX-133 at 2; PX-192; PX-225A); the misrepresentation affected interstate commerce (ECF 403 at 7:25-8:1 ("for this case . . . registration and use in commerce are not at issue"); PX-53; PX-225A; PX-222A-B; PX-223A-B; PX-224A-B; PX-226A-B; PX 227A-B; PX-237); Deltona has been or is likely to be injured as a result of the false advertising (PX-232; ECF 405 at 18:4-23; 78:6-19; 98:1-12; 108:12-109:3; 183:10-13); and the materiality of NOCO's advertising by showing that NOCO's deception is likely to influence consumers' purchasing decisions (*see, e.g.*, 9, 11). NOCO was not authorized to use "Battery Tender." *See supra* at 7.

The authority cited by NOCO is factually distinguishable. In *Synergy Real Estate of SW Florida, Inc. v. Premier Prop. Mgmt. of SW Florida, LLC*, 578 Fed. App'x. 959, 962 (11th Cir. 2014), the plaintiffs failed to plead a required element of the cause of action which ultimately doomed their pleading. The opposite is true here. *See, e.g.*, ECF 1 at ¶¶ 30-48; discussion *supra* at 38; *see also* ECF 403 at 4:16-5:7 ("as discussed in the previous ruling, the Court concludes that the Plaintiff is

pursuing a false advertising claim and that Defendant was on notice of the substance of that claim from the allegations in the complaint."); ECF 403 at 5:8-17 ("Defendant argues that the evidence presented in this case cannot support a claim for false advertising because the false or misleading statements must relate to matters not at issue in the case. Defendant has not provided any legal authority whatsoever in support of this position.").

In *Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc.*, 707 Fed. Appx. 576, 580 (11th Cir. 2017), the Court stated plaintiff had not sufficiently pled that defendants made "any *false* designation of origin, *false* or misleading description of fact, or *false or misleading* representation of fact" nor any "commercial advertising or promotion" that "*misrepresents* the nature, characteristics, qualities, or geographic origin" of the goods at issue in this case. *Id*. In contrast, here, Deltona's complaint contained more factual support than is legally required to state a plausible claim for false advertising establishing that NOCO's representations are actually false. *See generally* ECF 1; *see also* ECF 403 at 4:16-5:7 (district court distinguishing *Black Diamond*).

### C.     The Jury Instruction on False Advertising Was Proper Even If the Claim Was Not Pled by Name

Under Federal Rule of Civil Procedure 15(b), issues not raised in the pleadings but tried by the parties' express or implied consent are treated as if they were pled. Fed. R. Civ. P. 15(b). When the elements of a claim are met at trial, the district court

may instruct the jury on a claim even if it was not initially pleaded by name. *Luxottica*, 932 F.3d at 1310; *see also Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1289 (11th Cir. 2014) (no error where jury instructions properly express the applicable law); *accord Miller*, 650 F.2d at 1372.

In the Eleventh Circuit, a court does not err in instructing the jury on a cause of action that was tried if the elements of the cause of action are met at trial, even if the cause of action was not explicitly pled by name. *Bhogaita*, 765 F.3d at 1289. Rather, the Court "examine[s] jury instructions in context, considering 'the allegations of the complaint, the evidence presented, and the arguments of counsel when determining whether the jury understood the issues or was misled.'" *Id.* (citation omitted); *see also Luxottica*, 932 F.3d at 1317 (Court will not reverse unless there is any "substantial and ineradicable sense" that district court's instruction misled jury or prejudiced defendants).

NOCO acknowledges that Deltona's complaint alleged, among other causes of action, "unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) . . . ." Opening Brief, at 18. NOCO's argument hinges on the label—not the substance—of what was pled or proven. This ignores basic principles of notice-pleading, arguing form over substance.

Further, amendments to the pleadings are permitted during and after trial Rule 15(b) amendments are designed to allow amendments "when the facts proven at trial

differ from those alleged in the complaint, and thus support a cause of action that the claimant did not plead." *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, Charlotte Branch*, 80 F.3d 895, 901 (4th Cir. 1996). Courts also recognize that Rule 54(c) authorizes recovery under any theory supported by the facts proven at trial. *Id.*; Fed. R. Civ. P. 54(c). The Eleventh Circuit upholds verdicts if the factual basis for the claims is sufficiently presented. *Johnson v. Bryant*, 671 F.2d 1276, 1281 (11th Cir. 1982) (affirming in part where there was "evidence in this case to support the instruction").

