# United States Court of Appeals for the Eleventh Circuit

DELTONA TRANSFORMER CORPORATION,

*Plaintiff-Appellee*,

v.

THE NOCO COMPANY,

*Defendant-Appellant.*

On Appeal from the United States District Court for the Middle District of Florida, Hon. Carlos E. Mendoza,
Case No. 6:19-cv-00308-CEM-LHP

## REPLY BRIEF OF DEFENDANT-APPELLANT THE NOCO COMPANY

Meredith M. Wilkes
JONES DAY
901 Lakeside Ave.
Cleveland, OH 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
mwilkes@jonesday.com

Anna E. Raimer
JONES DAY
717 Texas Ave., Ste. 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
aeraimer@jonesday.com

Gregory A. Castanias
Amelia A. DeGory
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
gcastanias@jonesday.com

Kristina K. Cercone
JONES DAY
110 N. Wacker Dr., Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
kcercone@jonesday.com

*Counsel for Defendant-Appellant*

*Deltona Transformer Corporation v. The NOCO Company*
No. 24-13590

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

As required by Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-1(a), Defendant-Appellant The NOCO Company hereby certifies that the Certificate of Interested Persons and Corporate Disclosure Statement contained in its opening brief remains complete and accurate, except for the following new interested persons listed in the Brief of 31 Intellectual Property and Media Law Professors as *Amici Curiae* in Support of Appellant and Reversal:

1.  Carrier, Michael A. (Professor, Rutgers Law School): *Amicus Curiae*

2.  Catanzaro, Zachary (Professor, St. Thomas University, Benjamin L. Crump College of Law): *Amicus Curiae*

3.  Diamond, Shari Seidman (Professor, Northwestern University Pritzker School of Law): *Amicus Curiae*

4.  Dobbs, Ashley R. (Professor, University of Richmond School of Law): *Amicus Curiae*

5.  Dogan, Stacey (Professor, Boston University School of Law): *Amicus Curiae*

6.  Farley, Christine Haight (Professor, American University Washington College of Law): *Amicus Curiae*

7.  Gebhard-Koenigstein, August (Certified Law Student, Stanford Law School Juelsgaard Intellectual Property and Innovation Clinic)

8.  Ghosh, Shubha (Professor, Syracuse University College of Law): *Amicus Curiae*

9.  Gibson, James (Professor, University of Richmond School of Law): *Amicus Curiae*

10. Goldman, Eric (Professor, Santa Clara University School of Law): *Amicus Curiae*

11. Heymann, Laura A. (Professor, William & Mary Law School): *Amicus Curiae*

12. Hsieh, Timothy T. (Professor, Oklahoma City University School of Law): *Amicus Curiae*

13. Johnson, Eric E. (Professor, University of Oklahoma College of Law): *Amicus Curiae*

14. Lantagne, Stacey M. (Professor, Western New England University School of Law): *Amicus Curiae*

15. Lemley, Mark A. (Professor, Stanford Law School): *Amicus Curiae*

16. Levine, David S. (Professor, Elon University School of Law): *Amicus Curiae*

17.  Li, Selina (Certified Law Student, Stanford Law School Juelsgaard Intellectual Property and Innovation Clinic)

18.  Liebesman, Yvette Joy (Professor, Saint Louis University School of Law): *Amicus Curiae*

19.  Lobel, Orly (Professor, University of San Diego School of Law): *Amicus Curiae*

20.  Love, Brian J. (Professor, Santa Clara University School of Law): *Amicus Curiae*

21.  Malone, Phillip (Counsel of Record for *Amici*)

23.  McKenna, Mark P. (Professor, UCLA School of Law): *Amicus Curiae*

24.  Miers, Jess (Professor, University of Akron School of Law): *Amicus Curiae*

25.  Moffat, Viva R. (Professor, University of Denver Sturm College of Law): *Amicus Curiae*

26.  Ochoa, Tyler T. (Professor, Santa Clara University School of Law): *Amicus Curiae*

27.  Perzanowski, Aaron (Professor, University of Michigan Law School): *Amicus Curiae*

28.   Ramsay, Lisa (Professor, University of San Diego School of Law):
      *Amicus Curiae*

29.   Reid, Amanda (Professor, University of North Carolina at Chapel Hill):
      *Amicus Curiae*

30.   Rosenblatt, Betsy (Professor, Case Western Reserve University School
      of Law): *Amicus Curiae*

31.   Said, Zahr K. (Professor, Santa Clara University School of Law):
      *Amicus Curiae*

32.   Silbey, Jessica (Professor, Boston University School of Law): *Amicus
      Curiae*

33.   Sprigman, Christopher (Professor, NYU School of Law): *Amicus
      Curiae*

34.   Srejovic, Nina (Counsel of Record for *Amici*)

35.   Stanford Law School Juelsgaard Intellectual Property and Innovation
      Clinic

36.   Tang, Xiyin (Professor, UCLA School of Law): *Amicus Curiae*

37.   Tushnet, Rebecca (Professor, Harvard Law School): *Amicus Curiae*

38.   Zhou, Jina (Certified Law Student, Stanford Law School Juelsgaard
      Intellectual Property and Innovation Clinic).

July 3, 2025

Respectfully submitted,

*/s/ Gregory A. Castanias*

Meredith M. Wilkes
JONES DAY
901 Lakeside Ave.
Cleveland, OH 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
mwilkes@jonesday.com

Anna E. Raimer
JONES DAY
717 Texas Ave., Ste. 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
aeraimer@jonesday.com

Gregory A. Castanias
Amelia A. DeGory
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
gcastanias@jonesday.com
adegory@jonesday.com

Kristina K. Cercone
JONES DAY
77 W. Wacker, Suite 3500
Chicago, IL 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
kcercone@jonesday.com

*Counsel for Defendant-Appellant*

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DIS-
CLOSURE STATEMENT ...................................................................... C - 1

TABLE OF CITATIONS ........................................................................ iii

INTRODUCTION .................................................................................... 1

ARGUMENT ............................................................................................ 3

I.  THE DISTRICT COURT ERRED BY FAILING TO GRANT JMOL
    OR A NEW TRIAL ........................................................................... 3

    A.  "Battery Tender" Was Generic *Ab Initio*; At Minimum, It Has
        Become Generic ........................................................................ 3

    B.  The District Court Should Have Granted Judgment for NOCO
        on DTC's Trademark-Infringement Claims ........................... 11

        1.  Keyword bidding, "mere" or otherwise, is not actionable ...... 11

        2.  Sponsored-brand ads and product descriptions did not
            create likely confusion ......................................................... 13

    C.  DTC Failed To Prove Any Consumer Injury, Compelling
        Judgment in NOCO's Favor on DTC's FDUTPA Claim ................. 15

    D.  DTC's Response Confirms That It Failed To Prove Actual
        Damages .................................................................................... 17

        1.  DTC failed to prove damage to DTC, as opposed to
            Deltran .................................................................................... 18

        2.  DTC cannot rely on approximation to show the fact of
            damage .................................................................................... 19