NOCO does not contend that Deltona's evidence at trial proved facts not encompassed by its initial pleadings. Nor does NOCO question whether the facts Deltona proved were within the scope of its original allegations. NOCO argues lack of notice because it believed Deltona was pursuing "*only* the stated type of claim" rather than any viable legal theory supported by the evidence. Opening Brief, at 54. Contrary to NOCO's argument, the district court found that NOCO was "on sufficient notice of the false advertisement claim" based on Deltona's pleading "along with the numerous allegations involving advertisements." ECF 402 at 9:1-11. Thus, NOCO's argument does not render the jury instruction clearly erroneous. *Luxottica*, 932 F.3d at 1311 (affirming district court *in toto* because "[t]he district court  (1) correctly determined that the evidence was sufficient—even under the legal standard the defendants urge [the Court] to adopt—to support the jury's verdict

finding the defendants liable for contributory trademark infringement; (2) committed no reversible error in instructing the jury; (3) correctly determined that the evidence was sufficient to support the jury's verdict on each defendant's individual liability; and (4) did not abuse its discretion in the challenged evidentiary rulings.").

*Luxottica* is instructive.  There, the plaintiffs brought a contributory trademark infringement action under the Lanham Act against the owners of a discount mall whose subtenants were selling counterfeit eyewear. *Luxottica*, 932 F.3d at 1308. The defendants were subject to multiple law enforcement raids for selling counterfeit goods, including Luxottica's products, and the defendants were notified by Luxottica about the unauthorized sales. *Id.* at 1309. Despite these warnings and raids, the defendants did not take action to evict the infringing subtenants. *Id.* at 1310. The district court denied the defendants' motions to exclude evidence and for JMOL, and the jury found all but one defendant liable for contributory trademark infringement, and awarded damages to plaintiff. *Id.* The defendants appealed, challenging the sufficiency of the evidence, jury instructions, and evidentiary rulings. *Id.* This Court affirmed the district court's decision, finding sufficient evidence to support the jury's verdict that the defendants had at least constructive knowledge of the infringement. *Id.* at 1311. The Court also found no reversible error in the jury instructions or the district court's evidentiary rulings, *id.* at 1315–17, and concluded that the evidence

was sufficient to hold the individual defendants liable for contributory infringement. *Id.* at 1317.[13]

### D.     Deltona Had Standing to Pursue the False Advertising Claim

NOCO's argument about a lack of standing is raised for the first time on appeal and should be disregarded.  Because standing was not contested at the district court level, NOCO waived this issue on appeal.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court."); *Hurley v. Moore,* 233 F.3d 1295, 1297 (11th Cir. 2000) ("Arguments raised for the first time on appeal are not properly before this Court.").

Notwithstanding, NOCO's claim that Deltona did not establish standing due to a lack of alleged injury is unfounded. This complaint itself alleges that as a result of NOCO's conduct—which demonstrated trademark infringement and false

---

[13] *See also Doss v. South Central Bell Telephone Co.*, 834 F.2d 421 (5th Cir. 1987). In *Doss,* the plaintiff alleged age discrimination and sought compensatory and punitive damages under Title VII.  *Id.* at 423.The trial court dismissed the claim because Title VII does not provide a cause of action for age discrimination and allows only equitable relief, not compensatory and punitive damages. *Id.* The Fifth Circuit vacated the order of dismissal on appeal, holding the complaint sufficiently alleged a claim under the Age Discrimination in Employment Act. *Id.* at 425. The court reasoned that the complaint notified the defendant of the claim's nature and basis, even though it did not mention the correct statute. *Id.* (collecting cases for the proposition that the "court will grant relief to which plaintiff entitled even though he has not demanded it").

advertising affecting Deltona's brand, goodwill, reputation, and relationships—Deltona was, and continued to be, harmed. *See generally* ECF 1.

The Eleventh Circuit requires that standing be supported by trial evidence, Deltona demonstrated sufficient injury from NOCO's false advertising, meeting the standing requirement. *Jacobson v. Florida Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)); *Lujan*, 504 U.S. at 560, 563. NOCO's request for the Court to view Deltona's injury in isolation, ignoring the broader context of multiple causes of action, was properly rejected by the district court. *See* ECF 403 at 5:8-17 ("Defendant argues that the evidence presented in this case cannot support a claim for false advertising because the false or misleading statements must relate to matters not at issue in the case. Defendant has not provided any legal authority whatsoever in support of this position."). NOCO failed to provide any legal authority for its position, and this Court should also decline to entertain such unsupported arguments.