        3.  DTC failed to prove actual damages under FDUTPA ............. 21

II.  THE DISTRICT COURT ERRED BY INSTRUCTING THE JURY
     ON A FALSE-ADVERTISING CLAIM THAT DTC NEVER
     ASSERTED OR PROVED ................................................................. 22

III. THE DISTRICT COURT ABUSED ITS DISCRETION BY
     DISGORGING NOCO'S PROFITS AND IMPOSING AN
     INJUNCTION ..................................................................................... 28

     A.  The District Court Should Not Have Disgorged NOCO's Profits ..... 28

**TABLE OF CONTENTS**
**(continued)**

    B.     The District Court Should Not Have Imposed an Injunction ............30

CONCLUSION......................................................................................................31

CERTIFICATE OF COMPLIANCE.......................................................................32

CERTIFICATE OF SERVICE ...............................................................................33

# TABLE OF CITATIONS

**Page**

CASES

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
  537 F.2d 4 (2d Cir. 1976) ...................................................1

*ADT LLC v. Vivint, Inc.*,
  No. 17-CV-80432-MIDDLEBROOKS, 2017 WL 8404330 (S.D.
  Fla. Nov. 20, 2017) .........................................................20

*Aronowitz v. Health-Chem Corporation*,
  513 F.3d 1229 (11th Cir. 2008) ...............................20, 21

*Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*,
  765 F.3d 1277 (11th Cir. 2014) .................................25

*Bos. Duck Tours, LP v. Super Duck Tours, LLC*,
  531 F.3d 1 (1st Cir. 2008)....................................8, 9

*Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*,
  270 F. Supp. 3d 1340 (S.D. Fla. 2017)......................21, 22

*Cioffe v. Morris*,
  676 F.2d 539 (11th Cir. 1982) ...............................24

*Dewberry Grp., Inc. v. Dewberry Eng'rs Inc.*,
  145 S. Ct. 681 (2025).........................................18

*Diversified Mgmt. Sols., Inc. v. Control Sys. Rsch., Inc.*,
  No. 15-81062-civ-MIDDLEBROOKS, 2016 WL 4256916 (S.D.
  Fla. May 16, 2016).............................................21

*Doe #6 v. Miami-Dade Cnty.*,
  974 F.3d 1333 (11th Cir. 2020) ...............................24

*Env't Mfg. Sols., LLC v. Fluid Grp., Ltd.*,
No. 6:18-cv-156-Orl-40KRS, 2018 WL 3635112 (M.D. Fla. May
9, 2018) ............................................................................................15

*Filipino Yellow Pages, Inc. v. Asian J. Publ'ns, Inc.*,
198 F.3d 1143 (9th Cir. 1999) ........................................................10

*\*Fishman Transducers, Inc. v. Paul*,
684 F.3d 187 (1st Cir. 2012)......................................................19, 20

*Gilbane Building Company v. Federal Reserve Bank of Richmond*,
80 F.3d 895 (4th Cir. 1996) ............................................................25

*Harley-Davidson, Inc. v. Grottanelli*,
164 F.3d 806 (2d Cir. 1999) ............................................................10

*In re Seagate Tech., LLC*,
497 F.3d 1360 (Fed. Cir. 2007) .......................................................17

*Jack Daniel's Props. v. VIP Prods., LLC*,
599 U.S. 140 (2023)........................................................................13

*\*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
299 F.3d 1242 (11th Cir. 2002) ............................................25, 26, 27

*\*Kellogg Co. v. Nat'l Biscuit Co.*,
305 U.S. 111 (1938)................................................................8, 9, 12

*\*Kia Motors Am. Corp. v. Butler*,
985 So.2d 1133 (Fla. 3d DCA 2008)................................................22

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)........................................................................22

*Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*,
932 F.3d 1303 (11th Cir. 2019) .......................................................25

*Mee Indus. v. Dow Chem. Co.*,
  608 F.3d 1202 (11th Cir. 2010) ....................................................17, 18

*Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*,
  702 F.3d 1312 (11th Cir. 2012) ......................................3, 5, 8, 9, 11

*Nutradose Labs, LLC v. Bio Dose Pharma, LLC*,
  710 F. Supp. 3d 1200 (S.D. Fla. 2024)............................................16

*Osheroff v. Humana Inc.*,
  776 F.3d 805 (11th Cir. 2015) ........................................................31

*Platinum Props. Inv. Network, Inc. v. Sells*,
  No. 18-61907-CV-STRAUSS, 2023 WL 7144676 (S.D. Fla. Sept.
  18, 2023) ..........................................................................................20

*PODS Enters., LLC v. U-Haul Int'l, Inc.*,
  126 F. Supp. 3d 1263 (M.D. Fla. 2015)................................20, 21, 22

*Ramada Inns, Inc. v. Gadsden Motel Co.*,
  804 F.2d 1562 (11th Cir. 1986) ......................................................20

*Rollins, Inc. v. Butland*,
  951 So.2d 860 (Fla. 2d DCA 2006)..................................................21

*Shire City Herbals, Inc. v. Blue*,
  410 F. Supp. 3d 270 (D. Mass. 2019)................................................9

*State v. Wyndham Int'l Inc.*,
  869 So.2d 592 (Fla. 1st DCA 2004) ................................................16

*Stewart Agency, Inc. v. Arrigo Enters., Inc.*,
  266 So.3d 207 (Fla. App. 4th Dist. 2019)........................................15

*TocMail, Inc. v. Microsoft Corp.*,
  67 F.4th 1255 (11th Cir. 2023) .......................................................27

*Urling v. Helms Exterminators, Inc.*,
  468 So.2d 451 (Fla. 1st DCA 1985) ...................................................22

*Vision Ctr. v. Opticks, Inc.*,
  596 F.2d 111 (5th Cir. 1979) ............................................................4

*Wakefield v. Cordis Corp.*,
  304 F. App'x 804 (11th Cir. 2008) ...................................................25

*Welding Servs., Inc. v. Forman*,
  509 F.3d 1351 (11th Cir. 2007) ....................................................3, 10

**OTHER AUTHORITIES**

*2 McCarthy on Trademarks and Unfair Competition (5th ed.) ...............4, 5, 6, 7, 9

Fed. R. Civ. P. 15 ...............................................................2, 23, 24, 25

Fed. R. Civ. P. 16 ..............................................................................23

Fed. R. Civ. P. 54 ..............................................................................24

Fed. R. Evid. 201 ...............................................................................31

*Federal Judicial Center, *Reference Manual on Scientific Evidence*
  (3d ed. 2011) .....................................................................................6

**INTRODUCTION**

DTC appropriated a generic term that refers to the type of product it offers: a "battery tender," which tends batteries. DTC then weaponized that generic term against its most successful competitor, convincing a jury and judge to award a combined $20 million, and securing an overbroad injunction. That judgment is indefensible: DTC cannot obtain "a monopoly not only of the mark but of the product by rendering a competitor unable effectively to name what it was endeavoring to sell." *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10 (2d Cir. 1976) (Friendly, J.).