NOCO's reliance on *TocMail*, is questionable. In *TocMail,* the Court summarized the facts as follows:

> TocMail launched its IP-evasion product, got a patent, and then sued Microsoft for false advertising—all within two months. In its complaint, TocMail alleged that Microsoft misled the public into believing that Microsoft's product offered protection from IP evasion. And TocMail—who had been selling its product for two months, spent almost nothing on advertising, and had not made a single sale—alleged billions of dollars in lost profits.

45

67 F.4th at 1258. The Court noted, "[m]aybe that was enough to survive a motion to dismiss. The problem is that, at summary judgment, TocMail failed to back this allegation up with actual evidence. There is no evidence that TocMail suffered any injury at all. And so it lacks standing to sue." *Id.* "All TocMail needed was some evidence that it suffered an injury: some testimony, some survey, some report[]" but TocMail offered "nothing but conclusory (and unsupported) claims of billions of dollars in damages and speculation about what consumers may or may not have done absent Microsoft's advertising that those consumers may or may not have seen." *Id.* at 1267. Thus, the Court concluded, in the absence of even a single piece of evidence to demonstrate an injury, "[n]o reasonable jury could find—on [that] record—that TocMail suffered an injury in fact. And so TocMail lacks standing." *Id.*

The factual dissimilarities between this case and *TocMail* are too great to recount. The record before the district court, which led the jury to find NOCO liable for false advertising, was compelling. *See supra* at 38. Therefore, the Court should disregard NOCO's argument that Deltona lacked standing to pursue a false advertising claim. Deltona clearly alleged injury from NOCO's false and misleading advertisements. The jury verdict (ECF 315, 317) found, by a preponderance of the evidence, that NOCO used Deltona's federally registered trademark, causing a likelihood of confusion, and that NOCO's conduct was intentional, and awarded damages to Deltona.

In *TocMail*, while distinguishing *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247 (2d Cir. 2014), the Second Circuit "concluded that the district court properly presumed injury" when a defendant in a two-player market intentionally deceived consumers. *TocMail,* 67 F.4th at 1266. Here, though injury was not presumed, it would have made sense to do so in assessing the merits of the claim. *Id.* NOCO's reliance on this authority actually supports Deltona. *See id.* at 1267 (quoting *Hutchinson v. Pfeil*, 211 F.3d 515 (10th Cir. 2000)) (explaining presumption is "invoked primarily to resolve the merits of Lanham Act claims" to establish injury when the "plaintiff, typically a commercial competitor of the defendant, clearly has standing.").

NOCO's reliance on *Nat. Answers, Inc. v. SmithKline Beecham Corp.,* 529 F.3d 1325 (11th Cir. 2008) is misplaced. In *Nat. Answers*, the plaintiff "lack[ed] a direct injury" because it "[did] not have a commercial or competitive interest" where the plaintiff abandoned its trademarks. *Id.* at 1333. Here, there has been no abandonment by Deltona of its trademarks, nor has NOCO pled any affirmative defense or counterclaim of abandonment. *See generally* ECF 55 at 11-25. NOCO's argument regarding the lack of standing is without merit and should be rejected by the Court.

## V.    DISTRICT COURT HAD DISCRETION TO AWARD EQUITABLE RELIEF.

### A.    Awarding Disgorgement Was Within the District Court's Discretion.

The district court's decision to order disgorgement of NOCO's profits for all charger sales was within the district court's discretion and supported by the evidence of NOCO's willful and deliberate trademark infringement, as evidenced by its intentional use of Deltona's trademarks to confuse customers and usurp Deltona's goodwill.  The district court found the award necessary due to NOCO's willfulness.  NOCO's purported defenses were rejected and the scope of award on disgorgement was well within the court's discretion.  ECF 423.

With the district court bound by the jury's findings, the only burden on Deltona with respect to disgorgement was to prove NOCO's sales.  *See Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1487-88 (11th Cir. 1987) (to obtain an accounting of an infringer's profits, "[i]t is enough that the plaintiff proves the infringer's sales.").  The district court has significant discretion in awarding disgorgement damages under the Lanham Act, and may do so "even when they are not susceptible to precise calculations." *Axiom Worldwide, Inc. v. Excite Med. Corp.*, 591 F. App'x 767, 776–77 (11th Cir. 2014) (quoting *Ramada,* 804 F.2d at 1565).  "Any doubts about the actual amount of gross sales or profits will be resolved against the infringing party." *Nutrivida, Inc. v. Immuno*

48

*Vital, Inc.*, 46 F. Supp. 2d 1310, 1316 (S.D. Fla. 1998).