DTC's scattershot brief proves that indefensibility. It avoids meeting NOCO's showings, labors to revise DTC's own liability and damages theories, and turns to sharp invective where record support and reasoned argument are lacking.

DTC's infringement case stood on the flawed foundation that NOCO could not say or use "battery tender" in any way. Yet it now struggles to rewrite history by claiming that one of those accused uses—"mere keyword advertising"—"is not implicated by this case." The record says otherwise: the damages and injunction *are* premised on keyword bidding on Amazon.com.

DTC's other arguments only confirm the fatal holes in its case.

- Recognizing that it never pleaded a false-advertising claim, DTC defends the judge's addition of such a jury charge with a never-

before-raised argument claiming amendment under Rule 15(b). This forfeited argument fails on its merits, too: there was no Rule 15 amendment; DTC does not account for its failure of proof of false advertising; and the argument lays bare the prejudice to NOCO of having a new claim sprung on it at trial's end.

- DTC shows no injury to any consumer, as would be required to salvage its FDUTPA claim.

- And DTC further fails to explain how it could possibly be entitled to actual damages, when it showed no harm to itself, but instead relied on alleged harm (also absent from the record) to its non-party affiliates.

This Court should reverse, lest this Circuit become a magnet for opportunistic competitors, losing in the marketplace, to bring multi-million-dollar trademark lawsuits with no proof of likely confusion or actual damage.

## ARGUMENT

## I. THE DISTRICT COURT ERRED BY FAILING TO GRANT JMOL OR A NEW TRIAL

### A. "Battery Tender" Was Generic *Ab Initio*; At Minimum, It Has Become Generic

All the evidence demonstrates that "battery tender" denotes a class of goods that tend a battery. It is therefore generic. The jury was not at liberty to disbelieve that evidence. NOCOBr.24-32.[1]

DTC's contrary arguments fundamentally misunderstand genericness. Generic names—ALE HOUSE for a beer-serving restaurant; WELDING SERVICES for a welding-equipment-repair company; or BATTERY TENDER for a device that tends batteries—enjoy no trademark protection. NOCOBr.24; *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1318 (11th Cir. 2012); *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1358-59 (11th Cir. 2007). Just as a "bartender" tends a bar, a "ship tender" tends a ship, and an "engine tender" tends a train engine, a "battery tender" *tends a battery* and is ineligible for trademark protection. NOCOBr.24-27. In fact, DTC's self-serving origin story asserts the term was chosen based on the "belie[f]" that the "product

---

[1] NOCO cites its opening brief (Doc. 29) as "NOCOBr.__"; DTC's brief (Doc. 45) as "DTCBr.__"; and the amicus brief filed by 31 scholars in support of NOCO and reversal (Doc. 44) as "AmicusBr.__."

would take care of"—*i.e.*, tend—"a battery." DTCBr.6 (citing Dkt.399(201:13-18)).

DTC contends that NOCO had to show that "Battery Tender" was generic before NOCO's first accused use in 2014. DTCBr.21. This is incorrect. For one, DTC's citation-free statement that "NOCO also does not claim the asserted marks were generic from the beginning" (DTCBr.23-24) misstates NOCO's argument, which is that "Battery Tender" *has always been* generic. NOCOBr.24-32; PX-61G; *see Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 115 (5th Cir. 1979) ("The threshold question in any trade name infringement action is whether the word or phrase was initially registerable or protectable.").

For another, DTC cites no case from anywhere—including in its lengthy string cite (DTCBr.21 n.5)—requiring survey evidence measuring genericness before alleged infringement begins. Even courts adopting a "critical date" analysis for measuring genericness accept "the current date of the litigation" for surveys. 2 McCarthy on Trademarks and Unfair Competition § 12:17.75 (5th ed.).

Finally, DTC asserts (again citing nothing) that "[t]he law requires this so that an infringer cannot benefit from the confusion that the infringer itself created." DTCBr.21. But genericness means that consumers do not associate a term with *any* source. Such "confusion" would neither indicate nor cause genericness.

***NOCO's uncontroverted survey evidence.***  DTC's arguments cannot surmount the fact that NOCO submitted conclusive survey evidence and DTC submitted none.  DTC nowhere contests that NOCO's survey showed 78% of respondents treated "battery tender" generically, or that most courts would find DTC's lack of survey warrants presuming that a survey would have been unfavorable.  NOCOBr.26-28.  And DTC does not defend the district court's reasoning that cross-examination alone justified rejecting the only survey in evidence.  Rather, DTC all but states that NOCO's survey evidence proves that, at least by 2020, the term had become generic.  DTCBr.21.

DTC tries to sidestep this conclusive evidence altogether, suggesting that this Court views survey evidence skeptically.  DTCBr.22.  NOCO already addressed this incorrect claim.  NOCOBr.28.  DTC's cited cases at most reflect some skepticism towards surveys offered to prove *likelihood of confusion*—not genericness, where survey evidence remains "almost de rigeur."  NOCOBr.27 (quoting McCarthy § 12:14); *Miller's Ale House,* 702 F.3d at 1321 ("a random consumer survey … offer[s] evidence of general public perception" and is superior evidence to customer declarations).

DTC's remaining challenges to NOCO's survey fall flat, and cannot substitute for DTC's own lack of survey evidence.  DTC levels the unsupported accusation that the survey was "designed to obtain a particular result" (DTCBr.21),

which is simultaneously untrue (by asking whether "battery tender" was a brand name or a common name, it adhered to the "standard technique"—*see* Federal Judicial Center, *Reference Manual on Scientific Evidence* 401 (3d ed. 2011) (chapter authored by amicus Diamond)), and concedes that the survey *did* show a particular result—genericness—by a mile.

Next, DTC argues that the survey "us[ed] an overinclusive population" and "failed to test whether the respondents had any awareness of the term prior to the survey or were merely guessing." DTCBr.20. Both arguments are meritless. The proper universe for a consumer genericness survey is "that segment of the population whose perceptions and state of mind are relevant to the issues in [the] case." McCarthy § 32.159 (5th ed.); *see also Reference Manual*, *supra*, 376 (appropriate "relevant population" is "all prospective and past purchasers" of plaintiff's and defendant's goods). NOCO's expert properly surveyed respondents who were in the market for "products, tools, or accessories for the care and maintenance of the[ir] vehicle." Dkt.400(216:15-18). Significantly, the court *rejected* "[DTC's] protestations that the respondents may not be familiar with its specific brand of products" as "of little consequence" because "the fact that a respondent was familiar with the term 'battery tender' without being familiar with

[DTC]'s brand" could be "probative evidence that the term is generic." Dkt.352-1 at 10 (*Daubert* ruling).[2]

Likewise, DTC's suggestion that NOCO should have "test[ed] whether the respondents had any awareness of the term prior to the survey" (DTCBr.20) lacks empirical foundation. NOCO's expert correctly explained that it would have "biase[d] the survey response" to ask whether consumers had heard of "Battery Tender" before asking whether "battery tender" was a type of product or a brand name. Dkt.400(231:23-232:20); *see* McCarthy § 12:14 ("A survey that merely tests for consumer awareness of the designation is irrelevant.").