Once those sales are shown, the burden then shifts to the infringing defendant to prove its expenses and other deductions, and to prove which particular sales, if any, are *not* attributable to infringement.  15 U.S.C. § 1117(a); *Axiom Worldwide*, 591 F. App'x at 776.; *Wesco*, 833 F.2d at 1488; *see also Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 207 (1942); *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 2011 WL 2295269, at *4 (S.D. Fla. June 8, 2011).

NOCO did not meet its burden to prove any expenses, deductions, or non-infringing sales.  *Burger King Corp. v. Pilgrim's Pride Corp.,* 934 F. Supp. 425, 426 (S.D. Fla. 1996) (to allow a deduction, the defendant must establish that claimed expenses actually relate to sale and production of infringing product.); *see FSC Franchise Co., LLC v. Express Corp. Apparel,* 2011 WL 1226002, at *6 (M.D. Fla. Feb. 28, 2011) (awarding total revenues when defendant failed to produce evidence showing non-infringing sales, expenses, or deductions).  NOCO cannot complain about any perceived unfairness in this outcome as such is a problem of its own making.  *Mishawaka Rubber,* 316 U.S. at 207 ("[t]here may well be a windfall to the trademark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer.").  Notwithstanding NOCO's failed burden, the district court still

49

limited the disgorgement sales to chargers only and reduced by a profit margin supported by the record.

### B.  NOCO's Unclean Hands and Equitable Estoppel Defenses Were Not Properly Preserved and Must Be Rejected.

No affirmative defense relating unclean hands or equitable estoppel was ever pled by NOCO and, thus, are waived.  Fed. R. Civ. P. 8(c).  *Access Now*, 385 F.3d at 1331; *see also David-Trujillo,* 502 F. App'x at 877 n. 1.

Further, NOCO did not argue or introduce sufficient evidence to sustain such defenses and the district court had discretion to reject them.  The doctrine of unclean hands requires a showing of bad faith or misconduct by the plaintiff, which NOCO has not demonstrated.  Deltona's actions were consistent with protecting its trademark rights, and there is no evidence of inequitable conduct on its part.  NOCO attempts to point to purported an instance of Deltona's licensee's keyword bidding is nonsensical and not relevant to the claims and defenses here.  *See* ECF 423 at 9, n. 6.  The district court dismissed NOCO's claim that the August 2015 demand letter, which was followed by a demand in October 2015, somehow permitted the defendant to continue infringing activities relating to keyword bidding.  ECF 423 at 9, fn. 6. Additionally, even if one could make sense of the argument, a plaintiff's use of any mark other than its own asserted marks is irrelevant.  *1-800 Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1255 (10th Cir. 2013) (not proper to refer to conduct relating to trademarks other than the one that is allegedly infringed).

NOCO's reliance on equitable estoppel is also misplaced. Deltona's communications with NOCO did not mislead NOCO into believing that its infringing activities were permissible. Rather, each time Deltona observed an infringing advertisement launched by NOCO, Deltona's counsel sent a letter. *See, e.g.*, *supra*, at 8. Despite Deltona's letters, and knowing that Deltona owned valid and incontestable rights to the Battery Tender® trademarks, NOCO did not stop its infringing activities. The parties' exchanges concerning further demands continued. Such contradicts that Deltona had ceased all communication with NOCO after August 13, 2025. *See id.* NOCO cannot claim reliance on any alleged assurances from Deltona concerning a claimed resolution of a takedown request for a particular 2015 advertisement.

### C. The Disgorgement Award Was Within the District Court's Discretion.

The district court's methodology involved careful consideration of the relevant sales periods, equitable principles, and NOCO's profit margin to ensure a fair and just disgorgement award. The district court used NOCO's gross sales of battery chargers[14] from January 1, 2014, through June 30, 2020, as the starting point for the calculation. The district court calculated the total gross sales for the

---

[14] Despite evidence of at least one advertisement using Battery Tender with three jump starter products in January of 2016, the court did not award disgorgement sales for this campaign or jump starters. PX-50; ECF 405 at 88:11-22.

disgorgement period (December 2014-March 2020) as $56,359,342, which includes the adjusted figures for 2014 and 2020, and the undisputed sales from 2015 to 2019 totaling $51,071,064. The district court applied a 35% profit margin to the gross sales to determine the Defendant's profits for chargers, as testified by NOCO's witnesses.[15] After applying the profit margin and making the necessary equitable adjustments, the district court arrived at a final disgorgement amount of $12,135,943.70. The disgorgement award was justified and well-within the district court's discretion.