The court also rejected as "unfounded" DTC's "concern that the respondents may not have been familiar with the term at all and simply guessed at the answer," because NOCO's expert "included an option for the respondents to answer that they did not know whether the term was a type or a brand name." Dkt.352-1 at 10. DTC's renewed "guessing" suggestion (DTCBr.20) is baseless.

***Deltran USA's generic use of "battery tender."*** Deltran USA's generic use of "battery tender" demonstrates that the term is generic. NOCOBr.28-29. DTC has no answer to NOCO's showing that Deltran USA purchased the keyword "battery tender" alongside other brand names, including "NOCO." NOCOBr.29.

---

[2] DTC wrongly cites Dkt.269, a version of the *Daubert* ruling withdrawn from the docket. The "of record" version, Dkt.352-1, is reproduced in NOCO's appendix.

Nor does it contest that Deltran USA's advertisement touting its product as "The only battery tender" used "battery tender" generically. *See* DX-71. Instead, DTC protests that DX-71—a screenshot of that advertisement—does not indicate if the ad was displayed or whether consumers saw it. DTCBr.19 n.4. Here, DTC cites testimony concerning a *different* set of ads. *Id.* The court *overruled* a similar objection to DX-71's admissibility. Dkt.402(53:11-54:17).

**_Generic use by unaffiliated persons in the trade._** DTC nowhere contests that generic uses of "battery tender" by persons in the trade indicate genericness. NOCOBr.29-30 (citing DX-111 at 2; DX-120 at 3; DX-462 at 1); *Miller's Ale House*, 702 F.3d at 1318. It just asserts that they "do[] not undermine the jury's verdict." DTCBr.22. That is impossible to square with *Miller's Ale House*'s holding that "generic use by third parties is evidence that the term is generic." 702 F.3d at 1321 (quoting *Bos. Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 19 (1st Cir. 2008)).[3]

DTC struggles to distinguish *Kellogg* and *Miller's Ale House*, which held that "shredded wheat" and "ale house" were generic combinations of commonplace adjectives and commonplace nouns. DTCBr.23-24; *see Kellogg Co.*

---

[3] DTC argues that the genericness inquiry in *Miller's Ale House* turned on the unaffiliated restaurants' use of the term "ale house" "*in their names.*" DTCBr.24 (emphasis by DTC). This Court did not so cabin its analysis.

*v. Nat'l Biscuit Co.*, 305 U.S. 111, 118 (1938); *Miller's Ale House*, 702 F.3d at 1321.[4] "Rather than answering the question 'where do you come from?,'" generic terms like these "merely explain[] 'what are you?'" *Duck Tours*, 531 F.3d at 14 (quoting 2 McCarthy § 12:1). That describes "battery tender" to a 't.'

DTC then offers the *non sequitur* that its trademark does not claim upper-case or lower-case lettering. DTCBr.23 & n.6. But the use of lowercase letters by these unaffiliated persons remains significant, because it shows they use "battery tender" as a generic noun, not a brand. *See, e.g.*, *Shire City Herbals, Inc. v. Blue*, 410 F. Supp. 3d 270, 285 (D. Mass. 2019) (observing that "lower case letters … indicates generic usage to" defendants' linguistics expert, and granting defendants summary judgment of genericness).

> ***DTC's purported evidence of "distinctiveness and secondary meaning."***
DTC claims "substantial evidence" purportedly "show[s] the distinctiveness and secondary meaning" of Battery Tender. DTCBr.24. This sort of "evidence" does not disprove genericness; "[i]f the term is generic, it cannot be the subject of trademark protection under any circumstances, even with a showing of secondary

---

[4] In *Kellogg*, a patent had used "shredded" to describe the product, but the Supreme Court nowhere endorsed DTC's cramped reading that "shredded wheat" was only generic because of that patent language. 305 U.S. at 112-13. DTC's effort to distinguish *Miller's Ale House* likewise misreads that decision. *See* n.3, *supra*.

meaning." *Filipino Yellow Pages, Inc. v. Asian J. Publ'ns, Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999).

DTC presented no such "substantial evidence" anyway. It introduced no survey—the prototypical way of demonstrating non-genericness. And its other "evidence" is irrelevant. DTC insists it "provided examples of NOCO using 'Battery Tender' in a way that indicated Deltona as the source," but fails to cite even one, let alone an "example" showing NOCO using the term non-generically. DTCBr.24. NOCO's offers to buy the company hardly indicate that "Battery Tender" is source-indicating, or that NOCO ascribed any value to "Battery Tender"; DTC offers no authority suggesting otherwise. DTCBr.24. Likewise, DTC cites no authority for claiming its "investment in building goodwill" can rebut a showing of genericness. DTCBr.25. And DTC's statement that other entities "do not sell other charger products" labeled "Battery Tender" (*id.*) is non-probative. NOCOBr.28-29; DX-71.

DTC's meager examples of *others'* use of "Battery Tender" referring to Deltran's product do not indicate "distinctiveness and secondary meaning," let alone non-genericness. DTCBr.24. As NOCO showed, "even if the name becomes in some degree associated with the source," Battery Tender remains generic. *Welding Servs.*, 509 F.3d at 1358; NOCOBr.31; *see Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 812 (2d Cir. 1999) (because "hog" was generic

*ab initio* for motorcycles, Harley-Davidson could not trademark it). DTC offers no response. Even the district judge used the term generically. Dkt.284(4:3-10); NOCOBr.31.

Lastly, DTC cannot "appropriate" a generic term "from the public domain," *Miller's Ale House*, 702 F.3d at 1317, with colorful "testimony on the brand's origins." DTCBr.24.

## B. The District Court Should Have Granted Judgment for NOCO on DTC's Trademark-Infringement Claims

If DTC's mark is generic, NOCO is entitled to judgment. *See* NOCOBr.33. DTC does not contest this. Nor does DTC grapple with NOCO's showings that each category of NOCO's complained-of advertisements on Amazon.com was unlikely to cause consumer confusion, as the law requires for infringement. NOCOBr.10-17, 34-42.

### 1. Keyword bidding, "mere" or otherwise, is not actionable

NOCO's use of "battery tender" as an Amazon.com search keyword was not trademark infringement. NOCOBr.34-37; AmicusBr.4-17. DTC nowhere disputes that the consensus of courts hold that buying a competitor's mark as a search keyword is not trademark infringement; that it creates no likelihood of confusion;

and that initial-interest confusion is not a viable basis for liability.[5]  DTC has no

response to the amicus brief from 31 of the country's leading scholars in this area,

except to pronounce in a footnote that the brief "does not transform the relevance

of the issues."  DTCBr.5 n.2.