**D.    Imposition and Scope of Injunction Was Within District Court's Discretion.**

An injunction is warranted where there is a likelihood of continued infringement, and the district court found that NOCO's actions posed an ongoing threat to Deltona's trademarks. The injunction serves to prevent NOCO from engaging in similar infringing activities in the future, and protect the public and Deltona from further harm.

NOCO's argument that the injunction is overly broad should be disregarded. The injunction is tailored to address the specific harms caused by NOCO's infringing activities. It prohibits NOCO from using Deltona's trademarks in a manner likely to cause confusion, which is consistent with trademark law. The injunction does not

---

[15] Notably, chargers are only one of NOCO's product offerings and its gross sales for all product categories is much higher. *See* ECF 403 at 131.

extend beyond what is necessary to prevent further infringement and is a reasonable measure to ensure compliance with trademark law.

*Angel Flight* is instructive. There, this Court affirmed the issuance of an injunction, and its scope, where the court crafted an injunction that prohibited the infringers from using the mark for certain services and in certain territories. *Angel Flight of Georgia, Inc. v. Angel Flight America, Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008). There is no error where the scope of the injunction enjoined the "actions that prompted [plaintiff's] decision to bring [its] lawsuit." *Id.*

The district court acted within its discretion in imposing an injunction. This remedy is justified by the evidence of NOCO's willful infringement and the need to prevent future harm to Deltona and to the public. *Id.* ("[T]he public deserves not to be led astray by the use of inevitably confusing marks). NOCO's arguments regarding unclean hands, equitable estoppel, and the scope of the injunction are unsupported by the facts and the law. The district court's decisions should be affirmed.

## VI.    EXHIBITS NOT ADMITTED SHOULD BE STRICKEN

NOCO's appendix includes at least one exhibit—DX 272—which was not part of the record below and therefore cannot be part of the record on appeal. It is axiomatic that a reviewing court will not consider "evidence" that was not admitted and made part of the record in the district court; that is not "evidence" at all. *See*

*United States v. Dwoskin,* 644 F.2d 418, 421 (5th Cir. 1981). The submission is also a violation of Rule 30-1(a), which provides that, aside from certain materials related to habeas corpus petitions, "under no circumstances should a document be included in the appendix that was not submitted to trial court." *See* 11th Cir. R. 30-1(a). This Court should therefore disregard DX-272, strike same from NOCO's appendix, and impose an appropriate sanction for NOCO's attempt to misrepresent to this Court that this document was part of the record below. Further, the Court should not give it any weight. *See Dwoskin,* 644 F.2d at 421.

## CONCLUSION

Deltona respectfully requests that this Court affirm the jury's verdict, the district court's orders, and the final judgment of the district court.

Dated: May 14, 2025

Respectfully submitted,

**SHUTTS & BOWEN LLP**

*/s/ Patricia M. Flanagan*
Patricia M. Flanagan
Florida Bar No. 58592
525 Okeechobee Blvd.
Suite 1100
West Palm Beach, FL 33401
Tel.: (561) 835-8500
Email: pflanagan@shutts.com

Jodi-Ann Tillman
Florida Bar No. 1022214
201 East Las Olas Blvd.
Suite 2200
Fort Lauderdale, FL 33301
Tel.: (561) 835-8500
Email: jtillman@shutts.com

Camila Chediak
Florida Bar No. 1039625
200 South Biscayne Blvd., Suite 4100
Miami, Florida 33131
Tel.: (305) 379-9177
Email: cchediak@shutts.com

*Attorneys for Appellee Deltona*
*Transformer Corporation*

# CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because:

This brief contains 12,860 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has prepared in a proportionally spaced typeface using Microsoft Word® in 14 pt. font size, Times New Roman.

Dated: May 14, 2025                          Respectfully submitted,

                                             **SHUTTS & BOWEN LLP**

                                             */s/ Patricia M. Flanagan*
                                             Patricia M. Flanagan

                                             *Counsel for Appellee Deltona*
                                             *Transformer Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2025, the foregoing was electronically filed with the Clerk of the Court by using the Court's Appellate PACER system, which will automatically send a notice of electronic filing to all counsel of record. Under Eleventh Circuit Rule 25-3(f), no independent service by other means is required.

*/s/ Patricia M. Flanagan*
Patricia M. Flanagan

*Counsel for Appellee Deltona Transformer Corporation*