Instead, DTC repeatedly argues that "*mere* keyword advertising" or

"bidding" is not at issue.  DTCBr.25, 26, 27.[6]  DTC seems to want to distinguish

between "mere" keyword bidding (which it all but concedes is permissible), and

"excessive keyword bidding" (a term DTC repeatedly used at trial but never

explained).  *E.g.*, Dkt.399(159:4, 159:20-22) (opening); Dkt.341(189:12-21) (DTC

counsel); Dkt.343(68:21-69:7) (DTC counsel questioning Ms. Rea);

Dkt.401(166:21-25, 167:14-19, 169:19-170:13) (DTC counsel cross-examining

Ms. Distler); Dkt.403(30:22-31:4, 45:1-4) (closing).  The fact remains that DTC

asserted the lawful conduct of bidding on a competitor's trademark as a search

---

[5] NOCO showed that "initial-interest confusion" is doctrinally unsound and has
never been recognized by this Court, but is a necessary prerequisite to a claim that
keyword bidding causes confusion.  NOCOBr.35-36.  DTC offers a convoluted
argument sounding in waiver, contending that because NOCO did not request that
the jury be instructed on "initial-interest confusion," somehow it has no relevance
here.  DTCBr.27.  But it was *DTC* that claimed NOCO's keyword-bidding
practices constituted trademark infringement.  Regardless, DTC acknowledges that
NOCO raised the issue via JMOL, *id.*, exactly the right vehicle for challenging the
legal viability of a plaintiff's liability theory.

[6] All emphasis is added unless otherwise noted.

keyword as a basis for trademark-infringement liability. Even the district court adopted the view that "using or purchasing keywords" is transgressive, noting that it was "prohibited by … the injunction" it entered. Dkt.423 at 23.

That is wrong as a matter of law, as NOCO and the 31 amici scholars showed—"[a]dvertisers' keyword bids fall outside of what the Supreme Court has recognized as the 'heartland' of trademark law." AmicusBr.5 (citing *Jack Daniel's Props. v. VIP Prods., LLC*, 599 U.S. 140, 145 (2023)). NOCO and amici also soundly refuted the notion that competitive keyword advertising—"mere" or "excessive"—is likely to cause confusion. *See* AmicusBr.7-11. That NOCO used DTC's mark "to help place the advertisement does not mean that the defendant's mark and the plaintiff's mark are similar, any more than a retailer stocking Pepsi next to Coke on a grocery store shelf would mean that those trademarks are similar." AmicusBr.11-12. DTC has no response.

### 2. Sponsored-brand ads and product descriptions did not create likely confusion

If keyword advertising is not implicated here—as DTC states—that leaves DTC's vague claim of "multi-channel and systematic infringement." But intoning "multi-channel" and "systematic" (DTCBr.1, 4, 10, 11, 15, 25, 27) is not *evidence* of *infringement*. In fact, DTC's damages expert confirmed that there is *no* evidence that NOCO ever used "battery tender" (or even "tender") in any

"channel," such as in-store displays, point-of-sale materials, or websites. Dkt.405(24:7-25:9).

DTC's strategy of providing long, undescribed string citations and then cross-referencing to them (*e.g.*, DTCBr.27, citing DTCBr.8-13), cannot salvage its case. Those citations fall into categories that NOCO already showed do not prove likely confusion as a matter of law (NOCOBr.38-42):

(1)     keyword bidding (where "battery tender" was not visible to the consumer);

(2)     "Sponsored" ads on Amazon.com (and Amazon.com confirmations of those campaigns) using "battery tender" in a generic manner alongside images of NOCO products identified with NOCO's logo, NOCO's registered trademark, and NOCO's product names;

(3)     fine-print product descriptions briefly and inadvertently placed on Amazon.com;

(4)     NOCO employees using "battery tender" generically; and

(5)     a handful of consumer messages, none showing a lack of consumer clarity or a link to Amazon.com ads.

Moreover, DTC did not prove likely *consumer* confusion with the few NOCO *employee-to-employee* messages exhibiting frustration with DTC's and

Deltran's actions (DTCBr.12-13) (citing PX-123, PX-133, PX-134, PX-139), or by repeating profanity in its brief. DTCBr.26.

Lastly, DTC's unelaborated "actual confusion" string cite blends unrelated evidence and testimony with its *de minimis* "actual confusion" evidence. DTCBr.11-12. Absent the extraneous evidence (*e.g.*, PX-44 (Deltran's advertising figures) and related testimony; PX-47, PX-49, PX-50, PX-52 (screenshots of sponsored ads); PX-132 (NOCO employee's email to retailer using "battery tender" generically)), DTC is left with the same three purported instances of "confusion" (PX-138; PX-147; and PX-162A-B) that NOCO already showed are legally irrelevant. *See* NOCOBr.39-42.

### C. DTC Failed To Prove Any Consumer Injury, Compelling Judgment in NOCO's Favor on DTC's FDUTPA Claim

FDUTPA requires proof of consumer injury. DTC presented none. NOCOBr.45-47. DTC's arguments ignore the required *injury* and again rest on purported "confusion" that is factually absent and legally insignificant.

DTC's arguments that FDUTPA protects it as a non-consumer are wrong. DTCBr.34-35. DTC had to "prove the elements of the claim, *including an injury to a consumer*." *Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So.3d 207, 212 (Fla. App. 4th Dist. 2019); *see Env't Mfg. Sols., LLC v. Fluid Grp., Ltd.*, No. 6:18-

cv-156-Orl-40KRS, 2018 WL 3635112 (M.D. Fla. May 9, 2018). *That* is where DTC failed.[7]

DTC's cited cases do not suggest otherwise. Even if DTC had to prove only "likely" (rather than *actual*) injury to a consumer (DTCBr.34), it did not. *See supra* 13-15; NOCOBr.33-39. And *State v. Wyndham Int'l Inc.*, 869 So.2d 592, 598 (Fla. 1st DCA 2004) *did* involve actual harm to consumers—hotel guests who were charged an energy surcharge fee without notice. *Id.*

In an attempt to show consumer harm, DTC cites its purported evidence of actual confusion. DTCBr.35. NOCO already refuted that. *Supra* 13-15; NOCOBr.39-42. It also claims "millions of customers saw NOCO's ads," DTCBr.34-35, as though a consumer seeing an ad proves its viewer was confused. It only proves that DTC's three purported examples of confusion out of "millions" are truly *de minimis*.

---

[7] DTC attempts to rebut NOCO's authorities by saying they "do not involve trademark infringement or deceptive advertisements under the Lanham Act or are distinguishable" (DTCBr.34-35 n.11), but fails to show that excuses FDUTPA's consumer-injury requirement for trademark-infringement or false-advertising cases, or that any purported distinctions eliminate that requirement. And DTC's cited case, *Nutradose Labs, LLC v. Bio Dose Pharma, LLC*, 710 F. Supp. 3d 1200 (S.D. Fla. 2024), involved proof of consumer injury: "consumers mistakenly assumed that [the plaintiff] sold them purportedly expired … products" and that the defendant sold the plaintiff's product. *Id.* at 1226.

DTC further contends "NOCO surely would not have spent, and then continued to spend, significant money to run such ads if the deception did not influence purchasing decisions." DTCBr.35. That is pure *ipse dixit*; it assumes "deception" but gives away the absence of evidence with "surely." It also ignores that the "significant money" was spent on the non-deceptive act of keyword bidding—which DTC now insists this case is not about.

### D. DTC's Response Confirms That It Failed To Prove Actual Damages

Even if DTC's mark were valid and infringed, DTC presented no evidence that it suffered harm from such infringement, let alone evidence sufficient to sustain the jury's $1,300,000 actual-damages award.[8] NOCOBr.48-51. DTC disclaimed any theory that it (or even its nonparty affiliates Deltran or Deltran USA) lost a single sale. NOCOBr.48. Rather, DTC's theory was that its brand was hurt. The problems with DTC's "loss of goodwill" claim are manifold—DTC was required to present "complex financial calculations" to prove "harm to the value of the business as an ongoing concern," *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1222 (11th Cir. 2010), but it offered *nothing* about the "value of [DTC]

---

[8] DTC's assertion that NOCO "does not challenge the punitive damages award … or the underlying willfulness findings" (DTCBr.14 n.3) ignores that NOCO's challenge to the liability verdict would eliminate both. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

as an ongoing concern," *id.*, and its sole (captive) customer Deltran perceived no harm to the brand. *See* NOCOBr.48.

DTC's arguments are unavailing.

### 1. DTC failed to prove damage to DTC, as opposed to Deltran

DTC proved no damage to itself, though it tried to claim that nonparty Deltran suffered some kind of derivative brand damage. Here, DTC's claim founders on the rule that Lanham Act remedies must comply with the common law's "demand to respect corporate formalities." *Dewberry Grp., Inc. v. Dewberry Eng'rs Inc.*, 145 S. Ct. 681, 686-87 (2025). Judgment of no damages is warranted for this reason alone. And DTC does not dispute NOCO's showing that the royalties nonparty Deltran paid DTC for the use of "Battery Tender" remained exactly the same. DTCBr.49.

DTC's hodgepodge of other arguments purportedly showing "harm to [DTC's] goodwill and reputation" are of no moment. DTCBr.31. Again substituting adverbs for evidence, DTC asserts that willful infringement "*most certainly directly* harmed [its] brand and goodwill." *Id.*

DTC then claims it "show[ed], through simple calculations," increased corrective advertising costs. DTCBr.32 (mis-citing Dkt.352-1 as Dkt.269 at 15-16). But DTC's citation shows that the court "excluded" DTC's attempts to present those "simple calculations" through its expert. Dkt.352-1 at 15-16, 47.

DTC presented evidence that *Deltran*—not DTC—had increased advertising spending on Amazon.com in 2019 and 2020 on the advice of its digital marketing advisor. Dkt.343(148:8-149:15). The court concluded that this evidence showed no harm to *DTC*. Dkt.352-1 at 38. Corrective advertising is not by itself a form of "self-verifying damages from infringement." *Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 196 (1st Cir. 2012).

Lastly, DTC invokes its and Deltran's expenditures of "$30 million advertising the Battery Tender brand in the U.S. through various channels," DTCBr.32, hiding that this was for "*25-plus years*" of expenditures. Dkt.343(143:1-19). These expenditures were not traceable to NOCO's acts, nor does DTC cite any authority suggesting that a plaintiff's longstanding advertising spend proves harm to its brand value.

### 2. DTC cannot rely on approximation to show the fact of damage

DTC asserts that it did not need to show "precise calculations" of damages. DTCBr.48. This just repeats the flaw already identified by NOCO—DTC had to prove *the fact of damage*, then *the quantum of those damages*. Approximation is permitted only as to the latter. NOCOBr.50.

The problem with the award here is not mere imprecision, but that DTC's evidence failed to support it. Even DTC's cited case recognizes that an approximation of damages must reflect a "just and reasonable inference" from

relevant evidence. *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1565 (11th Cir. 1986). That is why "damages awards turn out to be comparatively rare in trademark cases primarily … because of the difficulty of proving them." *Fishman Transducers*, 684 F.3d at 194. Here, there were no damages, because DTC had no harm to show.[9]

DTC's cited case, *Aronowitz v. Health-Chem Corporation*, concluded that *prospective* corrective advertising *may* be subject to imprecision. 513 F.3d 1229, 1241 (11th Cir. 2008). But DTC did not assert prospective corrective advertising as a basis for damages—indeed, the court *precluded* DTC's expert from testifying on corrective advertising because its expert "conducted [no] expert analysis regarding the increased advertising costs." Dkt.352-1 at 15-17, 47.

Significantly, in approving a modest prospective-corrective-advertising award of $25,000 in *Aronowitz*, this Court emphasized the requirement to identify specific harms, including "confusion engendered by Aronowitz's website among

---

[9] None of DTC's district-court cases (DTCBr.29) holds that a damages award can rest on approximation when the plaintiff failed to prove *the fact of* harm to goodwill. *ADT LLC v. Vivint, Inc.*, No. 17-CV-80432-MIDDLEBROOKS, 2017 WL 8404330, at *6 (S.D. Fla. Nov. 20, 2017) ("ADT will need to prove … *that it suffered damages* in order to recover actual damages[.]"); *Platinum Props. Inv. Network, Inc. v. Sells*, No. 18-61907-CV-STRAUSS, 2023 WL 7144676, at *20 (S.D. Fla. Sept. 18, 2023) (plaintiff presented expert testimony analyzing drop in sales and quantifying costs of brand-reputation repair); *PODS Enters., LLC v. U-Haul Int'l, Inc.*, 126 F. Supp. 3d 1263, 1282 (M.D. Fla. 2015) (plaintiff presented expert testimony on "adverse impact on PODS' growth[] and lost sales").

Health-Chem's customers." 513 F.3d at 1241. *Aronowitz* based its award on "sufficient evidence in the record for a jury to find that corrective advertising was necessary." *Id.* Here, DTC has not asserted that its sole customer, Deltran, was confused.

### 3.     DTC failed to prove actual damages under FDUTPA

Finally, DTC was required to—but did not—prove that it suffered any non-"stigma damages" for purposes of its FDUTPA claim. NOCOBr.51. DTC responds with the conclusory assertion that it "suffered harm to its goodwill and reputation," which it deems "more than sufficient" to recover under FDUTPA. DTCBr.36.

That is wrong. "Consequential damages"—including "stigma damages" like goodwill and reputational harms—are unavailable under FDUTPA. *Rollins, Inc. v. Butland*, 951 So.2d 860, 869-70 (Fla. 2d DCA 2006); *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1352 (S.D. Fla. 2017) ("harmed goodwill" damages "expressly not recoverable"); *Diversified Mgmt. Sols., Inc. v. Control Sys. Rsch., Inc.*, No. 15-81062-civ-MIDDLEBROOKS, 2016 WL 4256916, at *5 (S.D. Fla. May 16, 2016) ("consequential" or "special" damages not recoverable).

DTC's lone case in support of its interpretation is an outlier district-court decision that misapprehended this distinct feature of FDUTPA. *See PODS Enters.,*

126 F. Supp. 3d at 1282. *PODS* relied on "the legal analysis for federal trademark infringement" and reasoned that since FDUTPA and the Lanham Act contained "the same" "legal standards," *id.* at 1285, corrective advertising could constitute actual damages. *Id.* at 1282, 1285-86. But Florida courts consider "actual damages" to be a "term of art" that does not include such "consequential damages." *Casa Dmitri*, 270 F. Supp. 3d at 1352; *Urling v. Helms Exterminators, Inc.*, 468 So.2d 451, 454 (Fla. 1st DCA 1985); *Kia Motors Am. Corp. v. Butler*, 985 So.2d 1133, 1140 (Fla. 3d DCA 2008).

## II. THE DISTRICT COURT ERRED BY INSTRUCTING THE JURY ON A FALSE-ADVERTISING CLAIM THAT DTC NEVER ASSERTED OR PROVED

### A. NOCO Had No Notice of a False-Advertising Claim

DTC never asserted a "distinct" false-advertising claim, one of two "distinct bases" for liability under Section 43(a) of the Lanham Act. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014); NOCOBr.51-52. DTC even acknowledges "the claim was not pled by name." DTCBr.40 (initial capitalization omitted). Yet in the same breath it argues that this concededly unpleaded claim was "outlined in allegations in the complaint." DTCBr.37. DTC even tries to assert that "NOCO acknowledges as much in its Brief" on page 54, but NOCO did no such thing. DTCBr.37. There, NOCO explained *the district*

*court*'s misguided reasoning—which DTC repeats—that NOCO somehow had notice of this "obviously different" claim. NOCOBr.54.

That is all DTC has to say about notice. While DTC conclusorily asserts that it pleaded *the elements* of a false-advertising claim (DTCBr.38), it fails to cite a single paragraph of its complaint that would supplied notice of those elements. There are none. Nor is there any mention of "false advertising" in the joint pretrial statement, which "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d); *see* Fed. R. Civ. P. 16(e) ("final pretrial" order can be modified "only to prevent manifest injustice").

## B.     DTC's New Rule 15(b) Justification Is Meritless

Tacitly acknowledging that its pleadings *did not* raise a false-advertising claim, DTC contends for the first time that the court properly instructed the jury on false advertising because Federal Rule of Civil Procedure 15(b) "allows for amending pleadings." DTCBr.37. This new—and forfeited—argument was one even the district court did not use. For good reason: DTC never requested amendment under Rule 15(b). Rather, the court added "a separate instruction for false advertising" at the eleventh hour, believing "that [the false-advertising claim] is what Plaintiff has been trying to articulate all along, but which was not immediately understood." Dkt.402(8:4-9:20).

Rule 15(b)(2) cannot justify the court's action. Obviously, NOCO did not consent to this issue being tried; it repeatedly objected, Dkt.402(7:3-9:20; 221:10-222:13); Dkt.403(3:10-11; 110:10-21), to the point that the judge said he "understand[s] the Defense's reaction," noted that NOCO had "more than adequately preserved this issue for any future scrutiny," but insisted giving the instruction "is a hill that I'm going to stay on." Dkt.402(224:10-15). DTC's claim that "NOCO consented to evidence supporting the false advertising claim and is now estopped from claiming prejudice" (DTCBr.38) contradicts that express finding.

As for Rule 15(b)(1), under which "the court may permit" amendment when "a party objects that evidence is not within the issues raised in the pleadings": DTC's justification wilts on the simple facts that DTC never sought, and the court never granted, amendment. Likewise, DTC's fallback to Rule 54(c) goes nowhere—that Rule "creates no entitlement to relief based on issues not squarely presented and litigated at trial." *Cioffe v. Morris*, 676 F.2d 539, 541 (11th Cir. 1982).

NOCO was prejudiced by this entirely new claim, which left NOCO wholly unable to defend against it—no discovery, no experts on issues such as materiality, no affirmative defenses such as puffery. *See Doe #6 v. Miami-Dade Cnty.*, 974 F.3d 1333, 1335 (11th Cir. 2020) (affirming denial of amendment to add unpleaded

claim on the last day of trial, where defendant "would have defended" the case "differently had it known" of the claim). DTC's suggestion that NOCO has "conced[ed]" or "acknowledge[d]" the absence of prejudice (DTCBr.37-38) is not accurate; after all, DTC raised Rule 15(b) for the first time in its brief here. *See Wakefield v. Cordis Corp.*, 304 F. App'x 804, 807 (11th Cir. 2008).

DTC's authorities are unavailing. *Gilbane Building Company v. Federal Reserve Bank of Richmond* confirms that "notice to the defendant of the allegations to be proven is essential." 80 F.3d 895, 901 (4th Cir. 1996) (holding that Rule 15(b) *did not* apply). Its other cases concern legal errors in jury instructions, not the addition of a *new claim* to the instructions. *See Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1315-17 (11th Cir. 2019); *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1289 (11th Cir. 2014).

## C. DTC Failed To Prove the Elements of False Advertising

Given that DTC never pled false advertising, never mentioned it in its opening statement, and offered no justification for it at trial (Dkt.402(224:2-6)), it is unsurprising that DTC failed to prove multiple elements of such a claim: that NOCO's ads were false or misleading as to the nature, qualities, or geographic origin of NOCO's goods; deceived consumers; or that such "deception had a material effect on purchasing decisions." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002); NOCOBr.55. As

NOCO showed—and DTC nowhere disputes—DTC's theory boiled down to the erroneous notion that any mention of its marks is *per se* false advertising. NOCOBr.55 (citing Dkt.436 at 19).

As to the "false and misleading" requirement, DTC again cross-references pages 8-13 of its brief. DTCBr.39. Those citations show no falsehoods, and no confusion. *Supra* 13-15. NOCO's advertisements at all times displayed NOCO's products, logo, registered trademarks, product names, and NOCO product photos bearing NOCO's trademarks. NOCOBr.13. DTC's theory now appears to be that advertisement copy such as "do more than battery tender" was literally false because NOCO's products are not literally Deltran's "Battery Tender" products. DTCBr.8-13. But courts "must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other." *Johnson & Johnson*, 299 F.3d at 1248. And even generously spotting DTC its premise that "battery tender" was not used generically, a claim that a product does "more than battery tender" says that the product is something *other than* a "battery tender"—it does "more."

As for deceived customers (or advertisements having the capacity to deceive customers), DTC cites no record evidence for that proposition. DTCBr.39. There is none.

As for standing—injury traceable to purported false advertising (NOCOBr.53; *supra* 15-19)—DTC says NOCO "waived" this issue. DTCBr.44. Standing is not waivable, and DTC's waiver assertion is untrue—NOCO raised it in post-judgment motions. Dkt.432 at 23 ("Deltona did not establish that it had standing to pursue a false-advertising claim."). DTC's cited evidence does not demonstrate the required injury to DTC. DTCBr.39. PX-232 and related testimony (DTCBr.39) concern *NOCO*'s gross sales of battery chargers, not harm to DTC—and DTC *disclaimed* any lost-sales-damages theory; it never proved any NOCO sales traceable to purportedly false advertising. Dkt.158-7 at 5(96:20-24). DTC's musing that "it would have made sense to" presume injury (as can sometimes be done in a "two-player market," which this is not) gives the game away—it has no *proof* of injury. DTCBr.47. And while DTC labors (DTCBr.46-47) to distinguish *TocMail, Inc. v. Microsoft Corp.*, it ignores that, like TocMail, DTC offered only "speculation" about false-advertising injury. 67 F.4th 1255, 1264, 1266 (11th Cir. 2023) (per curiam).

Finally, DTC failed to prove that any purported false advertisement was likely to be material. *See supra* 13-15. Materiality cannot be presumed, "even when a defendant's advertisement has been found literally false." *Johnson & Johnson*, 299 F.3d at 1250-51. At trial, DTC presented no survey or expert purporting to demonstrate consumer deception or materiality. On appeal, DTC

cross-references two pages of its own brief, 9 and 11. DTCBr.39. Page 9 says nothing about materiality to consumers. On page 11, DTC asserts that Amazon listings "influenced purchasing decisions for large retailers, small stores, and consumers." DTCBr.11. But it cites general testimony from a Deltran employee about how Amazon pricing and reviews affect purchasing decisions. Dkt.341(142:24-145:2). Page 11 also contains DTC's similar (and unexceptional) assertion that "NOCO's own damages expert confirmed that Amazon.com ads can affect consumer choices in retail stores." DTCBr.11 (citing Dkt.405(177:11-20)). In this latter snippet (from the bench trial, and thus not presented to the jury) NOCO's witness responded "[i]t's possible" to DTC's counsel's question whether a hypothetical consumer could see a hypothetical NOCO ad saying "Buy our battery tender products" and then "go to AutoZone and purchase a NOCO product." Dkt.405(177:11-20). That proves no *actual* materiality about any actual NOCO advertisement.

## III. THE DISTRICT COURT ABUSED ITS DISCRETION BY DISGORGING NOCO'S PROFITS AND IMPOSING AN INJUNCTION

### A. The District Court Should Not Have Disgorged NOCO's Profits

*First*, the disgorgement award should have been barred by DTC's unclean hands and equitable estoppel. NOCOBr.57-58. DTC newly argues that NOCO had to plead these as "affirmative defense[s]." DTCBr.50. That waiver argument

is itself waived and misunderstands NOCO's argument, which is that a court sitting in equity must account for these equitable principles. NOCOBr.57-58.

On unclean hands, DTC does not contest that its licensee, Deltran USA, engaged in the same keyword-bidding conduct about which it complained. DTC attempts to dismiss Deltran USA's bidding on "NOCO" and "battery tender" as "nonsensical" or "irrelevant." DTCBr.50. It is entirely sensible and relevant to assess whether DTC should be permitted to disgorge NOCO's profits for the same conduct as its licensee. And DTC's citation-free assertion that unclean hands requires "bad faith or misconduct" (*id.*) necessarily concedes that NOCO's own keyword bidding was neither.

As for equitable estoppel, DTC never contests that it told NOCO "the matter"—its complaint letter including NOCO's use of keyword bidding—was "closed" in 2015, or that its subsequent objections did not mention keyword bidding. Nor does it contest that NOCO was harmed. That leaves reliance. DTC asserts as pure *ipse dixit* that "NOCO cannot claim reliance," never explaining why NOCO "cannot" do so. DTCBr.51. Relatedly, DTC contends that "further demands" "contradict[] that [DTC] ceased all communication with NOCO after August 13, 2025 [*sic*]." *Id.* NOCO never made such an assertion. NOCOBr.59. Those "further demands" did not relate to *keyword bidding*, which DTC said was conclusively resolved in 2015. *Id.*

*Second*, the court's disgorgement award should have been limited to "defendant's sales only," and NOCO provided expert testimony and figures showing that total. NOCOBr.59-62. DTC ignores that, stating without explanation that "NOCO did not meet its burden to prove any expenses, deductions, or non-infringing sales." DTCBr.49. DTC then repeats the court's flawed analysis, never explaining *why* it was appropriate to start with NOCO's gross sales. DTCBr.51-52.

## B. The District Court Should Not Have Imposed an Injunction

DTC failed to prove irreparable harm—it claims to have fully taken back its brand space in February 2020, and presented no evidence of infringement after March 2020. NOCOBr.62-63. DTC's brief does not even address irreparable harm. There is none. That should end the matter.

DTC offers the conclusory claim that the injunction is not overbroad because it "is tailored to address the specific harms caused by NOCO's infringing activities." DTCBr.52. Here, DTC admits its case *was* premised on the "harm" of keyword bidding as infringement. And there were no "harms," "specific" or otherwise, to address. *Supra* 15-19. DTC's "tailored" contention is further belied by its failure to defend the injunction sweeping in use of the terms "tender"—for which DTC has no trademark rights—and "battery-related products," an impermissibly vague category. NOCOBr.63-64.

# CONCLUSION

The Court should reverse on liability and damages or order a new trial, and vacate the disgorgement award and injunction.[10]

Date: July 3, 2025

Respectfully submitted,

Meredith M. Wilkes
JONES DAY
901 Lakeside Ave.
Cleveland, OH 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
mwilkes@jonesday.com

Anna E. Raimer
JONES DAY
717 Texas Ave., Ste. 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
aeraimer@jonesday.com

*/s/ Gregory A. Castanias*
Gregory A. Castanias
Amelia A. DeGory
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
gcastanias@jonesday.com
adegory@jonesday.com

Kristina K. Cercone
JONES DAY
110 N. Wacker Dr., Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
kcercone@jonesday.com

*Counsel for Defendant-Appellant*

---

[10] DTC's motion to strike and request for sanctions are frivolous. NOCO did not "misrepresent" that DX-272 was "submitted to the trial court" or "part of the record below" (DTCBr.53-54) by including it in the appendix. It is a public document from the public record regarding DTC's application for trademark registration, cited once in the background section of NOCO's brief (NOCOBr.7). This Court "may take judicial notice" of this "publicly filed document," *Osheroff v. Humana Inc.*, 776 F.3d 805, 812 n.4 (11th Cir. 2015), "at any stage of the proceeding." Fed. R. Evid. 201(d).

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 27(a)(2)(B), this document contains 6,500 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: July 3, 2025                    Respectfully submitted,

                                       */s/ Gregory A. Castanias*
                                       _____

                                       *Counsel for Defendant-Appellant*

# CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2025, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the Court's Appellate PACER system, which will automatically send a notice of electronic filing to all counsel of record.

I further certify that on July 3, 2025, I caused a copy of the foregoing brief to be electronically served on all counsel of record.

Respectfully submitted,

*/s/ Gregory A. Castanias*

*Counsel for Defendant-Appellant*